UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

POLICE AND FIRE RETIREMENT SYSTEM OF :
THE CITY OF DETROIT, and MICHAEL
GOLDE, On Behalf of Themselves and All Others  :
Similarly Situated, and
                                                                        :
     Plaintiff,       06 Civ. 5797 (PAC)
                                                                        :  06 Civ. 6194 (PAC)

   -against-       :  <u>ORDER</u>

SafeNet, Inc., *et al.,*        :

    Defendant.     :

-------------------------------------------------------------------X


HONORABLE PAUL A. CROTTY, United States District Judge:


This securities fraud class action was filed August 8, 2006 by the Police

and Fire Retirement System of Detroit, Plymouth County Retirement System, and the

State-Boston Retirement System.  Plaintiff Michael Golde filed a similar action on

August 18, 2006.  Plaintiffs allege that Defendant SafeNet, Inc. and various officers and

directors of SafeNet violated federal securities laws by disseminating false and

misleading information to investors regarding its Omnibus Stock Option Plan and the

profitability of certain long-term contracts, resulting in artificially inflated prices of

SafeNet stock.

On October 2, 2006, pursuant to the Private Securities Litigation Act of

1995 ("PSLRA"), two groups of investors who sustained losses moved for appointment

as lead plaintiffs of a proposed class action consisting of investors who bought and sold

1

stock in SafeNet between the class period of March 31, 2003 through May 18, 2006.  The contending lead plaintiffs also seek the appointment of their choices for lead counsel.

The first group of investors consists of the Police and Fire Retirement System of the City of Detroit, the Plymouth County Retirement System, and the State-Boston Retirement System, ("Public Retirement Group"), represented by Bernstein Litowitz Berger & Grossmann LLP and co-counsel Labaton Sucharow & Rudoff LLP. The second group consists of Central States, Teamsters Affiliates Pension Plan, Structural Ironworkers Local Union #1, and Massachusetts State Guaranteed Annuity Fund, ("Pension & Annuity Fund Group"), represented by Lerach Coughlin Stoia Geller Rudman & Robbins LLP.  All Plaintiffs also moved for consolidation.  The motions were fully briefed on October 30, 2006 and oral argument was heard January 5, 2007.

For the reasons set forth below, the cases are consolidated, the Public Retirement Group's motion to be designated lead plaintiff is granted, and its choice of lead counsel is approved.  The Pension & Annuity Fund's motion to be appointed lead plaintiff is denied.  The cases are consolidated.

## DISCUSSION

### *Lead Plaintiff*

Congress enacted the PSLRA in 1995 in response to abuses in securities fraud class actions.  See S.Rep. No. 104-98 (1995), reprinted in 1995 U.S.C.C.A.N. 679; H.R. Conf. Rep. No. 104-369 (1995), reprinted in 1995 U.S.C.C.A.N. 730.  The purpose behind the PSLRA is to prevent "lawyer-driven" litigation, and to ensure that "parties with significant holdings in issuers, whose interests are more strongly aligned with the class of shareholders, will participate in the litigation and exercise control over the

selection and actions of plaintiffs counsel." In re Oxford Health Plans, Inc., Sec. Litig., 182 F.R.D. 42, 43-44 (S.D.N.Y.1998) (quoting H.R. Conf. Rep. No. 104-369).  Congress also believed that this could best be achieved by encouraging institutional investors to serve as lead plaintiffs. See Ferrari v. Impath, 2004 WL 1637053 (S.D.N.Y. 2004) (citing In re Oxford Health, 182 F.R.D. at 46 (citing H.R. Conf. Rep. No. 104-369)).

The PSLRA sets forth the requirements and procedure for appointing a lead plaintiff in Exchange Act class actions.  15 U.S.C. § 78u-4(a)(1) & 78ur-(a)(3)(B)(i). The statute creates the rebuttable presumption that the most adequate plaintiff is one who has 1) filed a complaint or made a motion in response to a notice, 2) in the determination of the court, has the largest financial interest in the relief sought by the class, and 3) otherwise satisfies Rule 23 requirements with respect to adequacy and typicality.  15 U.S.C. § 78u-4(a)(3)(B)(iii).

Both Groups have timely filed their motions to serve as lead plaintiff. Each Group puts forth substantial effort in casting doubt on the other's abilities and qualifications to serve as lead plaintiff, compliance with the applicable standards, and each Group's size of financial interests of the litigation.

As to the determining which Group has the greatest financial interest, the PSLRA does not explain how that interest should be calculated.  Courts have considered four factors ("Lax Test") when evaluating this requirement: (1) the number of shares purchased during the class period, (2) the number of net shares purchased during the class period, (3) the total net funds expended during the class period, and (4) the approximate loss suffered during the class period. Lax v. First Merchants Acceptance Corp., 1997 WL 461036, at *5 (N.D.Ill. Aug.11, 1997; See also Pirelli Armstrong Tire Corp. Retiree Med.

Benefits Trust v. LaBranche & Co. Inc., 229 F.R.D. 395, 404 (S.D.N.Y. 2004) ("While certain other courts have declined to follow the Lax test, they have done so in favor of a test that focuses on one or more of the factors identified in Lax."); In re Olsten Corp., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998).

The first three factors of the Lax Test, examining gross purchases, net purchases, and net funds expended, all favor the Public Retirement Group. The Pension & Annuity Group does not dispute this, but it maintains that only one factor really counts: the final Lax factor which measures the size of the losses suffered. The Public Retirement Group has alleged losses of approximately $1.78 million during the relevant period. The Pension & Annuity Group claims a larger loss of approximately $1.82 million.

The Pension & Annuity Fund Group suggests that the $40,000 difference is outcome determinative. Indeed, some courts have held that "losses" may be more relevant to this determination than the other Lax factors, see, e.g., Weiss v. Friedman, Billings, Ramsey Group, Inc., 05-cv-4617, 2006 WL 197036 (S.D.N.Y. Jan. 25, 2006). The very slight difference, however, between the Groups' losses—the Public Retirement Group's loss is only 2% below those allegedly suffered by the Pension & Annuity Group—cannot dictate such an important result. The Court will treat these losses as roughly equal. See In re Pfizer Inc. Sec. Litig., 233 F.R.D. 334, 338 (S.D.N.Y. 2005) (holding that where damage calculations differed by less than 2%, "[g]iven the probable margin of error involved in the damage estimates before the Court, [the two Groups] have roughly equal damages"). The Court also notes that the lion's share of the Pension & Annuity Group's claimed losses may be uncollectible or at least subject to unique

4

defenses in that Central States may have sold most of its shares before SafeNet announced corrective measures.  See In re Veeco, Inc., 233 F.R.D. 330 (S.D.N.Y. 2005). Therefore, the Court finds that Public Retirement Group has the largest financial interest in this litigation and thus is the presumptive lead plaintiff.

### *Rule 23 Requirements*

The presumptive lead plaintiff must also satisfy the requirements under Federal Rule of Civil Procedure 23.  15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(cc).  At this stage in the litigation, one need only make a "preliminary showing" that Rule 23's typicality and adequacy requirements have been satisfied.  In re Olsten Corp. Sec. Litig., 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998); see also In re Party City Sec. Litig., 189 F.R.D. 91, 106 (D.N.J. 1999).  Any determination of adequacy and typicality made at this stage of the proceeding does not preclude any party from contesting the ultimate class certification. See Weltz v. Lee, 199 F.R.D. 129, 133 (S.D.N.Y. 2001).  The most adequate plaintiff presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff--(aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 77z-1(a)(B)(iii)(II).

### *(a) Typicality*

The typicality requirement is satisfied when the claims of the proposed lead plaintiff "arise from the same conduct from which the other class members' claims and injuries arise." In re Oxford, 182 F.R.D. at 50 (citations omitted).  The claims of the proposed lead plaintiff need not be identical to the claims alleged by other class members.  See In re Party City, 189 F.R.D. at 107.  Members of the class claim to have

been injured by a fraudulent inflation of SafeNet's stock price.  The legal claims of the

Public Retirement Group are typical of the proposed class and thus satisfy the Rule 23

typicality requirement as it is incorporated into the PSLRA.  Indeed, they  maybe slightly

superior because of the Group's affiliation with the Golde plaintiff which has the unique

benefit of representing stockholders who obtained their stock in the Rainbow

Technologies transaction.[1]

### (b) Adequacy

The adequacy requirement is satisfied if "(1) the class counsel is

qualified, experienced, and generally able to conduct the litigation; (2) the interests of the

class members are not antagonistic to one another; and (3) the lead plaintiff has a

sufficient interest in the outcome to ensure vigorous advocacy."  In re Olsten Corp., 3 F.

Supp. 2d at 296 (citations omitted).  The Public Retirement Group also satisfies the

adequacy requirement.  The Group's counsel, Bernstein Litowitz Berger & Grossmann

LLP, and co-counsel Labaton Sucharow & Rudoff LLP are experienced in class action

litigation and have the ability to conduct the litigation effectively.  See In re Nortel

Networks Corp. Securities Litigation, No. 05md1659, In re Refco Inc. Securities

Litigation, No. 05cv8626, In re EVCI Career Colleges Holding Corp, No. 05cv10240.

There is no doubt that the Pension & Annuity Group's counsel is well-qualified as well.

On the other hand, given the checkered past of the Central State's

behavior; and the fact that at least some portion of Central States is still subject to a court

appointed monitor's oversight, there are reasonable doubts as to whether Central States—

the largest part of the Pension & Annuity Group's claim—can be an adequate

---

[1] Plaintiffs allege that certain SafeNet Defendants issued a false and misleading registration statement through which Rainbow Technologies shares were exchanged for SafeNet shares and in connection with each of SafeNet's proxy statements issued during the class period, in violation of the Exchange Act.

representative.  No such doubt exists as to the Public Retirement Group:  their interests are not antagonistic to one another; they have a record of prior consultation with each other, and each alleges significant damages due to the SafeNet transaction.

### *Professional Plaintiffs*

The Pension & Annuity Group alleges that Public Retirement Group is presumptively barred from serving as lead plaintiff because Police and Fire Retirement System of the City of Detroit is a "professional plaintiff."  The PSLRA addresses the limitations on professional plaintiffs:

> Except as the court may otherwise permit, consistent with the purposes of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the Federal Rules of Civil Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3)(B)(vi).  Police and Fire Retirement System of the City of Detroit is not a professional plaintiff because it has not served as lead plaintiff in five or more actions filed during the 3 years preceding the Group's certifications filed with the complaint.  See 15 U.S.C. § 78u-4(a)(2)(A)(v).  Moreover, it is clear that Congress did not intend to target institutional investors with this limitation.  See, e.g., In re Pfizer, 233 F.R.D. at 338 n.4; Smith v. Suprema Specialties, Inc., 206 F. Supp. 2d 627, 641 (D.N.J. 2002); In re DaimlerChrysler AG Sec. Litig., 216 F.R.D. 291, 299 (D.Del. 2003).  Accordingly, there is nothing before the Court to rebut the conclusion that the Public Retirement Group is the presumptive lead plaintiff.

### *Lead Counsel*

Under the PSLRA, the lead plaintiff shall select counsel to represent the class, subject to the court's approval.  The Public Retirement Group has selected

7

Bernstein Litowitz Berger & Grossmann to serve as lead counsel for the class and Labaton Sucharow & Rudoff LLP as co-lead counsel.  As mentioned previously, both firms have substantial experience litigating complex securities class actions, and are well qualified.  With respect to co-counsel, there will be "no duplication of attorneys' services, and the use of co-lead counsel [will] not in any way increase attorneys' fees and expenses."  In re La Branche & Co. LLC, 220 F.R.D. 398, 403 (S.D.N.Y. 2004).

## CONCLUSION

The Clerk of Courts is ORDERED to consolidate 06 Civ. 5797 and O6 Civ. 6194.  The Public Retirement Group's motion for appointment is GRANTED, and its choice of lead counsel and co-counsel is approved.  The Pension & Annuity Fund's motion for appointment is DENIED.


Dated:  New York, New York
        February 21, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge

8