UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

POLICE AND FIRE RETIREMENT SYSTEM
OF THE CITY OF DETROIT, PLYMOUTH
COUNTY RETIREMENT SYSTEM, STATE-
BOSTON RETIREMENT SYSTEM, and
MICHAEL GOLDE, On Behalf of Themselves
and All Others Similarly Situated,

              Plaintiffs,

              v.

SAFENET, INC., ANTHONY A. CAPUTO,
and CAROLE D. ARGO,

              Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

: Civ. Action No. 06-CV-5797 (PAC)

**SAFENET, INC.'S ANSWER TO THE
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

Pursuant to Rule 8 of the Federal Rules of Civil Procedure, Defendant SafeNet, Inc. ("SafeNet" or the "Company"), by its undersigned counsel, answers Plaintiffs' Consolidated Amended Class Action Complaint (the "Complaint") as follows:

SafeNet avers that it need not respond to the allegations in the introductory paragraph on page 1, and denies such allegations to the extent a response is required.

1.   SafeNet denies the allegations of paragraph 1, except (a) admits that it disclosed that its annual and interim financial statements for the periods from 2000 through March 31, 2006 would have to be restated, (b) admits that defendant Argo pled guilty to one count of securities fraud, and (c) admits that defendant Argo is a former President, COO and CFO of SafeNet, defendant Caputo is a former CEO of SafeNet, and dismissed defendant Mueller is a former CFO of SafeNet.

2.   SafeNet denies the allegations of paragraph 2, except admits and avers that SafeNet develops, markets, sells and supports hardware and software information security products and services that protect and secure communications, intellectual property, information and identities for private businesses and governmental entities.   SafeNet further admits that its stock price at times during the Class Period was above $40 per share.   SafeNet refers to its April 22, 2003 press release for a complete and accurate statement of its contents.

3.   SafeNet denies the allegations of paragraph 3, and avers that it is not required to respond to allegations relevant only to claims dismissed by this Court in its Opinion and Order dated August 5, 2009.

4.   SafeNet denies the allegations of paragraph 4, except admits that options backdating involves a practice whereby a company grants options on a given date and sets the strike price of the options at the market value of the stock on an earlier date, and otherwise avers that the allegations of paragraph 4 do not provide a complete and accurate description of "options backdating".

5.     SafeNet denies the allegations of paragraph 5, except (a) admits that option grants can be used to retain valuable employees and (b) otherwise avers that the remaining allegations of paragraph 5 consist of legal conclusions as to which no response is required or appropriate, and (c) refers to SEC rules and regulations and Generally Accepted Accounting Principles ("GAAP") for a complete and accurate statement of their contents.

6.     SafeNet denies the allegations of paragraph 6.

7.     SafeNet denies the allegations of paragraph 7, except (a) avers that the allegations of paragraph 7 relate to claims that have been dismissed and as to which no response is required, and (b) refers to SafeNet's Forms 10-K for 2002, 2003 and 2004 for a complete and accurate statement of their contents.

8.     SafeNet denies the allegations of paragraph 8, except avers that the allegations of paragraph 8 relate to claims that have been dismissed and as to which no response is required.

9.     SafeNet denies the allegations of paragraph 9, except admits that its closing stock price was $32.72 per share on February 2, 2006; $27.75 on February 3, 2006; $25.97 on April 6, 2006; $20.96 on April 7, 2006; $19.21 on May 18, 2006 and $14.93 on May 19, 2006, and refers to the referenced and quoted documents for a complete and accurate statement of their contents.

10.     SafeNet denies the allegations of paragraph 10, except (a) admits and avers that it announced in July 2006 that certain option grants were or likely were accounted for using incorrect measurement dates and that the Company would have to restate its financial statements for the fourth quarter of 2002, and in September 2006 that it intended to restate its financial statements for the years 2000 through 2005 and for the first quarter of 2006, and (b) refers to the referenced and quoted documents for a complete and accurate statement of their contents.

11.   SafeNet denies the allegations of paragraph 11, except admits and avers that SafeNet was acquired by Vector Capital on April 12, 2007 and as a result was no longer a public reporting company.

12.   SafeNet denies the allegations of paragraph 12, except (a) admits that the Securities and Exchange Commission has continued to investigate SafeNet's accounting for stock options and other issues and that defendant Argo pleaded guilty to one count of securities fraud, and (b) refers to defendant Argo's guilty plea and allocution dated October 10, 2007 for a complete and accurate statement of its contents.

13.   SafeNet denies the allegations of paragraph 13, except admits that Plaintiffs have asserted allegations in their complaint.

14.   SafeNet denies the allegations of paragraph 14, except admits that SafeNet acquired Rainbow Technologies, Inc. ("Rainbow") in a stock-based merger in which Rainbow shareholders exchanged their shares for 0.374 SafeNet shares, and that on October 21, 2003, SafeNet's closing stock price was $42.95 per share.

15.   SafeNet denies the allegations of paragraph 15.

16.   SafeNet denies the allegations of paragraph 16, and avers that the allegations of paragraph 16 consist of legal conclusions as to which no response is required or appropriate.

17.   SafeNet denies the allegations of paragraph 17, except admits that Plaintiffs purport to bring claims under the provisions cited.

18.   SafeNet denies the allegations of paragraph 18.

19.   SafeNet denies the allegations of paragraph 19, except admits that SafeNet engaged in interstate commerce in connection with certain acts and conduct alleged in the Complaint and not denied herein, and that defendant Argo pleaded guilty to one count of securities fraud.

20. SafeNet denies that plaintiff Police and Fire Retirement System of the City of Detroit suffered damages as a result of SafeNet's conduct, and avers that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 20.

21. SafeNet denies that plaintiff Plymouth County Retirement System suffered damages as a result of SafeNet's conduct, and avers that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 21.

22. SafeNet denies that plaintiff State-Boston Retirement System suffered damages as a result of SafeNet's conduct, and avers that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 22.

23. SafeNet admits the allegations of paragraph 23.

24. SafeNet denies that plaintiff Michael J. Golde suffered damages as a result of SafeNet's conduct, admits that upon closing of the Rainbow Acquisition, shares of Rainbow were converted into shares of SafeNet, and avers that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 24.

25. SafeNet admits the allegations of paragraph 25.

26. SafeNet denies the allegations of paragraph 26, except admits and avers that (a) defendant Caputo was the Chief Executive Officer and Chairman of the Board of Directors of SafeNet October 16, 1987 to October 17, 2006, (b) he signed the Rainbow Registration Statement and all SafeNet's Forms 10-K and 10-Q during the Class Period, (c) his resignation was announced on October 18, 2006, (d) he received grants of stock options from SafeNet, and (e) he sold shares of SafeNet stock during the Class Period.

27. SafeNet denies the allegations of paragraph 27, except admits and avers that (a) defendant Argo was Senior Vice President and Chief Financial Officer of SafeNet from July 19, 1999 to October 17, 2006, (b) she served as SafeNet's President from June 28, 2004 to October 17, 2006 and

SafeNet's Chief Operating Officer from June 28, 2004 to July 27, 2006, (c) she served as SafeNet's interim Chief Financial Officer from April 7, 2006 to October 17, 2006, (d) she was a certified public accountant, (d) she signed the Rainbow Registration Statement, SafeNet's Forms 10-K for the years 2002 and 2003, and its Forms 10-Q for the year 2003 and the first quarter of 2004, (e) her resignation from SafeNet was announced on October 18, 2006, (f) she received grants of stock options from SafeNet, and (g) she sold shares of SafeNet stock during the Class Period.

28.  SafeNet denies the allegations of paragraph 28, except admits and avers that (a) defendant Mueller was Senior Vice President, Chief Financial Officer and Treasurer of SafeNet from June 28, 2004 to April 6, 2006, (b) he signed SafeNet's Forms 10-Q for the second and third quarters of 2004, its Forms 10-Q for the year 2005, its Forms 10-K for the years 2004 and 2005, (c) SafeNet announced that defendant Mueller was leaving the company on April 6, 2006, (d) he received grants of stock options from SafeNet, and (e) he sold shares of SafeNet stock during the Class Period.

29.  SafeNet admits that the defendants named in paragraphs 26 through 28 of the Complaint had access to undisclosed information about the Company at times during their employment, and avers that the allegation that such information was "material" is a legal conclusions as to which no response is required or appropriate.

30.  SafeNet denies the allegations of paragraph 30, except admits that each of the Officer Defendants had certain responsibilities relating to the truth and accuracy of SafeNet's SEC filing, and may have reviewed public statements by SafeNet.

31.  SafeNet denies the allegations of paragraph 31, except admits and avers that (a) Thomas A. Brooks has served as a director of the Company and as a member of the Company's Compensation Committee and Audit Committee, (b) he received grants of stock options from SafeNet, (c) he sold shares of SafeNet stock during the Class Period, (d) defendant Caputo signed the Rainbow Registration Statement, with power of attorney, on behalf of Mr. Brooks, and (e) SafeNet disclosed on

July 3, 2006, that Mr. Brooks failed to file Forms 4 for certain option grants during the fiscal years 2003, 2004 and 2005, and refers to its Form DEF 14A of July 3, 2006, for a complete and accurate statement of its contents.  SafeNet further avers that the allegations of paragraph 31 relate to claims that have been dismissed and as to which no response is required.

      32.  SafeNet denies the allegations of paragraph 32, except admits and avers that (a) Ira A. Hunt, Jr. has served as a director of the Company and as a member of the Company's Compensation Committee and Audit Committee, (b) he received grants of stock options from SafeNet, (c) he sold shares of SafeNet stock during the Class Period, (d) he signed the Company's Forms 10-K during the Class Period, (e) his name appeared in certain of the Company's proxy statements during the years 2003 to 2005, (f) defendant Caputo signed the Rainbow Registration Statement, with power of attorney, on behalf of Mr. Hunt, and (g) SafeNet disclosed on July 3, 2006, that Mr. Hunt failed to file Forms 4 for certain option grants during the fiscal years 2003, 2004 and 2005, and refers to its Form DEF 14A of July 3, 2006, for a complete and accurate statement of its contents.  SafeNet further avers that the allegations of paragraph 32 relate to claims that have been dismissed and as to which no response is required.

      33.  SafeNet denies the allegations of paragraph 33, except admits and avers that (a) Bruce R. Thaw has served as a director of the Company and as a member of the Company's Compensation Committee, (b) he received grants of stock options from SafeNet, (c) he sold shares of SafeNet stock during the Class Period, (d) he signed the Company's Forms 10-K during the Class Period, (e) his name appeared in certain of the Company's proxy statements during the years 2003 to 2005, (f) defendant Caputo signed the Rainbow Registration Statement, with power of attorney, on behalf of Mr. Thaw, and (g) SafeNet disclosed on July 3, 2006, that Mr. Thaw failed to file Forms 4 for certain option grants during the fiscal years 2003, 2004 and 2005, and refers to its Form DEF 14A of July 3, 2006, for a complete and accurate statement of its contents.  SafeNet further avers that the

allegations of paragraph 33 relate to claims that have been dismissed and as to which no response is required.

34.    SafeNet denies the allegations of paragraph 34, except admits and avers that (a) starting on March 16, 2004, Arthur L. Money served as a director of the Company and as a member of the Company's Compensation Committee and Audit Committee, (b) he received grants of stock options from SafeNet, (c) he signed the Company's Forms 10-K for the years 2004 and 2005, (d) his name appeared in certain of the Company's proxy statements during the years 2004 and 2005, and (e) SafeNet disclosed on July 3, 2006, that Mr. Money failed to file Forms 4 for certain option grants during the fiscal years 2003, 2004 and 2005, and refers to its Form DEF 14A of July 3, 2006, for a complete and accurate statement of its contents.  SafeNet further avers that the allegations of paragraph 34 relate to claims that have been dismissed and as to which no response is required.

35.    SafeNet denies the allegations of paragraph 35, except admits and avers that (a) Shelley A. Harrison has served as a director of the Company and as a paid consultant to the Company, (b) he received grants of stock options from SafeNet, (c) he sold shares of SafeNet stock during the Class Period, (d) he signed the Company's Forms 10-K during the Class Period, (e) his name appeared in certain of the Company's proxy statements during the years 2003 to 2005, (f) defendant Caputo signed the Rainbow Registration Statement, with power of attorney, on behalf of Mr. Harrison, and (g) SafeNet disclosed on July 3, 2006, that Mr. Harrison failed to file Forms 4 for certain option grants during the fiscal years 2003, 2004 and 2005, and refers to its Form DEF 14A of July 3, 2006, for a complete and accurate statement of its contents.  SafeNet further avers that the allegations of paragraph 35 relate to claims that have been dismissed and as to which no response is required.

36.    SafeNet denies the allegations of paragraph 36, except admits and avers that (a) Andrew E. Clark has served as a director of the Company, (b) he received grants of stock options from SafeNet, (c) he sold shares of SafeNet stock during the Class Period, (d) he signed the Company's

Forms 10-K for the years 2004 and 2005, (e) his name appeared in certain of the Company's proxy statements during the years 2003 to 2005, (f) defendant Caputo signed the Rainbow Registration Statement, with power of attorney, on behalf of Mr. Clark, and (g) SafeNet disclosed on July 3, 2006, that Mr. Clark failed to file Forms 4 for certain option grants during the fiscal years 2003, 2004 and 2005, and refers to its Form DEF 14A of July 3, 2006, for a complete and accurate statement of its contents.  SafeNet further avers that the allegations of paragraph 36 relate to claims that have been dismissed and as to which no response is required.

37.  SafeNet admits that Plaintiffs purport to define "Compensation Committee Defendants," and avers that the allegations of paragraph 37 relate to claims that have been dismissed and as to which no response is required.

38.  SafeNet admits that Plaintiffs purport to define "Director Defendants," and avers that the allegations of paragraph 38 relate to claims that have been dismissed and as to which no response is required.

39.  SafeNet (a) avers that the allegations of the first sentence of paragraph 39 consist of legal conclusions as to which no response is required or appropriate, and (b) refers to the Exchange Act for a complete and accurate statement of its contents.  SafeNet admits that the Individual Defendants had certain powers and responsibilities with respect to the management of SafeNet, and otherwise denies the allegations of the second sentence of paragraph 39.

40.  SafeNet admits that defendants Argo and Caputo signed SafeNet's registration dated February 11, 2004, and that Plaintiffs purport to define "Rainbow Acquisition Defendants," and avers that the remaining allegations of paragraph 40 relate to claims that have been dismissed and as to which no response is required.

41.  SafeNet (a) avers that the allegations of the first sentence of paragraph 41 consist of legal conclusions as to which no response is required or appropriate, and (b) refers to the Securities Act

for a complete and accurate statement of its contents.  SafeNet admits that the Rainbow Acquisition

Defendants had certain powers and responsibilities with respect to the management of SafeNet, and

otherwise SafeNet denies the allegations of the second sentence of paragraph 41.

      42.  SafeNet (a) avers that the allegations of the fourth sentence of paragraph 42 consist

of legal conclusions as to which no response is required or appropriate, and (b) refers to the SEC rules

and regulations for a complete and accurate statement of their contents.  SafeNet avers that the

remaining allegations of paragraph 42 do not provide a complete and accurate description of stock

option grants, and admits that Plaintiffs purport to provide an illustrative example of a stock option

transaction.

      43.  SafeNet admits that (a) prior to 2006, if a publicly traded company issued options

with an exercise price less than the market price of the company's stock on the date the options were

granted, the company was required to recognize compensation expense in its financial statements, and

(b) refers to the SEC rules and regulations and referenced accounting rules and principles for a

complete and accurate statement of their contents.

      44.  SafeNet (a) admits that certain of SafeNet's option grants vested over the span of

four years, in equal amounts over that four year period, (b) admits that when APB No. 25 was the

applicable accounting rule, a failure to record compensation expense when the strike price of the option

was below the market price of the stock on the date the option was granted would understate

compensation expense over the vesting period of the option, and (c) otherwise denies the allegations of

the fourth sentence of paragraph 44, and further avers that the remaining allegations of paragraph 44 do

not provide a complete description of compensation cost calculation in relation to stock option grants.

      45.  SafeNet (a) avers that the allegations of paragraph 45 consist of legal conclusions as

to which no response is required or appropriate, (b) refers to APB No. 25 and GAAP for a complete

and accurate statement of their contents, (c) denies that APB No. 25 "avoid[ed] any doubt" as to the

appropriate "measurement date," and (d) denies that the last sentence of paragraph 45 provides a complete or accurate statement of the application of APB No. 25.

46.  SafeNet denies the allegations of paragraph 46.

47.  SafeNet admits and avers that it granted options to certain employees pursuant to stock option plans, and refers to the quoted documents for a complete and accurate statement of their contents.

48.  SafeNet (a) admits that its stock option plans were administered by the Company's Compensation Committee, and otherwise denies that the allegations of paragraph 48 provide a complete and accurate description of its stock options grant process.  SafeNet refers to the quoted document for a complete and accurate statement of its contents.

49.  SafeNet admits that the Compensation Committee approved certain of SafeNet's option grants through Unanimous Written Consents, and otherwise denies that the allegations of paragraph 49 provide a complete and accurate description of its stock option granting process.

50.  SafeNet denies the allegations of the first sentence of paragraph 50 and refers to the SEC and accounting rules and regulations for a complete and accurate statement of their contents.

51.  SafeNet (a) avers that the allegations of paragraph 51 consist of legal conclusions as to which no response is required or appropriate, (b) refers to the applicable tax rules and regulations for a complete and accurate statement of their contents, and (c) denies such allegations to the extent any other response is required.

52.  SafeNet denies the allegations of paragraph 52.

53.  SafeNet denies the allegations of the second and third sentences of paragraph 53 and further denies that the allegations of the first sentence of paragraph 53 provide a complete and accurate description of options backdating.

54. SafeNet denies the allegations of paragraph 54, except admits that a stock option with a lower strike price is more valuable than one with a higher stock price.

55. SafeNet denies the allegations of paragraph 55.

56. SafeNet denies the allegations of paragraph 56, except admits that it has disclosed that certain of its stock option grants during the Class Period were improperly recorded under applicable accounting rules and that the Company would have to restate certain of its financial statements as a result.

57. SafeNet denies the allegations of paragraph 57.

58. SafeNet admits that defendant Argo testified during her plea and allocution at a hearing on October 5, 2007, and refers to the transcript of the hearing for a complete and accurate statement of its contents.

59. SafeNet avers that the allegations of the second sentence of paragraph 59 consist of legal conclusions as to which no response is required or appropriate. SafeNet refers to the Sarbanes-Oxley Act and SafeNet's Form 14A of July 3, 2006 for a complete and accurate statement of their contents, and denies each and every remaining allegation of paragraph 59.

60. SafeNet denies the allegations of paragraph 60.

61. SafeNet denies the allegations of paragraph 61, except admits that APB No. 25 required recognition for certain grants of stock options.

62. SafeNet admits that Plaintiffs purport to provide the amounts and exercise prices of certain of SafeNet's stock option grants during fiscal year 1999 in a chart contained in paragraph 62, and avers that the chart does not provide a complete and accurate description of SafeNet's stock option grants during fiscal year 1999.

63. SafeNet denies the allegations of paragraph 63 and avers that the chart contained in paragraph 63 does not provide a complete description of SafeNet's stock price during the Class Period.

64. SafeNet denies the allegations of paragraph 64, except (a) admits that its closing stock price was $17.50 per share on July 30, 1999, $23.06 per share on August 9, 1999 and $26.00 per share on August 25, 1999; and (b) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date of the stock option grant referenced in paragraph 64 was August 6, 1999.

65. SafeNet admits that Plaintiffs purport to provide the amounts and exercise prices of certain of SafeNet's stock option grants during fiscal year 2000 in a chart contained in paragraph 65, and avers that the chart does not provide a complete description of SafeNet's stock option grants during fiscal year 2000.

66. SafeNet denies the allegations of paragraph 66 and avers that the chart contained in paragraph 66 does not provide a complete description of SafeNet's stock price during the Class Period.

67. SafeNet denies the allegations of paragraph 67, except (a) admits that its closing stock price was $24.125 per share on October 11, 2000, $39.50 per share on October 19, 2000 and $53.00 per share on November 3, 2000; and (b) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date for the stock option grants referenced in paragraph 67 was October 19, 2000.

68. SafeNet admits that Plaintiffs purport to provide the amounts and exercise prices of certain of SafeNet's stock option grants during fiscal year 2001 in a chart contained in paragraph 68, and avers that the chart does not provide a complete description of SafeNet's stock option grants during fiscal year 2001.

69. SafeNet denies the allegations of paragraph 69 and avers that the chart contained in paragraph 69 does not provide a complete description of SafeNet's stock price during the Class Period.

70. SafeNet denies the allegations of paragraph 70, except (a) admits that its stock price was $47.00 per share on January 1, 2001, $33.625 per share on January 8, 2001 and $34.00 per share

on January 9, 2001; and (b) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date for the stock option grant referenced in paragraph 70 was January 18, 2001. SafeNet further avers that the chart contained in paragraph 70 does not provide a complete description of SafeNet's stock price during the Class Period.

71. SafeNet denies the allegations of paragraph 71, except (a) admits that the United States Attorney for the Southern District of New York filed a criminal indictment against defendant Argo on July 25, 2007 and that the SEC filed a civil complaint against defendant Argo on August 1, 2007, and (b) refers to those documents for a complete and accurate statement of their contents. SafeNet further avers that the chart contained in paragraph 71 does not provide a complete description of SafeNet's stock price during the Class Period.

72. SafeNet denies the allegations of paragraph 72, except (a) admits that its closing stock price was $16.20 per share on May 1, 2001 and $11.75 per share on May 16, 2001, and (b) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date for the grants referenced in paragraph 72 was July 6, 2001. SafeNet further denies that the chart contained in paragraph 72 provides a complete and accurate description of SafeNet's stock price during the Class Period.

73. SafeNet (a) admits that both the SEC civil complaint and the Southern District of New York criminal indictment against defendant Argo referred to an October 1, 2001 stock option grant, and (b) refers to the transcript of the October 5, 2007 hearing for a complete and accurate statement of its contents.

74. SafeNet denies the allegations of paragraph 74, except admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement dates for the stock option grants referenced in paragraph 74 were April 6, 2001,

October 28, 2001 and January 4, 2002, and that by agreement dated December 30, 2006, defendants Argo and Caputo agreed to re-price their options to the market prices on those measurement dates.

75.    SafeNet denies that the chart contained in paragraph 75 provides a complete and accurate description of SafeNet's stock option grants during fiscal year 2002.

76.    SafeNet admits that Plaintiffs purport to provide the amounts and exercise prices of certain of SafeNet's stock option grants during fiscal year 2002 in a chart contained in paragraph 76, and avers that the chart does not provide a complete description of SafeNet's stock option grants during fiscal year 2002.

77.    SafeNet denies the allegations of paragraph 77, except (a) admits that its closing stock price was $11.47 per share on February 11, 2002, $14.48 per share on February 13, 2002, $13.46 per share on April 10, 2002, $16.00 per share on April 17, 2002, $13.75 per share on October 8, 2002 and $29.001 per share on November 29, 2002; and (b) admits that it granted stock options to Chris Fedde, Sean Price, Cees Jan Koomen and defendant Caputo during the fiscal year 2002, and (c) further admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement dates for the stock option grants referenced in paragraph 77 were April 18, 2002, October 22, 2002 and January 13, 2003.

78.    SafeNet denies the allegations of paragraph 78, except (a) admits that its closing stock price was $13.75 per share on October 8, 2002 and $18.75 per share on October 24, 2002, (b) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date of the stock option grant referenced in paragraph 78 was October 22, 2002, (c) admits that the United States Attorney for the Southern District of New York filed a criminal indictment against defendant Argo on July 25, 2007 and that the SEC filed a civil complaint against defendant Argo on August 1, 2007, (d) admits that defendant Argo pled guilty to one

-14-

count of securities fraud, and (e) refers to the referenced documents for a complete and accurate statement of their contents.

79. SafeNet denies the allegations of paragraph 79.

80. SafeNet admits that Plaintiffs purport to provide the amounts and exercise prices of certain of SafeNet's stock option grants during fiscal year 2003 in a chart contained in paragraph 80, and avers that the chart does not provide a complete and accurate description of SafeNet's stock option grants during fiscal year 2003.

81. SafeNet denies the allegations of paragraph 81 and avers that the chart contained in paragraph 81 does not provide a complete and accurate description of SafeNet's stock price during the Class Period.

82. SafeNet denies the allegations of paragraph 82, except admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date for the stock option grants referenced in paragraph 82 was April 23, 2003.

83. SafeNet denies the allegations of paragraph 83, except (a) admits that its closing stock price was $16.47 per share on February 27, 2003, (b) admits that the United States Attorney for the Southern District of New York filed a criminal indictment against defendant Argo on July 25, 2007 and that the SEC filed a civil complaint against defendant Argo on August 1, 2007, (c) admits that defendant Argo pled guilty to one count of securities fraud, and (d) refers to the referenced documents for a complete and accurate statement of their contents.

84. SafeNet denies the allegations of paragraph 84, except (a) admits that its closing stock price was $31.35 per share on July 17, 2003 and $38.85 per share on September 16, 2003, (b) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date of the stock option grant referenced in paragraph 84 was September 17, 2003, (c) admits that the United States Attorney for the Southern District of New

York filed a criminal indictment against defendant Argo on July 25, 2007 and that the SEC filed a civil complaint against defendant Argo on August 1, 2007, and (d) refers to those documents for a complete and accurate statement of their contents.

85. SafeNet denies the allegations of paragraph 85, except admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date for the stock option grant to defendants Caputo and Argo originally dated February 27, 2003, was April 23, 2003, and that the measurement date for the stock option grant to defendant Argo originally dated July 17, 2003, was September 17, 2003.

86. SafeNet admits that Plaintiffs purport to provide the amounts and exercise prices of certain of SafeNet's stock option grants during fiscal year 2004 in a chart contained in paragraph 86, and avers that the chart does not provide a complete and accurate description of SafeNet's stock option grants during fiscal year 2004.

87. SafeNet denies the allegations of paragraph 87 and avers that the chart contained in paragraph 87 does not provide a complete description of SafeNet's stock price during the Class Period.

88. SafeNet denies the allegations of paragraph 88, except (a) admits that its closing stock price was $22.19 per share on July 28, 2004 and $27.96 per share on July 29, 2004, and (b) admits that SafeNet granted stock options to Chris Fedde, David Potts, dismissed defendant Mueller and defendants Argo and Caputo in 2004, and (c) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement dates for the stock options grants referenced in paragraph 88 were May 20, 2004 and October 9, 2004.

89. SafeNet denies the allegations of paragraph 89, except (a) admits that its stock price was $28.45 per share on October 9, 2004, (b) admits that the UWC for the stock option grant referenced in paragraph 89 was returned by the Compensation Committee on October 9, 2004, (c) admits and avers that, based on the information available to it and under applicable accounting rules,

SafeNet has determined that the measurement date of the stock option grant referenced in paragraph 89 was October 9, 2004, (d) admits that the United States Attorney for the Southern District of New York filed a criminal indictment against defendant Argo on July 25, 2007, and (e) refers to the criminal indictment and the September 15, 2004 email for a complete and accurate statement of their contents.

90.  SafeNet denies the allegations of paragraph 90, except (a) admits that its stock price was $25.16 per share on September 27, 2004 and $31.52 per share on February 9, 2005, (b) admits that the Compensation Committee approved certain stock option grants on February 9, 2005, (c) admits that SafeNet's outside auditors identified incorrect measurement dates of certain stock option grants during an audit of 2005 and that changes to compensation expense were made as a result, (d) admits that, during this audit, there were no discussions involving SafeNet's outside auditors as to whether other stock options grants were backdated, (e)  admits that the United States Attorney for the Southern District of New York filed a criminal indictment against defendant Argo on July 25, 2007, and (e) refers to that document for a complete and accurate statement of its contents.

91.  SafeNet denies the allegations of paragraph 91, except admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement dates for the stock option grants referenced in paragraph 91 were May 20, 2004 and October 9, 2004, and that by agreement dated December 30, 2006, defendants Argo and Caputo agreed to re-price their options to the market prices on those measurement dates.

92. SafeNet admits that Plaintiffs purport to provide the amounts and exercise prices of certain of SafeNet's stock option grants during fiscal year 2005 in a chart contained in paragraph 92, and avers that the chart does not provide a complete description of  SafeNet's stock option grants during fiscal year 2005.

93. SafeNet denies the allegations of paragraph 93 and further denies that the chart contained in paragraph 93 provides a complete and accurate description of SafeNet's stock price during the Class Period.

94. SafeNet denies the allegations of paragraph 94, except (a) admits that its closing stock price was $31.78 per share on June 1, 2005 and $34.06 per share on June 30, 2005, (b) avers that the final determination to set a grant date of June 1, 2005 for certain options granted to Carole Argo and Steve Lessem was made in August 2005, (c) avers that the Company recorded a compensation expense related to the June 1, 2005 options granted to defendant Argo, (d) admits that on September 29, 2005, the Company announced that it was awarded a $150 million contract by the Department of Defense for its KIV-7M link encryptor, and (e) admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date of the September 29 stock option grant referenced in paragraph 94 was September 30, 2005. SafeNet refers to the transcript of the September 29, 2005 conference call for a complete and accurate statement of its contents.

95. SafeNet admits that its closing stock price was $29.70 per share on September 29, 2005 and $36.31 per share on September 30, 2005, that 5,010,800 shares of stock traded on September 30, 2005, and otherwise denies knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 95.

96. SafeNet denies the allegations of paragraph 96, except admits and avers that, based on the information available to it and under applicable accounting rules, SafeNet has determined that the measurement date for the September stock option grant referenced in paragraph 96 was September 30, 2005, and that by agreement dated December 30, 2006, defendants Argo and Caputo agreed to re-price their options to the market prices on their measurement dates.

97. SafeNet denies the allegations of paragraph 97.

98.  SafeNet denies the allegations of paragraph 98.

99.  SafeNet denies the allegations of paragraph 99 and further denies that the table contained in paragraph 99 constitutes a complete and accurate description of SafeNet's "Actual Operating Income" and "Actual Net Income" for the years 2002 through 2005.

100.  SafeNet avers that the allegations of paragraph 100 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

101.  SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 101 as to alleged statements of confidential witnesses.  SafeNet further avers that the allegations of paragraph 101 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

102.  SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 102 as to alleged statements of confidential witnesses.  SafeNet further avers that the allegations of paragraph 102 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

103.  SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 103 as to alleged statements of confidential witnesses.  SafeNet further avers that the allegations of paragraph 103 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

104.  SafeNet avers that the allegations of paragraph 104 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

105.  SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 105 as to alleged statements of confidential witnesses.  SafeNet

further avers that the allegations of paragraph 105 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

106.  SafeNet admits the allegations of paragraph 106.

107.  SafeNet (a) avers that the allegations of paragraph 107 relate to claims that have been dismissed and as to which no response is required, and (b) refers to GAAP and SOP 81-1 for a complete and accurate statement of their contents, and (c) denies such allegations to the extent that a response is required.

108.  SafeNet (a) avers that the allegations of paragraph 108 relate to claims that have been dismissed and as to which no response is required, and (b) refers to SOP 81-1 for a complete and accurate statement of its contents, and (c) denies such allegations to the extent that a response is required.

109.  SafeNet (a) avers that the allegations of paragraph 109 relate to claims that have been dismissed and as to which no response is required, (b) refers to SafeNet's  Forms 10-Q and 10-K for a complete and accurate statement of their contents, and (c) denies such allegations to the extent that a response is required.

110.  SafeNet (a) avers that the allegations of paragraph 110 relate to claims that have been dismissed and as to which no response is required, (b) refers to SafeNet's  Forms 10-Q for a complete and accurate statement of their contents, and (c) denies such allegations to the extent that a response is required.

111.  SafeNet (a) avers that the allegations of paragraph 111 relate to claims that have been dismissed and as to which no response is required, and (b) denies such allegations to the extent that a response is required.

112.  SafeNet (a) avers that the allegations of paragraph 112 relate to claims that have been dismissed and as to which no response is required, (b) refers to the relevant provisions of GAAP

for a complete and accurate statement of their contents, and (c) denies such allegations to the extent that a response is required.

113.   SafeNet (a) avers that the allegations of paragraph 113 relate to claims that have been dismissed and as to which no response is required, (b) refers to SafeNet's  Form 10-K for 2005 for a complete and accurate statement of its contents, and (c) denies such allegations to the extent that a response is required.

114.   SafeNet (a) avers that the allegations of paragraph 114 relate to claims that have been dismissed and as to which no response is required, and (b) denies such allegations to the extent that a response is required.

115.   SafeNet (a) avers that the allegations of paragraph 115 relate to claims that have been dismissed and as to which no response is required, and (b) denies such allegations to the extent that a response is required.

116.   SafeNet (a) avers that the allegations of paragraph 116 relate to claims that have been dismissed and as to which no response is required, and (b) denies such allegations to the extent that a response is required.

117.   SafeNet (a) avers that the allegations of paragraph 117 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 117 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 117.

118.   SafeNet (a) avers that the allegations of paragraph 118 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 118

as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 118.

119. SafeNet (a) avers that the allegations of paragraph 119 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 119 as to alleged statements of confidential witnesses, (c) admits that SafeNet hired a contract employee in early 2005 and assigned that contract employee limited responsibilities for reviewing accounting for certain contracts, and that the contract employee left SafeNet within three months, and (d) otherwise denies all allegations of paragraph 119.

120. SafeNet (a) avers that the allegations of paragraph 120 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 120 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 120.

121. SafeNet (a) avers that the allegations of paragraph 121 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 121 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 121.

122. SafeNet avers that the allegations of paragraph 122 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required, except admits that on February 2, 2006, SafeNet disclosed that it would be correcting an accounting error that resulted in an understatement of lease restructuring charges during the second quarter of 2005 of approximately $700,000, and another accounting error that resulted in an

understatement of SafeNet's costs of revenues in the Company's Classified Government business in the third quarter of 2005 of approximately $600,000.

123.  SafeNet (a) avers that the allegations of paragraph 123 relate to claims that have been dismissed and as to which no response is required, (b) refers to GAAP for a complete and accurate statement of its contents, and (c) denies such allegations to the extent that a response is required.

124.  SafeNet (a) avers that the allegations of paragraph 124 relate to claims that have been dismissed and as to which no response is required, and (b) refers to SEC Staff Accounting Bulletin: No. 101 for a complete and accurate statement of its contents.

125.  SafeNet (a) avers that the allegations of paragraph 125 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 125 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 125.

126.  SafeNet (a) avers that the allegations of paragraph 126 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 126 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 126.

127.  SafeNet (a) avers that the allegations of paragraph 127 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 127 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 127.

128.  SafeNet (a) avers that the allegations of paragraph 128 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 128 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 128.

129.  SafeNet avers that the allegations of paragraph 129 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

130.  SafeNet (a) avers that the allegations of paragraph 130 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 130 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 130.

131.  SafeNet (a) avers that the allegations of paragraph 131 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 131 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 131.

132.  SafeNet (a) avers that the allegations of paragraph 132 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 132 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 132.

133. SafeNet (a) avers that the allegations of paragraph 133 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 133 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 133.

134. SafeNet avers that the allegations of paragraph 134 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required

135. SafeNet (a) avers that the allegations of paragraph 135 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 135 as to alleged statements of confidential witnesses, and (c) otherwise denies all allegations of paragraph 135.

136. SafeNet (a) avers that the allegations of paragraph 136 relate to claims that have been dismissed and as to which no response is required, (b) further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 136 as to alleged statements of confidential witnesses, and (c) admits that the Company announced certain accounting restatements and lower-than-expected earnings in the first half of 2006, and (d) otherwise denies all allegations of paragraph 136.

137. SafeNet admits that it filed a Form 10-K for the year ended December 31, 2002 on March 31, 2003, which was signed by defendants Argo and Caputo and dismissed defendants Brooks, Harrison, Hunt and Thaw, and refers to that document for a complete and accurate statement of its contents.

138.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2002 on March 31, 2003, and refers to that document for  a complete and accurate statement of its contents.

139.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2002 on March 31, 2003, and refers to that document for  a complete and accurate statement of its contents.

140.  SafeNet avers that the allegations of the first sentence of paragraph 140 contain legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 140.

141.  SafeNet admits that it issued a proxy statement on a Form 14A on April 30, 2003 which was signed by defendant Argo, and refers to that document for a complete and accurate statement of its contents.

142.  SafeNet (a) avers that the allegations of the first sentence of paragraph 142 consist of legal conclusions as to which no response is required or appropriate, (b) admits that it issued a proxy statements on a Form 14A on April 30, 2003, and (c) refers to its Form 14A of April 30, 2003 for a complete and accurate statement of its contents.

143.  SafeNet avers that paragraph 143 purports to state legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 143.

144.  SafeNet admits that it filed a Form 10-Q for the first quarter of 2003 on May 15, 2003, and refers to that document for a complete and accurate statement of its contents.

145.  SafeNet admits that it filed a Form 10-Q for the first quarter of 2003 on May 15, 2003, and refers to that document for a complete and accurate statement of its contents.

146.  SafeNet avers that the allegations of the second sentence of paragraph 146 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 146.

147.  SafeNet admits that it filed a Form 10-Q for the second quarter of 2003 on July 31, 2003, and refers to that document for a complete and accurate statement of its contents.

148.  SafeNet admits that it filed a Form 10-Q for the second quarter of 2003 on July 31, 2003, and refers to that document for a complete and accurate statement of its contents.

149.  SafeNet avers that the allegations of the second sentence of paragraph 149 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 149.

150.  SafeNet admits that it filed a Form 10-Q for the third quarter of 2003 on November 14, 2003, which was signed by defendants Argo and Caputo, and refers to that document for a complete and accurate statement of its contents.

151.  SafeNet admits that it filed a Form 10-Q for the third quarter of 2003 on November 14, 2003, and refers to that document for a complete and accurate statement of its contents.

152.  SafeNet avers that the allegations of the second sentence of paragraph 152 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 152.

153.  SafeNet admits that it filed the Rainbow Registration Statement and Rainbow Proxy/Prospectus on February 11 and 12, 2004, and refers to those documents for a complete and accurate statement of their contents.  SafeNet avers that the allegations of the second sentence of

paragraph 153 consists of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

153(a).  SafeNet admits that it filed the Rainbow Proxy/Prospectus on February 12, 2004, and refers to that documents for a complete and accurate statement of its contents.

153(b).  SafeNet admits that it filed the Rainbow Proxy/Prospectus on February 12, 2004, and refers to that documents for a complete and accurate statement of its contents, and otherwise denies the allegations of paragraph 153(b).

153(c).  SafeNet admits that it filed the Rainbow Proxy/Prospectus on February 12, 2004, and refers to that documents for a complete and accurate statement of its contents.

153(d).  SafeNet admits that it filed the Rainbow Proxy/Prospectus on February 12, 2004, and refers to that documents for a complete and accurate statement of its contents.

154.  SafeNet admits that it filed the Rainbow Proxy/Prospectus on February 12, 2004, and refers to that documents for a complete and accurate statement of its contents.

155.  SafeNet (a) avers that the allegations of the first sentence of paragraph 155 consist of legal conclusions as to which no response is required or appropriate, (b) denies such allegations to the extent a response is required, and (c) refers to the Rainbow Proxy/Prospectus for a complete and accurate statement of its contents.

156.  SafeNet avers that the allegations of the second sentence of paragraph 156 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, that this was not disclosed in the documents referred to in paragraph 156, and that the Rainbow Registration Statement and Rainbow Proxy/Prospectus incorporated by reference other SafeNet public filings.  SafeNet refers to those documents for a

complete and accurate statement of their contents, and otherwise denies the allegations of paragraph 156.

157.  SafeNet avers that the allegations of the second sentence of paragraph 157 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

158.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2003 on March 10, 2004, which was signed by defendants Argo and Caputo and dismissed defendants Brooks, Harrison and Thaw, and refers to that document for a complete and accurate statement of its contents.

159.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2003 on March 10, 2004, and refers to that document for a complete and accurate statement of its contents.

160.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2003 on March 10, 2004, and refers to that document for a complete and accurate statement of its contents.

161.  SafeNet avers that the allegations of paragraph 161 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

162.  SafeNet (a) avers that the allegations of paragraph 162 relate to claims that have been dismissed and as to which no response is required, and (b) further avers that the allegations of paragraph 162 consist of legal conclusions as to which no response is required or appropriate, and (c) denies such allegations to the extent that a response is required.

163.  SafeNet admits that it issued a proxy statement on a Form 14A on April 29, 2004, which was signed by the directors and officers of SafeNet at that time, and refers to that document for a complete and accurate statement of its contents.  SafeNet avers that the allegations of the second sentence of paragraph 163 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

164.  SafeNet avers that the allegations of the second sentence of paragraph 164 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, admits that this was not disclosed in the 2004 proxy statement, and otherwise denies the allegations of paragraph 164.

165.  SafeNet admits that it issued a Form 10-Q for the first quarter of 2004 on May 10, 2004, which was signed by defendants Argo and Caputo, and refers to that document for a complete and accurate statement of its contents.

166.  SafeNet admits the allegation in the first clause of the first sentence of paragraph 166, and avers that the remaining allegations of that sentence consist of legal conclusions as to which no response is required or appropriate, and otherwise denies the allegations of paragraph 166.

167.  SafeNet avers that the allegations of paragraph 167 consist of legal conclusions as to which no response is required or appropriate, further avers that the allegations of paragraph 167 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

168.  SafeNet admits that it filed a Form 10-Q for the second quarter of 2004 on August 9, 2004, which was signed by defendants Caputo and Mueller, and refers to that document for a complete and accurate statement of its contents.

169.  SafeNet admits that it filed a Form 10-Q for the second quarter of 2004 on August 9, 2004, and refers to that document for a complete and accurate statement of its contents.

170.  SafeNet avers that the allegations of the second sentence of paragraph 170 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 170.

171.  SafeNet avers that the allegations of paragraph 171 consist of legal conclusions as to which no response is required or appropriate, further avers that the allegations of paragraph 171 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

172.  SafeNet admits that it filed a Form 10-Q for the third quarter of 2004 on November 9, 2004, and refers to that document for a complete and accurate statement of its contents.

173.  SafeNet admits that it filed a Form 10-Q for the third quarter of 2004 on November 9, 2004, and refers to that document for a complete and accurate statement of its contents.

174.  SafeNet avers that the allegations of the second sentence of paragraph 174 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 174.

175.  SafeNet avers that the allegations of paragraph 175 consist of legal conclusions as to which no response is required or appropriate, further avers that the allegations of paragraph 175 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

176.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2004 on March 16, 2005, which was signed by defendant Caputo and dismissed defendants Mueller, Brooks, Harrison, Hunt, Thaw, Clark and Money and refers to its Form 10-K for 2004 for a complete and accurate statement of its contents.

177.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2004 on March 16, 2005, and refers to its Form 10-K for 2004 for a complete and accurate statement of its contents.

178.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2004 on March 16, 2005, and refers to its Form 10-K for 2004 for a complete and accurate statement of its contents.

179.  SafeNet avers that the allegations of the second sentence of paragraph 179 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, admits that this was not disclosed in the 2004 Form 10-K, and otherwise denies the allegations of paragraph 179.

180.  SafeNet avers that the allegations of paragraph 180 consist of legal conclusions as to which no response is required or appropriate, further avers that the allegations of paragraph 180 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

181.  SafeNet admits that it filed an amendment to its 2004 Form 10-K, filed as a Form 10-K/A, on April 29, 2005, which was signed by defendant Caputo and dismissed defendants Mueller, Brooks, Harrison, Hunt, Thaw, Clark and Money, and refers to that document for a complete and accurate statement of its contents.

182.  SafeNet admits that it filed an amendment to its 2004 Form 10-K, filed as a Form 10-K/A, on April 29, 2005, and refers to that document for a complete and accurate statement of its contents.

183.  SafeNet avers that the allegations of the second sentence of paragraph 183 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, admits that this was not disclosed in the 2004 Form 10-K/A, and otherwise denies the allegations of paragraph 183.

184.  SafeNet avers that the allegations of paragraph 184 consist of legal conclusions as to which no response is required or appropriate, further avers that the allegations of paragraph 184 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

185.  SafeNet admits that it filed a Form 10-Q for the first quarter of 2005 on May 10, 2005, which was signed by defendant Caputo and dismissed defendant Mueller, and refers to that document for a complete and accurate statement of its contents.

186.  SafeNet admits the allegation in the first clause of the first sentence of paragraph 186, and avers that the remaining allegations of that sentence consist of legal conclusions as to which no response is required or appropriate, and otherwise denies the allegations of paragraph 186.

187.  SafeNet avers that the allegations of paragraph 187 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

188.  SafeNet admits that it filed a proxy statement on a Form 14A on July 6, 2005, which was signed by the directors and officers of SafeNet at that time, and  refers to that document for a complete and accurate statement of its contents.  SafeNet avers that the allegations of the fifth sentence of paragraph 188 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

189.  SafeNet avers that the allegations of the second sentence of paragraph 189 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, admits that this was not disclosed in the 2005 proxy statement, and otherwise denies the allegations of paragraph 189.

-33-

190.  SafeNet admits that it filed a Form 8-K on July 26, 2005, which was signed by defendant Caputo, and refers to that document for a complete and accurate statement of its contents.

191.  SafeNet avers that the allegations of the first sentence of paragraph 191 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 191.

192.  SafeNet admits that it filed a Form 10-Q for the second quarter of 2005 on August 9, 2005, which was signed by defendant Caputo and dismissed defendant Mueller, and refers to that document for a complete and accurate statement of its contents.

193.  SafeNet avers that the allegations of paragraph 193 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

194.  SafeNet admits the allegation in the first clause of the second sentence of paragraph 194 and avers that the remaining allegations of that sentence consist of legal conclusions as to which no response is required or appropriate, and otherwise denies the allegations of paragraph 194.

195.  SafeNet admits that it filed a Form 10-Q for the third quarter of 2005 on November 9, 2005, which was signed by defendant Caputo and dismissed defendant Mueller, and refers to that document for a complete and accurate statement of its contents.

196.  SafeNet admits that it filed a Form 10-Q for the third quarter of 2005 on November 9, 2005, and refers to that document for a complete and accurate statement of its contents.

197.  SafeNet avers that the allegations of the fourth sentence of paragraph 197 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, avers that, based on the information available to it and

-34-

under applicable accounting rules, SafeNet has determined that the date of the grants referenced in the second sentence of paragraph 197 was September 30, 2005, and otherwise denies the allegations of paragraph 197.

198.  SafeNet avers that the allegations of paragraph 198 consist of legal conclusions as to which no response is required or appropriate, further avers that the allegations of paragraph 198 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

199.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2005 on March 16, 2006, which was signed by defendant Caputo and dismissed defendants Mueller, Brooks, Harrison, Hunt, Thaw, Clark and Money, and refers to that document for a complete and accurate statement of its contents.

200.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2005 on March 16, 2006, and refers to that document for a complete and accurate statement of its contents.

201.  SafeNet admits that it filed a Form 10-K for the year ended December 31, 2005 on March 16, 2006, and refers to that document for a complete and accurate statement of its contents.

202.  SafeNet avers that the allegations of the first sentence of paragraph 202 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 202.

203.  SafeNet avers that the allegations of paragraph 203 consist of legal conclusions as to which no response is required or appropriate, further avers that the allegations of paragraph 203 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

204. SafeNet admits that it filed a Form 10-Q for the first quarter of 2006 on May 10, 2006, which were signed by defendants Caputo and Argo, and refers to that document for a complete and accurate statement of its contents.

205. SafeNet admits that it filed a Form 10-Q for the first quarter of 2006 on May 10, 2006, and refers to that document for a complete and accurate statement of its contents.

206. SafeNet admits that it filed a Form 10-Q for the first quarter of 2006 on May 10, 2006, and refers to that document for a complete and accurate statement of its contents.

207. SafeNet admits that it filed a Form 10-Q for the first quarter of 2006 on May 10, 2006, and refers to that document for a complete and accurate statement of its contents.

208. SafeNet admits that it filed a Form 10-Q for the first quarter of 2006 on May 10, 2006, and refers to that document for a complete and accurate statement of its contents.

209. SafeNet avers that the allegations of the second sentence of paragraph 209 consist of legal conclusions as to which no response is required or appropriate, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, admits that this was not disclosed in the Form 10-Q for the first quarter of 2006, and otherwise denies the allegations of paragraph 209.

210. SafeNet avers that the allegations of paragraph 210 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

211. SafeNet (a) admits that certain of SafeNet's financial statements filed with the SEC on Forms 10-K and 10-Q (and amendments) were signed and certified by defendants Caputo and Argo and dismissed defendant Mueller, (b) refers to those documents for a complete and accurate statement of their contents, (c) admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options,

(d) admits that this was not disclosed in certain of these filings, and (e) otherwise denies the allegations of paragraph 211.

212.  SafeNet avers that the allegations of paragraph 212 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, admits that it issued a press release on February 2, 2006, and refers to that document for a complete and accurate statement of its contents.

213.  SafeNet avers that the allegations of paragraph 213 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, admits that it issued a press release on February 2, 2006, and refers to that document for a complete and accurate statement of its contents; and further admits that on February 2, 2006, it disclosed during a conference call that it had concluded that the Company would be deferring $1 million in revenue that it had originally planned to recognize in the fourth quarter of 2005, and denies the allegations in the second-to-last sentence of paragraph 213.

214.  SafeNet avers that the allegations of paragraph 214 relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent that a response is required.

215.  SafeNet avers that the allegations of paragraph 215 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 215, and refers to the quoted document for a complete and accurate statement of its contents.

216.  SafeNet avers that the allegations of paragraph 216 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 216, and refers to the quoted document for a complete and accurate statement of its contents.

217.  SafeNet avers that the allegations of paragraph 217 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, SafeNet denies the allegations of paragraph 217, except admits that its stock price closed at $32.72 per share on February 2, 2006 and $27.75 per share on February 3, 2006, and the reported volume of shares traded on February 3, 2006, was 5,860,500 shares.

218.  SafeNet avers that the allegations of paragraph 218 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, SafeNet denies the allegations of paragraph 218, except admits that it filed a Form 10-Q/A on February 27, 2006, and  refers to that document for a complete and accurate statement of its contents.

219.  SafeNet avers that the allegations of paragraph 219 relate to claims that have been dismissed and as to which no response is required.  To the extent a response is required, SafeNet denies the allegations of paragraph 219, except admits that it issued a press release and filed a Form 8-K/A on March 13, 2006, and refers to those documents for a complete and accurate statement of their contents.

220.  SafeNet avers that the allegations of paragraph 220 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, SafeNet denies the allegations of paragraph 220, and refers to its March 13, 2006 Form 8-K/A for the effect of the restatement of its second quarter 2005 results.

221.  SafeNet avers that the allegations of paragraph 221 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, SafeNet denies the allegations of paragraph 221, except admits that it issued a press release and filed a Form 8-K/A on March 13, 2006, and refers to those documents for a complete and accurate statement of their contents.

222.  SafeNet denies the allegations of paragraph 222,  except admits that it issued a Form 10-K for the year 2005 on March 16, 2006, and refers to that document for a complete and accurate statement of its contents.

223.  SafeNet denies the allegations of paragraph 223,  except admits that it issued a press release on April 6, 2006, and refers to that document for a complete and accurate statement of its contents.

224.  SafeNet denies the allegations of paragraph 224,  except admits that its stock price closed at $25.97 per share on April 6, 2006 and $20.96 per share on April 7, 2006, and that the reported volume of SafeNet shares traded on April 7, 2006 was 6,199,500, and refers to the quoted Associated Press report for a complete and accurate statement of its contents.

225.  SafeNet avers that the allegations of paragraph 225 relate to claims that have been dismissed and as to which no response is required.  To the extent that a response is required, SafeNet denies the allegations of paragraph 225, except admits that it filed a Form 10-Q/A for the second and third quarters of 2005 on May 1, 2006, and refers to those documents for a complete and accurate statement of its contents.

226.  SafeNet denies the allegations of paragraph 226, except admits that it issued a press release on May 18, 2006 and refers to that document for a complete and accurate statement of its contents.

227.  SafeNet denies the allegations of the first and third sentences of paragraph 227, except admits that its stock price closed at $19.21 per share on May 18, 2006, $14.93 per share on May 19, 2006 and $32.72 per share on February 2, 2006, and avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of the second sentence of paragraph 227.

228.  SafeNet avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence and the first clause of the second sentence of paragraph 228, and refers to the document quoted in the second sentence for a complete and accurate statement of its contents.

229.  SafeNet avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations in the first clause of the first sentence of  paragraph 229, and refers to the quoted documents for a complete and accurate statement of their contents.

230.  SafeNet denies the allegations of paragraph 230.

231.  SafeNet denies the allegations of paragraph 231, except admits that it issued a press release on July 26, 2006, and refers to that document for a complete and accurate statement of its contents.

232.  SafeNet denies the allegations of paragraph 232, except admits that it filed a Form 8-K on September 18, 2006 and a Form 8-K/A on September 28, 2006, and refers to those documents for a complete and accurate statement of their contents.

233.  SafeNet avers that many of the allegations of paragraph 233 relate to claims that have been dismissed and as to which no response is required.  To the extent a response is required, SafeNet denies the allegations of paragraph 233, except admits that it filed a Form 8-K on January 9, 2007, and refers to that documents for a complete and accurate statement of its contents.

234.  SafeNet denies the allegations of paragraph 234, except admits that the United States Attorney for the Southern District of New York filed a criminal indictment against defendant Argo on July 25, 2007, and that the SEC filed a civil complaint against defendant Argo on August 1, 2007, and refers to those documents for a complete and accurate statement of their contents.

235.  SafeNet admits that defendant Argo pleaded guilty to one count of securities fraud on October 5, 2007, and refers to the transcript of the plea allocution proceedings dated October 5, 2007 for a complete and accurate statement of its contents.

236.  SafeNet denies the allegations of paragraph 236, except admits that the United States Attorney for the Southern District of New York filed a criminal indictment against defendant Argo on July 25, 2007 and refers to that document for a complete and accurate statement of its contents, admits the allegations in the last sentence of paragraph 236, and admits that as of the date of the Amended Complaint, the SEC proceedings against Ms. Argo were still pending.

237.  SafeNet denies that the allegations of paragraph 237 provide a complete and accurate description of GAAP, and refers to the quoted and referenced documents for a complete and accurate statement of their contents, except admits that during the Class Period SafeNet represented that its financial statements as filed with the SEC were prepared in accordance with GAAP in all material respects, except as otherwise noted.

238.  SafeNet avers that the allegations of paragraph 238 consist of legal conclusions as to which no response is required or appropriate, and that many of those allegations relate to claims that have been dismissed and as to which no response is required, and denies such allegations to the extent a response is required.

239.  SafeNet denies that the allegations of paragraph 239 provide a complete or accurate description of SEC rules regulations and the Sarbanes-Oxley Act of 2002, and refers to the SEC rules and regulations and the Sarbanes-Oxley Act for a complete and accurate statement of their contents.

240.  SafeNet admits that prior to 2006, if a publicly traded company issued options with an exercise price less than the market price of the company's stock on the measurement date for the options, the company was required to recognize compensation expense in its financial statements,

and refers to the SEC rules and regulations and ABP 25 for a complete and accurate statement of their contents. SafeNet further admits that during the Class Period the Company represented in its financial statements that it applied APB No. 25, and admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and that this was not disclosed in certain instances, and otherwise denies the allegations of paragraph 240.

241. SafeNet avers that the allegations of paragraph 241 relate to claims that have been dismissed and as to which no response is required. To the extent that a response is required, SafeNet denies the allegations of paragraph 241, except refers to the referenced documents for a complete and accurate statement of their contents.

242. SafeNet avers that the allegations of paragraph 242 relate to claims that have been dismissed and as to which no response is required. To the extent a response is required, SafeNet denies the allegations of paragraph 242, except refers to AICPA SOP Nos. 81-1 and 97-2 for a complete and accurate statement of their contents.

243. SafeNet avers that the allegations of paragraph 243 relate to claims that have been dismissed and as to which no response is required. To the extent that a response is required, SafeNet denies the allegations of paragraph 243, except refers to SEC SAB 101 for a complete and accurate statement of its contents.

244. SafeNet avers that the allegations of paragraph 242 relate to claims that have been dismissed and as to which no response is required. To the extent a response is required, SafeNet denies the allegations of paragraph 244, except refers to GAAP and FASB Concepts Statement Nos. 1 and 2 for a complete and accurate statement of their contents.

245. SafeNet denies the allegations of paragraph 245.

246. SafeNet denies the allegations of paragraph 246, except admits that stock options are a form of employee compensation, that the value of stock options depends in part on their strike price, and that options with lower strike prices are more valuable than options with higher strike prices.

247. SafeNet denies the allegations of paragraph 247.

248. SafeNet denies the allegations of paragraph 248.

249. SafeNet denies the allegations of paragraph 249.

250. SafeNet admits that Plaintiffs purport to provide the number, price, proceeds and date of SafeNet shares sold by certain SafeNet employees during the Class Period in a chart contained in paragraph 250, and avers that the chart does not provide a complete description of the number, price, proceeds and date of SafeNet shares sold by SafeNet employees during the Class Period.

251. SafeNet denies the allegations of paragraph 251, except (a) admits that SafeNet acquired Rainbow Technologies on March 15, 2004, and (b) further admits that SafeNet acquired MediaSentry, Inc., on June 1, 2005.

252. SafeNet denies the allegations of paragraph 252.

253. SafeNet admits the allegations of the first and second sentences of paragraph 253, and denies the allegations of the third sentence of paragraph 253.

254. SafeNet denies the allegations of paragraph 254, except admits that on September 29, 2005, the Company announced that it had been awarded a $150 million contract by the Department of Defense for its KIV-7M link encryptor, and refers to the referenced report for a complete and accurate statement of its contents.

255. SafeNet admits that Plaintiffs brought this action on their own behalf and purportedly as a class pursuant to Rule 23(a) and Rule 23(b)(3) of the Federal Rules of Civil Procedure.

256. SafeNet avers that the allegations of paragraph 256 consist of legal conclusions as to which no response is required or appropriate, and otherwise denies the allegations of paragraph 256.

257.   SafeNet admits that Plaintiffs purport to exclude the listed persons and entities from their definitions of the class.

258.   SafeNet admits that prior to its conversion to a private company, SafeNet was traded on the NASDAQ electronic exchange, refers to trading records published by NASDAQ that reflect purported volumes of shares traded, and further admits that securities analysts published reports about SafeNet during the Class Period.  SafeNet avers that it is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of paragraph 258.

259.   SafeNet avers that the allegations of paragraph 259 consist of legal conclusions as to which no response is required or appropriate, and further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 259, except admits that as of May 4, 2006, SafeNet had 27,546,926 shares of common stock outstanding, and as of February 5, 2004, Rainbow had 27,206,602 shares of common stock outstanding.

260.   SafeNet avers that the allegations of paragraph 260 consist of legal conclusions as to which no response is required or appropriate, and otherwise denies the allegations of paragraph 260.

261.   SafeNet avers that the allegations of paragraph 261 consist of legal conclusions as to which no response is required or appropriate, and further avers that SafeNet is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 261.

262.   SafeNet avers that the allegations of paragraph 262 consist of legal conclusions as to which no response is required or appropriate, and to the extent a response is required, denies that any Class or Subclass member suffered damages as a result of SafeNet's conduct.

263.   SafeNet avers that the allegations of paragraph 263 consist of legal conclusions as to which no response is required or appropriate.

264.  SafeNet avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 264, which purport to relate to Plaintiffs' state of mind.

265.  SafeNet admits that the transfer agent for SafeNet's shares maintained the names and addresses of the record holders of its shares, and avers that the record holders in most cases would not be the beneficial owners of its shares and that none of its shares are currently held by public shareholders.

266.  SafeNet avers that the first two lines of paragraph 266 purport to state a legal conclusion as to which no response is required, and denies the remaining allegations of paragraph 266, except admits that, before being acquired by Vector Capital on April 12, 2007, (a) SafeNet's common stock was listed and traded on the NASDAQ, (b) SafeNet filed certain periodic public reports with the SEC, (c) SafeNet issued press releases that were publicly available, and (d) research analysts and other market professionals followed and publicly reported on SafeNet's public statements.

267.  SafeNet denies the allegations of paragraph 267.

## COUNT I

268.  In answer to the allegations of paragraph 268, SafeNet incorporates and restates its answers to the allegations of the Complaint as if fully set forth herein, and otherwise denies the allegations of paragraph 268.

269.  SafeNet denies the allegations of paragraph 269.

270.  SafeNet denies the allegations of paragraph 270.

271.  SafeNet denies the allegations of paragraph 271.

272.  SafeNet denies the allegations of paragraph 272.

273.  SafeNet denies the allegations of paragraph 273.

274.  SafeNet denies the allegations of paragraph 274.

275.  SafeNet denies the allegations of paragraph 275.

276.  SafeNet denies the allegations of paragraph 276.

277.  SafeNet denies the allegations of Paragraph 277.

278.  SafeNet denies the allegations of paragraph 278.

279.  SafeNet denies the allegations of paragraph 279.

280.  SafeNet denies the allegations of paragraph 280.

## COUNT II

281.  SafeNet avers that it is not named in Count II and hence need not respond to it.  To the extent a response is required to the allegations of paragraph 281, SafeNet incorporates and restates its answers to the allegations of the Complaint as if fully set forth herein.

282.  To the extent a response is required to the allegations of paragraph 282, SafeNet incorporates and restates its answers to the allegations of paragraphs 245 to 254 as if fully set forth herein, and further denies each and every remaining allegation of paragraph 282.

283.  To the extent a response is required, SafeNet denies the allegations of paragraph 283.

284.  To the extent a response is required, SafeNet denies the allegations of paragraph 284.

## COUNT III

285.  SafeNet avers that this Count was dismissed by the Court's Order dated August 5, 2009, and that no response is required.  To the extent a response is required, SafeNet incorporates and restates its answers to the allegations of the Complaint as if fully set forth herein in answer to the allegations of paragraph 285.

286.  To the extent a response is required, SafeNet denies the allegations of paragraph 286.

287.  To the extent a response is required, SafeNet denies the allegations of paragraph 287.

288.  To the extent a response is required, SafeNet denies the allegations of paragraph 288.

289.  To the extent a response is required, SafeNet denies the allegations of paragraph 289.

290.  To the extent a response is required, SafeNet denies the allegations of paragraph 290.

291.  To the extent a response is required, SafeNet denies the allegations of paragraph 291.

292.  To the extent a response is required, SafeNet denies the allegations of paragraph 292.

293.  To the extent a response is required, SafeNet denies the allegations of paragraph 293.

294.  To the extent a response is required, SafeNet denies the allegations of paragraph 294.

## COUNT IV

295.  SafeNet avers that this Count did not name SafeNet and was dismissed by the Court's Order dated August 5, 2009, and that no response is required.  To the extent a response is required, SafeNet incorporates and restates its answers to the allegations of the Complaint as if fully set forth herein in answer to the allegations of paragraph 295.

296.  To the extent a response is required, SafeNet incorporates and restates its response to paragraphs 245 to 254 of the Complaint as if fully set forth herein, and otherwise denies the allegations of paragraph 296.

297.  To the extent a response is required, SafeNet denies the allegations of paragraph 297.

298.  To the extent a response is required, SafeNet denies the allegations of paragraph 298.

## COUNT V

299.  SafeNet avers that this Count was dismissed by the Court's Order dated August 5, 2009, and that no response is required.  To the extent a response is required, SafeNet incorporates and restates its answers to the allegations of the Complaint as if fully set forth herein in answer to the allegations of paragraph 299, and otherwise denies the allegations of paragraph 299.

300.  To the extent a response is required, SafeNet denies the allegations of paragraph 300.

301.  To the extent a response is required, SafeNet denies the allegations of paragraph 301.

302.  To the extent a response is required, SafeNet refers to Rule 14a-9 for a complete and accurate statement of its contents.

303.  To the extent a response is required, SafeNet denies the allegations of paragraph 303.

304.  To the extent a response is required, SafeNet denies the allegations of paragraph 304.

305.  To the extent a response is required, SafeNet denies the allegations of paragraph 305.

306.  To the extent a response is required, SafeNet denies the allegations of paragraph 306.

## COUNT VI

307.  SafeNet denies the allegations of paragraph 307, except admits that Plaintiffs purport to assert claims for violation of Section 14(a) of the Exchange Act.

308.  SafeNet avers that the allegations of paragraph 308 consist of legal conclusions as to which no response is required or appropriate, and refers to the Exchange Act and Rule 14a-9 for a complete and accurate statement of their contents.

309.  SafeNet denies the allegations of paragraph 309.

310.  In answer to the allegations of paragraph 310, SafeNet incorporates and restates its answers to the allegations of paragraphs 1 to 244 and 255 to 267 of the Complaint as if fully set forth herein, and further denies each and every remaining allegation of paragraph 310.

311.  SafeNet admits that it issued a press release on October 22, 2003 and that its stock price closed at $41.02 that same day.  SafeNet refers to its press release of October 22, 2003, for a complete and accurate statement of its contents.

312.  SafeNet admits that it filed a Current Report on Form 8-K and a Form 425 on October 24, 2008, and a Form 425 on October 27, 2003, refers to those documents for a complete and accurate statement of their contents, and denies the allegations of the last clause of the fourth sentence of paragraph 312.

313.  SafeNet admits that it filed Forms 425 on November 3, 7 and 12, 2003, January 14, 2004 and February 4, 2004, refers to those documents for a complete and accurate statement of their contents, and denies the allegations of the last clause of the third sentence of paragraph 313.

314.  SafeNet admits that its closing stock price was $39.99 per share on February 9, 2004, that it filed a registration statement on Form S-4 on Novrember 14, 2003, and that it filed amended registration statements on Form S-4/A on January 15 and February 11, 2004, and refers to those documents for a complete and accurate statement of their contents.

315.  SafeNet refers to the Rainbow Proxy/Prospectus for a complete and accurate statement of its contents, and otherwise denies the allegations of paragraph 315.

316.  SafeNet admits the allegations of the first and second sentences of paragraph 316, and denies the allegations of the third sentence of paragraph 316.

317.  SafeNet admits and avers that it acquired Rainbow Technologies on March 15, 2004, that Rainbow shares were exchanged for 0.374 shares of SafeNet stock, and that SafeNet's stock price closed at $37.34 on March 16, 2004.

318.  SafeNet denies the allegations of paragraph 318.

319.  SafeNet denies the allegations of paragraph 319, except admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and that using the revised measurement dates may have affected SafeNet's financial results for 2000 through 2003.

320.  SafeNet refers to the Rainbow Proxy/Prospectus and the 2001 Omnibus Stock Plan for a complete and accurate statement of their contents, admits that it has determined that the fair market value of SafeNet stock on the measurement dates for certain option grants was different from the strike price of those options, and otherwise denies the allegations of paragraph 320.

321.  SafeNet denies the allegations of paragraph 321, except admits that the Rainbow Proxy/Prospectus incorporated the listed SafeNet SEC filings.

322.  SafeNet avers that the allegations of paragraph 322 consist of legal conclusions as to which no response is required or appropriate.  To the extent a response is required, denies the allegations of paragraph 322, except admits that SafeNet issued the Rainbow Proxy/Prospectus and that certain of the individual defendants' names were on the Rainbow Proxy/Prospectus and that they participated in various aspects of the preparation and dissemination of the Rainbow Proxy/Prospectus, and refers to that document for a complete and accurate statement of its contents.

323.  SafeNet denies the allegations of paragraph 323.

324.  SafeNet denies the allegations of paragraph 324.

325.  SafeNet denies the allegations of paragraph 325.

## COUNT VII

326.  In answer to the allegations of paragraph 326, SafeNet incorporates and restates its answers to the allegations of paragraphs 307 to 325 as if fully set forth herein, and further denies each and every remaining allegation of paragraph 326.

327.  SafeNet denies the allegations of paragraph 327.

328.  SafeNet denies the allegations of paragraph 328.

329.  SafeNet avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 329 relating to the state of mind of Plaintiff Golde or any other purported class member, and otherwise denies the allegations of paragraph 329.

330.  SafeNet admits the allegations in paragraph 330.

331.  SafeNet admits that Plaintiffs brought this claim within three years after SafeNet common stock was issued to Rainbow Subclass members in connection with the Rainbow acquisition, admits that Plaintiff Golde and other members of the purported Rainbow Subclass obtained their shares before SafeNet made available to its shareholders an earnings statement covering a period of at least 12 months after the effective date of the Rainbow Registration Statement, and denies knowledge or information sufficient to form a belief as to the truth the allegation that this claim was brought within one year after the purported discovery of any untrue statements in the Rainbow Registration Statement or Rainbow Proxy/Prospectus.

332.  SafeNet denies the allegations of paragraph 332.

333.  SafeNet denies the allegations of paragraph 333.

## COUNT VIII

334.  In answer to the allegations of paragraph 334, SafeNet incorporates and restates its answers to the allegations of paragraphs 307 to 333 as if fully set forth herein, and otherwise denies the allegations of paragraph 334.

335.  SafeNet admits that defendants Caputo and Argo participated in various aspects of the negotiation of the Rainbow Acquisition and preparation and dissemination of the Rainbow Proxy/Prospectus, and otherwise denies the allegations of paragraph 335.

336.  SafeNet incorporates and restates its above answers to the allegations in the Complaint as if fully set forth herein, and otherwise denies the allegations of paragraph 336.

337.  SafeNet avers that it is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 337 regarding plaintiffs' knowledge, and otherwise denies the  remaining allegations of paragraph 337.

338.  SafeNet avers that the allegations of the first sentence of paragraph 338 consist of legal conclusions as to which no response is required or appropriate, and otherwise denies the remaining allegations of paragraph 338.

339.  SafeNet admits that Plaintiffs brought this claim within three years after SafeNet common stock was issued to Rainbow Subclass members in connection with the Rainbow acquisition, and denies knowledge or information sufficient to form a belief as to the truth the allegation that this claim was brought within one year after the purported discovery of any untrue statements or omissions in the Rainbow Registration Statement or Rainbow Proxy/Prospectus.

340.  SafeNet denies the allegations of paragraph 340.

341.  SafeNet denies that any member of the Rainbow Subclass continue to hold SafeNet stock, and thus the allegations of paragraph 341 are denied.

## COUNT IX

342.  SafeNet avers that it is not named in this Count, and that no response is required. To the extent a response is required, SafeNet incorporates and restates its answers to the allegations of paragraphs 307 to 341 as if fully set forth herein, and further denies the allegations of the third sentence of paragraph 342.  SafeNet avers that the allegations of the second sentence of paragraph 342 consist of legal conclusions as to which no response is required or appropriate, and denies such allegations to the extent a response is required.

343.  To the extent a response is required, SafeNet denies the allegations of paragraph 343, except admits that Plaintiffs purport to assert this claim against the Rainbow Acquisition Defendants.

344.  To the extent a response is required, SafeNet denies the allegations of paragraph 344.

345.  To the extent a response is required, SafeNet denies the allegations of paragraph 345.

346.  To the extent a response is required, SafeNet denies the allegations of paragraph 346, except admits that it filed the Rainbow Registration Statement and Rainbow Proxy/Prospect on February 11 and 12, 2004, and refers to those documents for a complete and accurate statement of their contents.

347.  To the extent a response is required, SafeNet denies the allegations of paragraph 347.

348.  To the extent a response is required, SafeNet denies the allegations of paragraph 348, except admits that Plaintiffs brought this claim within three years after SafeNet common stock was issued to Rainbow Subclass members in connection with the Rainbow acquisition, and denies knowledge or information sufficient to form a belief as to the truth of the allegation that this claim was

brought within one year after the purported discovery of any untrue statements or omissions in the Rainbow Registration Statement or Rainbow Proxy/Prospectus.

349.  SafeNet denies the allegations of paragraph 349.

Unnumbered.  No response is required to plaintiffs' prayer for relief, but SafeNet denies said prayer to the extent a response is required.

SafeNet denies all of the allegations of the Complaint not specifically admitted above.

## DEFENSES

In asserting the following defenses, SafeNet does not assume any burden of proof with respect to any issue where the applicable law places the burden upon plaintiffs.  SafeNet sets forth its affirmative defenses as follows:

## FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted against SafeNet and, as noted above, many of the claims in the Complaint were dismissed for failure to state a claim by the Court's Order dated August 5, 2009.

## SECOND DEFENSE

Plaintiffs cannot establish that SafeNet's conduct caused them any injury.

## THIRD DEFENSE

Plaintiffs were not damaged by SafeNet's conduct.

## FOURTH DEFENSE

The Complaint is not sufficiently particularized to satisfy the requirements of the Federal Rules of Civil Procedure and the Private Securities Litigation Reform Act.

## FIFTH DEFENSE

This action is not properly maintainable as a class action.

-54-

## SIXTH DEFENSE

Plaintiffs' claims are barred by the applicable statute of limitations and/or laches.

## SEVENTH DEFENSE

The claims asserted in the Complaint are barred because Plaintiffs have sustained no legally cognizable damage by virtue of any misrepresentation or omission alleged in the Complaint. Such alleged misrepresentations and omissions did not cause or were not a material causal factor in the drop in SafeNet's stock price or value of which plaintiffs complain.

## EIGHTH DEFENSE

Under any theory of liability, Plaintiffs may not recover damages based on depreciation in value of SafeNet stock that resulted from factors other than the allegedly material misstatements or omissions cited in the Complaint.

## NINTH DEFENSE

The claims asserted in the Complaint are barred in whole or in part because Plaintiffs did not reasonably rely on SafeNet's relevant public filings and press releases, alleged in the Complaint to be materially false or misleading when made.

## TENTH DEFENSE

SafeNet's public filings contained meaningful cautionary statements that preclude Plaintiffs from prevailing on their claims.

## ELEVENTH DEFENSE

Plaintiffs failed to exercise due care or mitigate their damages with respect to the transactions that allegedly form the basis of the claims against SafeNet.

## TWELFTH DEFENSE

Plaintiffs are not entitled to any recovery or remedy for their purported claims against SafeNet to the extent that they (or persons acting on their behalf) knew, or in the exercise of reasonable

diligence or care should have known, the facts concerning the allegedly material misstatements or omissions cited in the Complaint.

## THIRTEENTH DEFENSE

The claims asserted in the Complaint are barred because SafeNet had, after a reasonable and diligent investigation, reasonable grounds to believe, and did believe, at the time its registration statements and prospectuses became effective, that certain of the representations in the registration statements and prospectuses that Plaintiffs challenge were true and that as to those representations there were no misstatements of material fact or omissions of material fact that were necessary to make the representations therein not misleading.

## FOURTEENTH DEFENSE

SafeNet is not liable to the extent the acts or omissions alleged in the Complaint relate to any portion of the referenced registration statements and prospectuses that were reviewed by experts retained to assist in preparing the registration statements and prospectuses, as to which SafeNet conducted a reasonable and diligent investigation.

## FIFTEENTH DEFENSE

SafeNet is not liable to Plaintiffs because it (or persons acting on its behalf) did not act with the required state of mind regarding any of the alleged conduct on which the Complaint is based.

## SIXTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that they would have purchased SafeNet securities even with full knowledge of the facts that they allege were misrepresented or omitted.

## SEVENTEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, because of lack of transaction causation and/or loss causation.

## EIGHTEENTH DEFENSE

Plaintiffs assumed the risk that the market value of the SafeNet securities they purchased might decline as a result of unforeseeable events beyond the control of SafeNet.

## NINETEENTH DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that the damages sought exceed those permitted under the 1933 Act, the 1934 Act, the Private Securities Litigation Reform Act, or any other applicable rule or regulation promulgated thereunder.

## TWENTIETH DEFENSE

Plaintiffs' claims are barred, in whole or in part, to the extent that Plaintiffs benefitted in any manner from the alleged inflated market price of SafeNet securities.

## TWENTY-FIRST DEFENSE

Plaintiffs' claims are barred, in whole or in part, because the public filings and other public statements made by SafeNet and upon which Plaintiffs allegedly relied did not contain any material misrepresentations or omissions or because the misrepresentations or omissions upon which Plaintiffs allegedly relied were not material.

## TWENTY-SECOND DEFENSE

SafeNet hereby gives notice that it intends to rely upon such other and further defenses as may become available or apparent during pre-trial proceedings in this case and hereby reserves its rights to amend its answer and assert such defenses.

## PRAYER FOR RELIEF

WHEREFORE, SafeNet prays (a) that judgment be entered dismissing the Consolidated

Amended Complaint on the merits, in its entirety and with prejudice, (b) for a jury of 12 persons on any

triable issues, and (c) that this Court grant such other relief as it deems just and appropriate.


Dated:  October 7, 2009                          Respectfully submitted,


                                                 /s/ Richard H. Klapper
                                                 Richard H. Klapper (RK 0069)
                                                 Andrew H. Reynard (AR 9614)
                                                 SULLIVAN & CROMWELL LLP
                                                 125 Broad Street
                                                 New York, New York  10004
                                                 (212) 558-4000
                                                 Facsimile:  (212) 558-3588
                                                 *Counsel for SafeNet, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

The I certify that on this 7th day of October, 2009, I caused SafeNet, Inc.'s, Answer to the Consolidated Amended Class Action Complaint to be filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

 /s/ Andrew H. Reynard
Andrew H. Reynard
