## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, PLYMOUTH COUNTY RETIREMENT SYSTEM, STATE-BOSTON RETIREMENT SYSTEM, and MICHAEL GOLDE, On Behalf of Themselves and All Others Similarly Situated,<br><br>    Plaintiffs,<br><br>v.<br><br>SAFENET, INC., ANTHONY A. CAPUTO, KENNETH A. MUELLER, CAROLE D. ARGO, THOMAS A. BROOKS, IRA A. HUNT, Jr., BRUCE R. THAW, ARTHUR L. MONEY, SHELLEY A. HARRISON, and ANDREW E. CLARK<br><br>    Defendants. | Lead Case No. 06 Civ. 5797 (PAC)<br>**DEFENDANT CAROLE D. ARGO'S ANSWER TO THE SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |

## ANSWER OF CAROLE D. ARGO

Defendant Carole D. Argo, through counsel, answers the Second Amended Complaint ("Complaint") in this matter as follows:

To the extent the paragraphs of the Complaint are grouped under headings and subheadings, Ms. Argo responds generally that such headings and sub-headings (which are not repeated below) state legal conclusions and argument as to which no response is required. To the extent a response is required, Ms. Argo denies each and every heading and subheading in the Complaint and incorporates by reference this response in each paragraph below as if fully set forth therein.

Ms. Argo avers that she need not respond to the allegations in the introductory paragraph on page 1 of the Complaint. To the extent a response is required, Ms. Argo incorporates her

responses to the numbered paragraphs as set forth below.  Ms. Argo notes that on August 5,

2009, this Court issued an order granting, in part, Defendants' Motion to Dismiss, and that Order

dismisses certain of Plaintiffs' claims and allegations.  Ms. Argo answers the Complaint in its

entirety, but, where appropriate, asserts that certain claims or allegations are no longer valid in

light of the Court's August 5, 2009 Order.

      1.      Paragraph 1 sets forth legal and accounting conclusions to which no response is

required.  Paragraph 1 also includes allegations that relate to counts in the Complaint that have

been dismissed by the Court's Order and Opinion dated August 5, 2009 and to which no

response is required.  To the extent a response is required, Ms. Argo denies the allegations,

except that Ms. Argo admits that SafeNet announced that it concluded that certain options grants

were or appeared likely to be accounted for incorrectly and that she pleaded guilty to a single

count of securities fraud in connection with SafeNet stock options granted in October 2001 and,

in connection with her plea, acknowledged that SafeNet's accounting for certain other stock

option grants was wrong.  Ms. Argo also admits that she is a former President, CFO and COO of

SafeNet, that Mr. Caputo was a former CEO of SafeNet and that Mr. Mueller was a former CFO

of SafeNet.  Ms. Argo admits that she received stock options from SafeNet and she exercised

some of the options she received.  To the extent the allegations in Paragraph 1 are directed to

parties other than Ms. Argo, no response is required.  To the extent a response is required, Ms.

Argo lacks knowledge or sufficient information to form a belief as to the truth of such allegations

and, on that basis, such allegations are denied.

      2.      With respect to Paragraph 2, Ms. Argo admits that SafeNet developed,

marketed, sold and supported hardware and software information security products and services

that protect and secure communications, intellectual property, information and identities for

private businesses and governmental entities.  Ms. Argo also admits that SafeNet's stock price at

times during the Class Period was above $40 per share. Ms. Argo respectfully refers the Court to SafeNet's April 22, 2003 Press Release, which contains a complete and accurate statement of its contents. Ms. Argo denies the remainder of the allegations.

3.    Paragraph 3 sets forth legal and accounting conclusions to which no response is required. Paragraph 3 also includes allegations that relate to counts in the Complaint that have been dismissed by this Court in its Opinion and Order dated August 5, 2009 and to which no response is required. To the extent a response is required, and with respect to the remainder of the allegations, Ms. Argo denies the allegations except that Ms. Argo admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong. Ms. Argo denies that SafeNet's publicly traded securities traded at artificially inflated prices during the Class Period.

4.    Paragraph 4 sets forth legal and accounting conclusions for which no response is required. To the extent a response is required, Ms. Argo denies the allegations in Paragraph 4, except that she admits that options backdating is generally described as a practice whereby a company grants options on a given date and sets the strike price of the options at the market value of the stock on an earlier date, and otherwise avers that the allegations of Paragraph 4 do not provide a complete and accurate description of "options backdating" and that the term "options backdating" does not have a single, defined meaning.

5.    Ms. Argo denies the allegations in Paragraph 5, except she admits that option grants can be used to compensate employees and otherwise avers that the remaining allegations of Paragraph 5 consist of legal and accounting conclusions as to which no response is required. Ms. Argo respectfully refers the Court to the SEC rules and regulations and Generally Accepted Accounting Principles ("GAAP") for a complete and accurate statement of their contents.

6.      Ms. Argo denies the allegations in Paragraph 6, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong. To the extent the allegations in Paragraph 6 are directed to parties other than Ms. Argo, no response is required. To the extent a response is required, Ms. Argo lacks knowledge or sufficient information to form a belief as to the truth of such allegations and, on that basis, such allegations are denied.

7.      The allegations of Paragraph 7 are directed to parties other than Ms. Argo who have been dismissed from this action and set forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo admits that members of SafeNet's Compensation Committee approved option grants, signed Unanimous Written Consents and received options grants, but otherwise denies the allegations on the basis that she lacks knowledge or information sufficient to form a belief about the truth of the allegations. To the extent that Paragraph 7 refers to certain of SafeNet's SEC filings, Ms. Argo respectfully refers the Court to such filings, which contain a complete and accurate statement of their contents.

8.      No response to Paragraph 8 is required because Plaintiffs' claims pertaining to accounting issues unrelated to stock option grants have been dismissed by the Court's Order and Opinion dated August 5, 2009.

9.      Ms. Argo denies the allegations of Paragraph 9, except she admits that SafeNet's closing stock price was $32.72 per share on February 2, 2006, $27.75 on February 3, 2006, $25.97 on April 6, 2006, $20.96 on April 7, 2006, $19.21 on May 18, 2006 and $14.93 on May 19, 2006, and she respectfully refers the Court to the referenced and quoted documents, which contain a complete and accurate statement of their contents.

- 4 -

10.    Ms. Argo denies the allegations in Paragraph 10, except she admits that she is aware that SafeNet has concluded that certain grants were accounted for incorrectly and Ms. Argo respectfully refers the Court to the referenced and quoted documents, which contain a complete and accurate statement of their contents.

11.    Ms. Argo denies the allegations in Paragraph 11, except she admits that SafeNet was acquired by Vector Capital on April 12, 2007 and as a result was no longer a public reporting company.

12.    With respect to Paragraph 12, Ms. Argo admits that she pleaded guilty to a single count of securities fraud in 2007 and that she was sentenced to a prison term in 2008 in connection with her guilty plea, and respectfully refers the Court to the criminal indictment, which contains a complete and accurate statement of its contents.  Ms. Argo admits that the government has been investigating SafeNet, but states that she does not know the current status of any such investigations, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations and, on that basis, the allegations are denied.

13.    Ms. Argo denies the allegations in Paragraph 13, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

14.    Ms. Argo denies the allegations in Paragraph 14, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

15.    Ms. Argo denies the allegations in Paragraph 15, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

16.      Ms. Argo avers that the allegations of paragraph 16 relate to claims that have been dismissed and as to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

17.      Ms. Argo denies the allegations in Paragraph 17, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

18.      Ms. Argo denies the allegations in Paragraph 18, except (a) admits that on November 12, 2009, the SEC issued a press release concerning a settlement with SafeNet and others, and (b) refers to the quoted document for a complete and accurate statement of its contents.

19.      Ms. Argo denies the allegations in Paragraph 19, except (a) admits that on November 12, 2009, the SEC issued a press release concerning a settlement with SafeNet and others, and (b) refers to the quoted document for a complete and accurate statement of its contents.

20.      Ms. Argo denies the allegations in Paragraph 20.

21.      Ms. Argo denies the allegations in Paragraph 21, except Ms. Argo admits that SafeNet acquired Rainbow Technologies, Inc. ("Rainbow") in a stock-based merger in which Rainbow shareholders exchanged their shares for 0.374 SafeNet shares, and that on October 21, 2003, SafeNet's closing stock was $42.95 per share.

22.      To the extent Paragraph 22 incorporates allegations pertaining to accounting issues unrelated to stock option grants that have been dismissed by the Court's Order and Opinion dated August 5, 2009, no response is required. With respect to the remainder of the

allegations, Paragraph 22 sets forth legal conclusions for which no response is required.  To the extent a response is required, Ms. Argo denies the allegations.

23.      To the extent Paragraph 23 incorporates allegations pertaining to accounting issues unrelated to stock option grants that have been dismissed by the Court's Order and Opinion dated August 5, 2009, no response is required.  With respect to the remainder of the allegations, Paragraph 23 sets forth legal conclusions for which no response is required.  To the extent a response is required, Ms. Argo denies the allegations.

24.      Paragraph 24 sets forth legal conclusions for which no response is required.  To the extent a response is required, Ms. Argo denies the allegations in Paragraph 24.

25.      Paragraph 25 sets forth legal conclusions for which no response is required.  To the extent a response is required, Ms. Argo denies the allegations in Paragraph 25.

26.      Ms. Argo admits that SafeNet engaged in interstate commerce in connection with certain acts and conduct alleged in the Complaint and not denied herein.  Ms. Argo admits that she pleaded guilty to one count of securities fraud.  Ms. Argo admits that the U.S. Attorneys' Office for the Southern District of New York has been investigating SafeNet, but states that she does not know the current status of its investigation, and otherwise lacks information or knowledge sufficient to form a belief as to the truth of the allegations and, on that basis, the allegations are denied.

27.      Ms. Argo denies that Plaintiff Police and Fire Retirement System of the City of Detroit suffered damages as a result of the conduct alleged in the Complaint.  Ms. Argo lacks knowledge or sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 27 and, on that basis, the allegations are denied.

28.      Ms. Argo denies that Plaintiff Plymouth County Retirement System suffered damages as a result of the conduct alleged in the Complaint.  Ms. Argo lacks knowledge or

sufficient information to form a belief as to the truth of the remaining allegations in Paragraph 28 and, on that basis, the allegations are denied.

29.     Ms. Argo denies that Plaintiff State-Boston Retirement System suffered damages as a result of the conduct alleged in the Complaint. Ms. Argo lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 29 and, on that basis, the allegations are denied.

30.     Ms. Argo admits Paragraph 30.

31.     With respect to Paragraph 31, Ms. Argo denies that Plaintiff Golde suffered cognizable damages, but otherwise lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, the allegations are denied.

32.     Ms. Argo admits Paragraph 32.

33.     Paragraph 33 sets forth legal and accounting conclusions and contains allegations that are directed to parties other than Ms. Argo as to which no response is needed. To the extent a response is required, Ms. Argo denies the allegations of Paragraph 33, except Ms. Argo admits and avers that (a) Mr. Caputo was the Chief Executive Officer and Chairman of the Board of Directors of SafeNet during the putative Class Period, (b) that he signed, or caused to be signed, the Rainbow Registration Statement and all of SafeNet's Forms 10-K and 10-Q during the Class Period, (c) that his resignation was announced on October 18, 2006, (d) that he received grants of stock options from SafeNet, (e) that on November 10, 2009 the SEC filed a complaint against SafeNet and others, including Mr. Caputo, and (g) refers to that complaint for a complete and accurate statement of its contents. With respect to the remainder of the allegations, Ms. Argo lacks knowledge or information sufficient to form a belief as to the truth of the allegations and, on that basis, the allegations are denied.

- 8 -

34.     Ms. Argo admits that she was the Senior Vice President and Chief Financial

Officer of SafeNet from July 1999 to June 2004, and admits the second and seventh sentences of

Paragraph 34. With respect to the third sentence in Paragraph 34, Ms. Argo admits that she was

a Certified Public Accountant and worked at companies that performed public company

accounting for seven years, and otherwise denies the sentence. Ms. Argo denies the allegations

in the fourth sentence, except she admits that she was granted options to purchase SafeNet stock,

that she recommended the issuance of stock option grants and admits that she pleaded guilty to a

single count of securities fraud in connection with SafeNet stock options granted in October

2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other

stock option grants was wrong. With respect to the fifth sentence, Ms. Argo admits that she sold

30,000 shares of SafeNet stock during the Class Period at $36.01 per share, but otherwise denies

the allegations. With respect to the sixth sentence, Ms. Argo admits that she signed, or caused to

be signed, SafeNet's Rainbow Registration Statement, 2002-2003 Forms 10-K, 2003 Forms 10-

Q and the Form 10-Q for the first quarter of 2004.

35.     Paragraph 35 sets forth legal and accounting conclusions and contains

allegations that are directed a party other than Ms. Argo who has been dismissed from the case

and to which no response is required. To the extent a response is required, Ms. Argo admits and

avers that (a) Mr. Mueller was Senior Vice President, Chief Financial Officer and Treasurer of

SafeNet from June 2004 until or about April 6, 2006, (b) that he signed, or caused to be singed,

SafeNet's Forms 10-Q for the second and third quarters of 2004, its Forms 10-Q for the year

2005, its Forms 10-K for the years 2004 and 2005, (c) that SafeNet announced that Mueller was

leaving the company on April 6, 2006, (d) Mueller received grants of stock options from

SafeNet, (e) on November 10, 2009 the SEC filed a complaint against SafeNet and others,

including Mr. Mueller, and (g) refers to that complaint for a complete and accurate statement of

its contents.  Ms. Argo lacks knowledge or information sufficient to form a belief as to the truth

of the remaining allegations, including with respect to communications between counsel for Mr.

Mueller and Plaintiffs and with respect to whether Mr. Mueller is a certified public accountant,

and, on that basis, the allegations are denied.

36.     Paragraph 36 sets forth legal conclusions for which no response is required.  To

the extent a response is required, Ms. Argo denies the allegation, except she admits that in

connection with their roles as senior officers of SafeNet, she and Messrs. Caputo and Mueller

necessarily possessed non-public information about SafeNet.

37.     Paragraph 37 sets forth legal conclusions for which no response is required.  To

the extent a response is required, Ms. Argo admits that she and Messrs. Caputo and Mueller had

responsibilities related to the preparation of certain of SafeNet's SEC filings, press releases, and

other statements and admits that she pleaded guilty to a single count of securities fraud in

connection with SafeNet stock options granted in October 2001 and, in connection with her plea,

acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and

otherwise denies the allegations.  To the extent the allegations are directed to parties other than

Ms. Argo, no response is required.  To the extent a response is required, Ms. Argo lacks

knowledge or sufficient information to form a belief as to the truth of such allegations and, on

that basis, such allegations are denied.

38.     Paragraph 38 contains allegations that are directed to a party other than Ms.

Argo who has been dismissed from the case and to which no response is needed.  To the extent a

response is required, Ms. Argo denies the allegations of Paragraph 38, except Ms. Argo admits

that Thomas A. Brooks has served as a director of the Company and as a member of the

Company's Compensation Committee and Audit Committee, and that he received grants of stock

options from SafeNet. Ms. Argo respectfully refers the Court to the referenced SEC filings and company records for a complete and accurate statement of their contents.

39.      Paragraph 39 contains allegations that are directed to a party other than Ms. Argo who has been dismissed from the case and to which no response is needed. To the extent a response is required, Ms. Argo denies the allegations of Paragraph 39, except Ms. Argo admits that Ira A. Hunt, Jr. has served as a director of the Company and as a member of the Company's Compensation Committee and Audit Committee, and that he received grants of stock options from SafeNet. Ms. Argo respectfully refers the Court to the referenced SEC filings and company records for a complete and accurate statement of their contents.

40.      Paragraph 40 contains allegations that are directed to a party other than Ms. Argo who has been dismissed from the case and to which no response is needed. To the extent a response is required, Ms. Argo denies the allegations of Paragraph 40, except Ms. Argo admits that Bruce R. Thaw has served as a director of the Company and as a member of the Company's Compensation Committee, and that he received grants of stock options from SafeNet. Ms. Argo respectfully refers the Court to the referenced SEC filings and company records for a complete and accurate statement of their contents.

41.      Paragraph 41 contains allegations that are directed to a party other than Ms. Argo who has been dismissed from the case and to which no response is needed. To the extent a response is required, Ms. Argo denies the allegations of Paragraph 41, except Ms. Argo admits that starting on March 16, 2004, Arthur L. Money served as a director of the Company and as a member of the Company's Compensation Committee and Audit Committee, and that he received grants of stock options from SafeNet. Ms. Argo respectfully refers the Court to the referenced SEC filings and company records for a complete and accurate statement of their contents.

42.    Paragraph 42 contains allegations that are directed to a party other than Ms. Argo who has been dismissed from the case and to which no response is needed. To the extent a response is required, Ms. Argo SafeNet denies the allegations of Paragraph 42, except Ms. Argo admits that Shelley A. Harrison has served as a director of the Company and as a paid consultant to the Company, and that he received grants of stock options from SafeNet. Ms. Argo respectfully refers the Court to the referenced SEC filings and company records for a complete and accurate statement of their contents.

43.    Paragraph 43 contains allegations that are directed to a party other than Ms. Argo who has been dismissed from the case and to which no response is needed. To the extent a response is required, Ms. Argo SafeNet denies the allegations of Paragraph 43, except Ms. Argo admits that Andrew E. Clark has served as a director of the Company and that he received grants of stock options from SafeNet. Ms. Argo respectfully refers the Court to the referenced SEC filings and company records for a complete and accurate statement of their contents.

44.    Ms. Argo asserts that the allegations of Paragraph 44 relate to claims that have been dismissed by the Court's Order and Opinion dated August 5, 2009 and as to which no response is required. To the extent a response is required, Ms. Argo admits that Plaintiffs purport to define "Compensation Committee Defendants."

45.    Ms. Argo asserts that the allegations of Paragraph 45 relate to claims that have been dismissed by the Court's Order and Opinion dated August 5, 2009 and as to which no response is required. To the extent a response is required, Ms. Argo admits that Plaintiffs purport to define "Director Defendants."

46.    Paragraph 46 sets forth legal conclusions as to which no response is required. To the extent a response is required, Ms. Argo denies the allegations except she admits that she

had the powers and authorities of a President, CFO and COO when she served in those capacities and other defendant had similar powers and authorities.

47.    With respect to Paragraph 47, Ms. Argo admits that Plaintiffs purport to define "Rainbow Acquisition Defendants" and that she signed the Rainbow Registration Statement.

48.    Paragraph 48 sets forth legal conclusions as to which no response is required. To the extent a response is required, Ms. Argo denies the allegations except she admits that she had the powers and authorities of President, CFO and COO when she served in those capacities and other defendant had similar powers and authorities.

49.    The fourth sentence of Paragraph 49 consists of legal conclusions as to which no response is required or appropriate. To the extent a response is necessary, Ms. Argo respectfully refers the Court to the SEC rules and regulations for a complete and accurate statement of their contents and otherwise denies the allegations. Ms. Argo avers that the remaining allegations of Paragraph 49 do not provide a complete and accurate description of stock option grants, and denies the allegations on that basis except that she admits that Plaintiffs purport to provide an illustrative example of a stock option transaction.

50.    Paragraph 50 and the accompanying footnote set forth legal and accounting conclusions as to which no response is required. To the extent a response is required, Ms. Argo respectfully refers to the referenced accounting rules and SEC regulations, which contain a complete and accurate statement of their contents, admits that prior to 2006, if a publicly traded company issued options with an exercise price less than the market price of the company's stock on the measurement date, the company was required to recognize compensation expense in its financial statements, and otherwise denies the allegations.

51.    Paragraph 51 sets forth legal and accounting conclusions as to which no response is required. To the extent a response is required, Ms. Argo respectfully refers the Court

to Accounting Principle Bulletin No. 25 ("APB 25"), which contains a complete and accurate statement of its contents, admits that many options granted by SafeNet had 4-year vesting periods, and otherwise denies the allegations.

52.    Paragraph 52 sets forth legal and accounting conclusions as to which no response is required.  To the extent a response is required, Ms. Argo respectfully refers the Court to APB 25, which contains a complete and accurate statement of its contents and otherwise denies the allegations.

53.    Paragraph 53 sets forth legal and accounting conclusions as to which no response is required.  To the extent a response is required, Ms. Argo admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.   Ms. Argo respectfully refers the Court to the transcript of her plea allocution.  Ms. Argo denies the remaining allegations in Paragraph 53 and also notes that she lacks knowledge or sufficient information to determine whether APB 25 was not followed "at all relevant times."

54.    With respect to Paragraph 54, Ms. Argo admits that SafeNet granted options to certain employees pursuant to stock option plans, and respectfully refers the Court to the referenced documents, which contain a complete and accurate statement of their contents, and otherwise denies the allegations.

55.    Ms. Argo admits that SafeNet's stock option plans were administered by the Company's Compensation Committee, and otherwise denies that the allegations in Paragraph 55 provide a complete and accurate description of the Company's stock options grant process.  Ms. Argo respectfully refers the Court to the referenced documents, which contain a complete and accurate statement of their contents.

56.     Ms. Argo admits that she was involved in recommending options grants and that the Compensation Committee approved option grants, among other ways, through Unanimous Written Consents, and otherwise denies the allegations in Paragraph 56 on the basis that it does not provide a complete and accurate description of SafeNet's stock option granting process. Ms. Argo also denies the allegations in Paragraph 56 to the extent they relate to "all relevant times" on the basis that she lacks knowledge or information sufficient to form a belief as to the truth of the allegations.

57.     Ms. Argo denies the allegations in Paragraph 57, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

58.     Ms. Argo denies the allegations in the first sentence of Paragraph 58, respectfully refers the Court to the SEC and accounting rules referenced in the second sentence, which contain a complete and accurate statement of their contents, and otherwise denies the allegations.

59.     Paragraph 59 states legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo respectfully refers the Court to the applicable tax rules and regulations, which contain a complete and accurate statement of their contents, and otherwise denies the allegations.

60.     Paragraph 60 sets forth legal and accounting conclusions to which no response is necessary. To the extent a response is required, Ms. Argo admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and otherwise denies the allegations.

61.     Ms. Argo denies the allegations in the second and third sentences of Paragraph 61, admits that the first sentence of Paragraph 61 purports to provide a definition of "options backdating" and otherwise denies that it provides an accurate and complete definition, or that there is a single accepted definition of this term.

62.     With respect to Paragraph 62, Ms. Argo admits that the value of stock options depends in part on their exercise price and the stock price. Otherwise, Ms. Argo denies the allegations.

63.     Paragraph 63 and the accompanying footnote set forth argument, not factual allegation, for which no response is required. To the extent a response is required, Ms. Argo admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and otherwise denies the allegations.

64.     Ms. Argo denies the allegations in Paragraph 64, excepts she admits that SafeNet disclosed that certain of its stock option grants during the Class Period were improperly recorded under applicable accounting rules and that the Company would have to restate certain of its financial statements as a result.

65.     To the extent the allegations in Paragraph 65 are directed to parties other than Ms. Argo, no response is required. To the extent a response is required, Ms. Argo lacks knowledge or sufficient information to form a belief as to the truth of such allegations and, on that basis, such allegations are denied. The allegations in Paragraph 65 directed to Ms. Argo set forth legal conclusions and argument as to which no response is required. To the extent a response is required, Ms. Argo denies the allegations in Paragraph 65, except Ms. Argo admits that she pleaded guilty to a single count of securities fraud related to SafeNet stock options

granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong. Ms. Argo respectfully refers the Court to the transcript of her plea allocution.

66.     With respect to Paragraph 66, Ms. Argo respectfully refers the Court to the transcript of Ms. Argo's plea allocution.

67.     The second sentence of Paragraph 67 sets forth legal conclusions as to which no response is required. To the extent a response is required and with respect to the remaining allegations, Ms. Argo admits that Form 4s were filed on her behalf, respectfully refers the Court to the referenced provision of Sarbanes-Oxley and SafeNet's SEC filing, which contain a complete and accurate statement of their contents, and otherwise denies the allegations.

68.     Ms. Argo denies the allegations in Paragraph 68.

69.     Ms. Argo denies the allegations in Paragraph 69, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

70.     Ms. Argo denies the allegations in Paragraph 70, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

71.     Ms. Argo denies the allegations in Paragraph 71, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

72.     Ms. Argo denies the allegations in Paragraph 72, except Ms. Argo admits that option grants may have an effect on financial statements and she pleaded guilty to a single count of securities fraud related to SafeNet stock options granted in October 2001 and, in connection

- 17 -

with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

73.     With respect to Paragraph 73, Ms. Argo admits that she received options with a grant date of July 30, 1999 and an exercise price of $17.50 per share. With respect to the remaining allegations in Paragraph 73, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its officers and employees, respectfully refers the Court to such documents and records, and otherwise denies the allegations.

74.     Ms. Argo denies the allegations in Paragraph 74, avers that the chart contained in Paragraph 74 does not provide a complete description of SafeNet's option grants during the Class Period and respectfully refers the Court to SafeNet's documents and records.

75.     Ms. Argo admits that she received options with the grant date of July 30, 1999 and that the closing prices of SafeNet stock on the dates listed in Paragraph 75 are accurate, and otherwise avers that the allegations set forth legal and accounting conclusions for which no response is required and, to the extent a response is required, Ms. Argo denies the allegations on the basis that she lacks knowledge or sufficient information to form a belief as to the truth of the allegation, and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect.

76.     With respect to Paragraph 76, Ms. Argo admits that she received 8,500 options with a grant date of January 1, 2000 and an exercise price of $20.50, 11,500 options with a grant date of May 31, 2000 and an exercise price of $14.750, and 13,000 options with a grant date of October 11, 2000 and an exercise price of $24.125. With respect to the remaining allegations in Paragraph 76, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its officers and employees, respectfully refers the Court to such documents and records, and otherwise denies the allegations.

77.     Ms. Argo denies the allegations in Paragraph 77 and avers that the chart contained in Paragraph 77 does not provide a complete description of SafeNet's option grants during the Class Period and respectfully refers the Court to SafeNet's documents and records.

78.     Ms. Argo admits that the closing prices of SafeNet stock on the dates listed in Paragraph 78 are accurate and that she received 13,000 options with a grant date of October 11, 2000.  With respect to the sizes and dates of any options grants allegedly made to Mr. Caputo, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its officers and employees and respectfully refers the Court to such documents and records.  Paragraph 78 otherwise sets forth legal and accounting conclusions for which no response is required, and, to the extent a response is required, Ms. Argo denies the allegations, and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect.

79.     Ms. Argo admits that she received 45,000 options with a grant date of October 1, 2001 and an exercise price of $5.85, and 17,000 options with a grant date of May 16, 2001 with an exercise price of $11.75.  With respect to the remaining allegations in Paragraph 79, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its officers and employees, respectfully refers the Court to such documents and records, and otherwise denies the allegations.

80.     Ms. Argo denies the allegations in Paragraph 80 and avers that the chart contained in Paragraph 80 does not provide a complete description of SafeNet's option grants during the Class Period and respectfully refers the Court to SafeNet's documents and records.

81.     Ms. Argo admits that the closing prices of SafeNet stock on the dates listed in Paragraph 81 are accurate.  With respect to the sizes and dates of any options grants allegedly made to Mr. Reed, Ms. Argo understands that SafeNet maintains documents and records

reflecting option grants made by SafeNet to its executives and directors, and respectfully refers the Court to such documents and records, which contain a complete and accurate statement of their contents. Otherwise, Paragraph 81 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect. Ms. Argo avers that the chart contained in Paragraph 81 does not provide a complete description of SafeNet's option grants during the Class Period and respectfully refers the Court to SafeNet's documents and records.

82.     With respect to Paragraph 82, Ms. Argo respectfully refers the Court to the SEC's civil complaint and the U.S. Attorney's criminal indictment and the other documents referenced in this Paragraph, which contain a complete and accurate statement of their contents, and Ms. Argo otherwise denies the allegations and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect. To the extent the allegations in Paragraph 82 are directed to parties other than Ms. Argo, no response is required. To the extent a response is required, Ms. Argo lacks knowledge or sufficient information to form a belief as to the truth of such allegations and, on that basis, such allegations are denied. Ms. Argo avers that the chart contained in Paragraph 82 does not provide a complete description of SafeNet's option grants during the Class Period and respectfully refers the Court to SafeNet's documents and records.

83.     Ms. Argo admits that she received 17,000 options with a grant date of May 16, 2001, and admits that the closing prices of SafeNet stock on the dates listed in Paragraph 83 are accurate. With respect to the sizes and dates of any options grants made to other SafeNet executives, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its executives and directors, and respectfully refers the Court to

such documents and records. Otherwise, Paragraph 83 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect. Ms. Argo avers that the chart contained in Paragraph 83 does not provide a complete description of SafeNet's option grants during the Class Period and respectfully refers the Court to SafeNet's documents and records.

84.     With respect to Paragraph 84, Ms. Argo respectfully refers the Court to the SEC's civil complaint and the U.S. Attorney's indictment, which contain a complete and accurate statement of their contents, and the transcript of Ms. Argo's plea allocution.

85.     Ms. Argo denies the allegations in Paragraph 85, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

86.     Ms. Argo admits that the April 3 and October 1 options granted to Ms. Argo were re-priced by agreement with SafeNet. Otherwise, Paragraph 86 sets forth legal conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

87.     With respect to the sizes and dates of any options grants made to SafeNet executives and officers referenced in Paragraph 87, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its officers and employees, and respectfully refers the Court to such documents and records.

88.     Paragraph 88 sets forth legal and accounting conclusions for which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she

admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet

stock options granted in October 2001 and, in connection with her plea, acknowledged that

SafeNet's accounting for certain other stock option grants was wrong. Ms. Argo avers that the

chart contained in Paragraph 88 does not provide a complete description of SafeNet's option

grants during the Class Period and respectfully refers the Court to SafeNet's documents and

records.

89.      Ms. Argo admits that that the closing prices for SafeNet stock on the dates

listed are accurate. With respect to the sizes and dates of any options grants made to the

referenced SafeNet executives and directors, Ms. Argo Argo understands that SafeNet maintains

documents and records reflecting option grants made by SafeNet to its officers and employees,

and respectfully refers the Court to such documents and records. Otherwise, Paragraph 89 sets

forth legal and accounting conclusions to which no response is required. To the extent a

response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty

to a single count of securities fraud in connection with SafeNet stock options granted in October

2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other

stock option grants was wrong, and states that she is aware that SafeNet has concluded that the

accounting for this grant was incorrect.

90.      With respect to the first sentence in Paragraph 90, Ms. Argo respectfully refers

the Court to the SEC's civil complaint and the U.S. Attorney's criminal indictment and other

documents referenced in Paragraph 90, which contain a complete and accurate statement of their

contents. Ms. Argo denies the allegations in Paragraph 90, except she admits that the stock

prices referenced in the third sentence of Paragraph 90 are accurate and admits that she pleaded

guilty to a single count of securities fraud in connection with SafeNet stock options granted in

October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for

certain other stock option grants was wrong, and states that she is aware that SafeNet has

concluded that the accounting for this grant was incorrect. To the extent the allegations in

Paragraph 90 are directed to parties other than Ms. Argo, no response is required. To the extent

a response is required, Ms. Argo lacks knowledge or sufficient information to form a belief as to

the truth of such allegations and, on that basis, such allegations are denied.

91.     Paragraph 91 sets forth arguments, rather than factual allegations, to which no

response is required. To the extent a response is required, Ms. Argo denies the allegations.

92.     Ms. Argo admits that she received options with a grant date of February 27,

2003 and an exercise price of $16.47, and 10,000 options with a grant date of July 17, 2003 and

an exercise price of $31.35, and otherwise denies the allegations. With respect to the remaining

allegations in Paragraph 92, Ms. Argo understands that SafeNet maintains documents and

records reflecting option grants made by SafeNet to its executives and directors, and respectfully

refers the Court to such documents and records, and otherwise denies the allegations.

93.     Ms. Argo avers that the chart contained in Paragraph 93 does not provide a

complete and accurate description of SafeNet's option grants during the Class Period and

respectfully refers the Court to SafeNet's documents and records. Otherwise, Paragraph 93 sets

forth legal and accounting conclusions to which no response is required. To the extent a

response is required, Ms. Argo denies the allegations in Paragraph 93, except she admits that she

pleaded guilty to a single count of securities fraud in connection with SafeNet stock options

granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's

accounting for certain other stock option grants was wrong.

94.     With respect to Paragraph 94, Ms. Argo admits that she received options with a

grant date of February 27, 2003. With respect to the number and dates of options granted to

other SafeNet executives and directors, Ms. Argo understands that SafeNet maintains documents

and records reflecting option grants made by SafeNet to its officers and employees, and respectfully refers the Court to such documents and records. Otherwise, Paragraph 94 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect.

95.        With respect to the first sentence of Paragraph 95, Ms. Argo respectfully refers the Court to the SEC's civil complaint and the U.S. Attorney's criminal indictment, which contain a complete and accurate statement of their contents. The second sentence sets forth legal and accounting conclusions for which no response is required. To the extent a response is required, Ms. Argo denies the allegations in the second sentence in Paragraph 95, except she admits that the stock price referenced is correct and that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect. To the extent the allegations in Paragraph 95 are directed to parties other than Ms. Argo, no response is required. To the extent a response is required, Ms. Argo lacks knowledge or sufficient information to form a belief as to the truth of such allegations and, on that basis, such allegations are denied.

96.        With respect to Paragraph 96, Ms. Argo admits that SafeNet's closing stock price was $31.35 per share on July 17, 2003 and $38.85 per share on September 16, 2003, admits that an indictment and SEC complaint were filed against her and respectfully refers the Court to

those filings and the other documents, which contain a complete and accurate statement of their contents, and otherwise denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect.

97.     Ms. Argo admits that the February 27 and July 17, 2003 options grants made to her and Mr. Caputo were re-priced by agreement with SafeNet. Otherwise, Paragraph 97 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

98.     Ms. Argo admits that she received options with a grant date of May 19, 2004 and an exercise price of $21.70. With respect to the remaining allegations in Paragraph 98, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its employees, and respectfully refers the Court to such documents and records.

99.     Ms. Argo avers that the chart contained in Paragraph 99 does not provide a complete and accurate description of SafeNet's option grants during the Class Period and respectfully refers the Court to SafeNet's documents and records. Otherwise, Paragraph 99 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations in Paragraph 99, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options

- 25 -

granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

100.     Ms. Argo admits that she was granted options with a grant date of May 19, 2004 and admits that SafeNet's closing stock price was $22.19 on July 28, 2004 and $27.96 on July 29, 2004. With respect to the allegations in the first sentence of Paragraph 100 regarding grants to other executives and employees, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its officers and employees, and respectfully refers the Court to such documents and records. Ms. Argo otherwise denies the allegations in first and third sentences on the basis that they set forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and states that she is aware that SafeNet has concluded that the accounting for these grants were incorrect.

101.     Ms. Argo respectfully refers the Court to the U.S. Attorney's criminal indictment and other referenced documents, which contain a complete and accurate statement of their contents. Ms. Argo admits that SafeNet's stock price on October 9, 2004 was $28.45, and denies the remainder of the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong, and states that she is aware that SafeNet has concluded that the accounting for this grant was incorrect.

102.     Ms. Argo respectfully refers the Court to the U.S. Attorney's criminal indictment, which contains a complete and accurate statement of the U.S. Attorney's allegations against Ms. Argo. As to the allegations in the second sentence, Ms. Argo admits that SafeNet's stock price on September 27, 2004 was $25.16 and on February 9, 2005 was $31.52, and otherwise lacks knowledge or information sufficient to form a basis as to the truth of the allegations. The third sentence sets forth legal and accounting conclusions for which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong. With respect to the third, fourth and fifth sentences, Ms. Argo admits that she learned sometime after the fact that SafeNet's outside auditors identified incorrect measurement dates of certain stock option grants during an audit in 2005 and that changes to compensation expense were made, admits that she did not discuss with the auditors whether prior grants required compensation charges and avers that she lacks knowledge or information sufficient to form a belief as to whether other Defendants discussed prior grants with the auditors.

103.     Ms. Argo denies the allegations in Paragraph 103, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

104.     Ms. Argo admits that the May 19, 2004 and July 28, 2004 options grants made to her and Mr. Caputo were re-priced by agreement with SafeNet. Otherwise, Paragraph 104 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October

2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

105.    With respect to Paragraph 105, Ms. Argo admits that she received 50,000 options with a grant date of September 29, 2005 and an exercise price of $29.70, and 50,000 options with a grant date of June 1, 2005 and an exercise price of $31.78.  With respect to the remaining allegations in Paragraph 105, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its executives and directors, and respectfully refers the Court to such documents and records, which contain a complete and accurate statement of their contents.

106.    Ms. Argo denies that the chart contained in Paragraph 106 provides a complete and accurate description of SafeNet's stock price during the Class Period.  Paragraph 106 sets forth legal and accounting conclusions for which no response is required.  To the extent a response is required, Ms. Argo denies the allegations.

107.    Ms. Argo admits the number and date of the options grants made to her and admits that the closing prices for SafeNet stock on the dates listed are accurate.  With respect to the allegations relating to any options grants made to Mr. Lessem, Ms. Argo understands that SafeNet maintains documents and records reflecting option grants made by SafeNet to its officers and employees, and respectfully refers the Court to such documents and records.  With respect to the second, third, and fourth sentences, Ms. Argo respectfully refers the Court to SafeNet's press release and the transcript of the September 29, 2005 conference call.  Otherwise, the allegations in the first and second sentences of Paragraph 107 set forth legal and accounting conclusions to which no response is necessary.  To the extent a response is required, Ms. Argo denies the allegations, and states that she is aware that SafeNet has concluded that the accounting for these grants was incorrect.

- 28 -

108.     Ms. Argo admits that SafeNet's closing stock price was $29.70 on September 29, 2005 and $36.31 per share on September 30, 2005, and otherwise lacks knowledge or information sufficient to form a belief as to the truth as to the allegations in Paragraph 108, and, on that basis, denies the allegations.

109.     Ms. Argo denies the allegations in Paragraph 109, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

110.     Ms. Argo denies the allegations in Paragraph 110, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

111.     Ms. Argo denies the allegations in Paragraph 111, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

112.     Ms. Argo admits that the June 1, 2005 and September 29, 2005 options grants made to her and Mr. Caputo were re-priced by agreement with SafeNet. Paragraph 112 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations.

113.     Paragraph 113 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong. Ms. Argo respectfully refers the Court to the transcript of her plea allocution.

114.    Paragraph 114 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations.

115.    Ms. Argo denies the allegations in Paragraph 115 and further denies that the table contained in Paragraph 115 constitutes a complete and accurate description of SafeNet's "Actual Operating Income" and "Actual Net Income" for the years 2002 through 2005.

116.    No response to this Paragraph is required because Plaintiffs' claims pertaining to accounting issues unrelated to stock option grants have been dismissed by the Court's Order and Opinion dated August 5, 2009. To the extent a response is required, Ms. Argo denies the allegations.

117.    Ms. Argo avers that the allegations of Paragraph 117 relate to claims that have been dismissed and as to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except (a) admits that on November 10, 2009 the SEC filed a complaint against SafeNet and others, and (b) refers to that complaint for a complete and accurate statement of its contents.

118.    Ms. Argo incorporates by reference her answer to Paragraph 116.

119.    Ms. Argo incorporates by reference her answer to Paragraph 116.

120.    Ms. Argo incorporates by reference her answer to Paragraph 116.

121.    Ms. Argo incorporates by reference her answer to Paragraph 116.

122.    Ms. Argo incorporates by reference her answer to Paragraph 117.

123.    Ms. Argo incorporates by reference her answer to Paragraph 116.

124.    No response to this Paragraph is required because Plaintiffs' claims pertaining to accounting issues unrelated to stock option grants have been dismissed by the Court's Order and Opinion dated August 5, 2009. To the extent a response is required, Ms. Argo respectfully

refers the court to the referenced documents for a complete and accurate description of their contents and otherwise denies the allegations.

125.    Ms. Argo incorporates by reference her answer to Paragraph 116.

126.    Ms. Argo incorporates by reference her answer to Paragraph 124.

127.    Ms. Argo incorporates by reference her answer to Paragraph 124.

128.    Ms. Argo incorporates by reference her answer to Paragraph 116.

129.    Ms. Argo incorporates by reference her answer to Paragraph 116.

130.    Ms. Argo incorporates by reference her answer to Paragraph 124.

131.    Ms. Argo incorporates by reference her answer to Paragraph 116.

132.    Ms. Argo incorporates by reference her answer to Paragraph 116.

133.    Ms. Argo incorporates by reference her answer to Paragraph 116.

134.    Ms. Argo incorporates by reference her answer to Paragraph 116.

135.    Ms. Argo incorporates by reference her answer to Paragraph 116.

136.    Ms. Argo incorporates by reference her answer to Paragraph 116.

137.    Ms. Argo incorporates by reference her answer to Paragraph 116.

138.    Ms. Argo incorporates by reference her answer to Paragraph 116.

139.    Ms. Argo incorporates by reference her answer to Paragraph 116.

140.    Ms. Argo incorporates by reference her answer to Paragraph 116.

141.    Ms. Argo incorporates by reference her answer to Paragraph 124.

142.    Ms. Argo incorporates by reference her answer to Paragraph 116.

143.    Ms. Argo incorporates by reference her answer to Paragraph 116.

144.    Ms. Argo incorporates by reference her answer to Paragraph 116.

145.    Ms. Argo incorporates by reference her answer to Paragraph 116.

146.    Ms. Argo incorporates by reference her answer to Paragraph 116.

147.    Ms. Argo incorporates by reference her answer to Paragraph 116.

148.    Ms. Argo incorporates by reference her answer to Paragraph 116.

149.    Ms. Argo incorporates by reference her answer to Paragraph 116.

150.    Ms. Argo incorporates by reference her answer to Paragraph 116.

151.    Ms. Argo incorporates by reference her answer to Paragraph 116.

152.    Ms. Argo incorporates by reference her answer to Paragraph 116.

153.    Ms. Argo incorporates by reference her answer to Paragraph 116.

154.    Ms. Argo incorporates by reference her answer to Paragraph 117.

155.    Ms. Argo incorporates by reference her answer to Paragraph 117.

156.    Ms. Argo incorporates by reference her answer to Paragraph 117.

157.    Ms. Argo incorporates by reference her answer to Paragraph 117.

158.    Ms. Argo incorporates by reference her answer to Paragraph 117.

159.    Ms. Argo incorporates by reference her answer to Paragraph 117.

160.    With respect to Paragraph 160, Ms. Argo admits that SafeNet filed a Form 10-K for the year ended December 31, 2002 on March 31, 2003, admits that she signed, or caused to be signed, the Form 10-K, and respectfully refers the Court to that document, which contains a complete and accurate statement of its contents.

161.    With respect to Paragraph 161, Ms. Argo respectfully refers the Court to the referenced SafeNet Form 10-K, which contains a complete and accurate statement of its contents.

162.    With respect to Paragraph 162, Ms. Argo respectfully refers the Court to the referenced SafeNet Form 10-K, which contains a complete and accurate statement of its contents.

163.    Paragraph 163 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

164.    With respect to Paragraph 164, Ms. Argo admits that SafeNet issued a proxy statement on a Form 14A on April 30, 2003, admits that she signed, or caused to be signed, the Form 14A, respectfully refers the Court to that document, which contains a complete and accurate statement of its contents, and otherwise denies the allegations.

165.    Paragraph 165 sets forth legal and accounting conclusions to which no response is required, and respectfully refers the Court the referenced document, which contains a complete and accurate statement of its contents. To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

166.    Paragraph 166 sets forth legal and accounting conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

167.    With respect to Paragraph 167, Ms. Argo admits that SafeNet filed a Form 10-Q for the first quarter of 2003 on May 15, 2003, admits that she signed, or caused to be signed, the Form 10-Q, and respectfully refers the Court to that document, which contains a complete and accurate statement of its contents.

168.    With respect to Paragraph 168, Ms. Argo respectfully refers the Court to the referenced Form 10-Q, which contains a complete and accurate statement of its contents.

169.    Paragraph 169 sets forth legal and accounting conclusions to which no response is required. With respect to references in Paragraph 169 to SafeNet's SEC filings, Ms. Argo respectfully refers the Court to these filings, which contain a complete and accurate statement of their contents. To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

170.    With respect to Paragraph 170, Ms. Argo admits that SafeNet filed a Form 10-Q for the second quarter of 2003 on July 31, 2003, admits that she signed, or caused to be signed, the Form 10-Q, and respectfully refers the Court to that document, which contains a complete and accurate statement of its contents.

171.    With respect to Paragraph 171, Ms. Argo respectfully refers the Court to the referenced SafeNet Form 10-Q, which contains a complete and accurate statement of its contents.

172.    Paragraph 172 sets forth legal and accounting conclusions to which no response is required. With respect to references in Paragraph 172 to SafeNet's SEC filings, Ms. Argo respectfully refers the Court to these filings, which contain a complete and accurate statement of their contents. To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

173.     With respect to Paragraph 173, Ms. Argo admits that SafeNet filed a Form 10-Q for the third quarter of 2003 on November 14, 2003, admits that she signed, or caused to be signed, the 10-Q, and respectfully refers the Court to that document, which contains a complete and accurate statement of its contents.

174.     With respect to Paragraph 174, Ms. Argo respectfully refers the Court to the referenced SafeNet Form 10-Q, which contains a complete and accurate statement of its contents.

175.     Paragraph 175 sets forth legal and accounting conclusions to which no response is required.  With respect to references in Paragraph 175 to SafeNet's SEC filings, Ms. Argo respectfully refers the Court to these filings, which contain a complete and accurate statement of their contents.  To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

176.     With respect to Paragraph 176, Ms. Argo admits that SafeNet filed the Rainbow Registration Statement and the Rainbow Proxy/Prospectus with the SEC on February 11 and 12, 2004, respectively, and respectfully refers the Court to the referenced SEC filings, which contain a complete and accurate statement of their contents.  The second sentence of Paragraph 176 and the third sentence of Paragraph 176 subpart (b) set forth legal conclusions to which no response is required.  To the extent a response is required, Ms. Argo denies the allegations.

177.     With respect to Paragraph 177, Ms. Argo respectfully refers the Court to the referenced document, which contains a complete and accurate statement of its contents.

178.    Paragraph 178 sets forth legal conclusions to which no response is required.  To the extent a response is required, Ms. Argo denies the allegations.  With respect to the referenced documents, Ms. Argo respectfully refers the Court to the documents, which contain a complete and accurate statement of their contents.

179.    Paragraph 179 sets forth legal conclusions to which no response is required.  To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

180.    No response to Paragraph 180 is required because Plaintiffs' claims pertaining to accounting issues unrelated to stock option grants have been dismissed by the Court's Order and Opinion dated August 5, 2009.

181.    With respect to Paragraph 181, Ms. Argo admits that SafeNet filed a Form 10-K for the year ending December 31, 2003 on March 31, 2004, admits that she signed, or caused to be signed, the Form 10-K, and respectfully refers the Court to that document, which contains a complete and accurate statement of its contents.

182.    With respect to Paragraph 182, Ms. Argo respectfully refers the Court to the referenced SafeNet Form 10-K, which contains a complete and accurate statement of its contents.

183.    With respect to Paragraph 183, Ms. Argo respectfully refers the Court to the referenced SafeNet Form 10-K, which contains a complete and accurate statement of its contents.

184.    Paragraph 184 sets forth legal and accounting conclusions to which no response is required.  With respect to references in Paragraph 184 to SafeNet's SEC filings, Ms. Argo

respectfully refers the Court to these filings, which contain a complete and accurate statement of their contents. To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

185.    No response to Paragraph 185 is required because Plaintiffs' claims pertaining to accounting issues unrelated to stock option grants have been dismissed by the Court's Order and Opinion dated August 5, 2009.

186.    With respect to Paragraph 186, Ms. Argo admits that SafeNet filed a Form 14A with the SEC on April 29, 2004, and respectfully refers the Court to the referenced SEC filing, which contains a complete and accurate statement of its contents. The second sentence of Paragraph 186 sets forth legal conclusions to which no response is required. To the extent a response is required, Ms. Argo denies the allegations.

187.    Paragraph 187 sets forth legal and accounting conclusions to which no response is required. With respect to references in Paragraph 187 to SafeNet's SEC filings, Ms. Argo respectfully refers the Court to these filings, which contain a complete and accurate statement of their contents. To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

188.    With respect to Paragraph 188, Ms. Argo admits that SafeNet filed its Form 10-Q for the first quarter of 2004 with the SEC on May 10, 2004, admits that she signed, or caused to be signed, the 10-Q, and respectfully refers the Court to the referenced SafeNet SEC filing, which contains a complete and accurate statement of its contents.

189.    Paragraph 189 sets forth legal and accounting conclusions to which no response is required.  To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

190.    No response to Paragraph 190 is required because Plaintiffs' claims pertaining to accounting issues unrelated to stock option grants have been dismissed by the Court's Order and Opinion dated August 5, 2009.

191.    With respect to Paragraph 191, Ms. Argo admits that SafeNet filed the referenced Form 10-Q with the SEC on August 9, 2004, and respectfully refers the Court to the referenced Form 10-Q, which contains a complete and accurate statement of its contents.

192.    With respect to Paragraph 192, Ms. Argo respectfully refers the Court to the referenced Form 10-Q, which contains a complete and accurate statement of its contents.

193.    Paragraph 193 sets forth legal and accounting conclusions to which no response is required.  To the extent a response is required, Ms. Argo denies the allegations, except that she admits that she pleaded guilty to a single count of securities fraud in connection with SafeNet stock options granted in October 2001 and, in connection with her plea, acknowledged that SafeNet's accounting for certain other stock option grants was wrong.

194.    No response to Paragraph 194 is required because Plaintiffs' claims pertaining to accounting issues unrelated to stock option grants have been dismissed by the Court's Order and Opinion dated August 5, 2009.

195.    With respect to Paragraph 195, Ms. Argo admits that SafeNet filed the referenced Form 10-Q with the SEC on November 9, 2004, and respectfully refers the Court to