UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, PLYMOUTH COUNTY RETIREMENT SYSTEM, STATE-BOSTON RETIREMENT SYSTEM, and MICHAEL GOLDE, On Behalf of Themselves and All Others Similarly Situated, | Lead Case No. 06 Civ. 5797 (PAC) |

Plaintiffs,

v.

SAFENET, INC., ANTHONY A. CAPUTO, KENNETH A. MUELLER, CAROLE D. ARGO, THOMAS A. BROOKS, IRA A. HUNT, Jr., BRUCE R. THAW, ARTHUR L. MONEY, SHELLEY A. HARRISON, and ANDREW E. CLARK

Defendants.

**LEAD PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF PROPOSED CLASS ACTION SETTLEMENT**

**LABATON SUCHAROW LLP**
Lawrence Sucharow
Jonathan Gardner
140 Broadway
New York, NY 10005
(212) 907-0700

**BERNSTEIN LITOWITZ BERGER
  & GROSSMAN LLP**
Max W. Berger
William C. Fredericks
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1400

*Co-Lead Counsel for Lead Plaintiffs and the Proposed Class and Subclass*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

I.   SUMMARY PROCEDURAL HISTORY ...................................................................... 3

II.  SUMMARY OF THE PROPOSED SETTLEMENT ...................................................... 7

III. THE PROPOSED SETTLEMENT MERITS PRELIMINARY
APPROVAL ................................................................................................................... 7

A.  The Proposed Settlement Is the Result of Well Grounded, Good Faith,
Arm's-Length Negotiations ................................................................................. 8

B.  The Proposed Settlement Falls Well Within the Range of
Reasonableness and Merits Issuance of Notice and a Hearing on Final
Approval .............................................................................................................. 9

C.  The Settlement Has No Obvious Deficiencies................................................... 11

IV. THE COURT SHOULD PRELIMINARILY CERTIFY THE
SETTLEMENT CLASS AND APPOINT DETROIT P&F, PLYMOUTH
AND GOLDE AS CLASS REPRESENTATIVES .......................................................... 12

A.  Standards Applicable to Class Certification .................................................... 12

B.  This Litigation Meets the Requirements of Rule 23(a) .................................... 12

1.  The Settlement Class Is Sufficiently Numerous................................... 12

2.  There Are Common Questions of Law and Fact.................................... 13

3.  The Proposed Representative Plaintiffs' Claims Are Typical................ 14

4.  The Proposed Class Representatives Will Fairly and Adequately
Protect the Interests of the Settlement Class ........................................ 15

C.  THE PROPOSED CLASS AND SUBCLASS SATISFY THE
REQUIREMENTS OF RULE 23(b)(3)........................................................... 16

1.  Common Questions of Law and Fact Predominate............................... 16

2.  A Class Action Is the Superior Method for Resolving This Action....... 17

V.  THE COURT SHOULD APPROVE THE PROPOSED FORMS OF
    NOTICE AND PLAN FOR GIVING NOTICE TO THE CLASS..................................... 18

CONCLUSION............................................................................................................................ 19

## TABLE OF AUTHORITIES

### CASES

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997)............................................................................16

*In re Arakis Energy Corp. Sec. Litig.*,
    No. 95-CV-3431 (ARR), 1999 WL 1021819 (E.D.N.Y. Apr. 27, 1999) ..............................17

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    222 F.3d 52 (2d Cir. 2000).....................................................................15

*Basic Inc. v. Levinson*,
    485 U.S. 224 (1988)............................................................................17

*Consol. Rail Corp. v. Town of Hyde Park*,
    47 F.3d 473 (2d Cir. 1995).....................................................................13

*In re Currency Conversion Fee Antitrust Litig.*,
    MDL Nos. 1409, M 21-95, 2006 WL 3253037 (S.D.N.Y. Nov. 8, 2006) ..............................7

*DeMarco v. Nat'l Collector's Mint, Inc.*,
    229 F.R.D. 73 (S.D.N.Y. 2005) .................................................................14

*Denney v. Deutsche Bank AG*,
    443 F.3d 253 (2d Cir. 2006)....................................................................12

*In re Deutsche Telekom AG Sec. Litig.*,
    229 F. Supp. 2d 277 (S.D.N.Y. 2002)...........................................................13

*In re Flag Telecom Holdings., Ltd. Sec. Litig.*,
    245 F.R.D. 147 (S.D.N.Y 2007) .......................................................12, 14, 15, 18

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982)............................................................................15

*In re Indep. Energy Holdings PLC Sec. Litig.*,
    210 F.R.D. 476 (S.D.N.Y. 2002) ...............................................................12

*In re Interpublic Sec. Litig.*,
    Nos. 02-6527, 03-1194, 2004 WL 2397190 (S.D.N.Y. Oct. 26, 2004)...............................7

*Marisol A. v. Giuliani*,
    126 F.3d 372 (2d Cir. 1997)............................................................12, 13, 14

*Moore v. PaineWebber, Inc.*,
  306 F.3d 1247 (2d Cir. 2002) ................................................................................16

*In re NASDAQ Market-Makers Antitrust Litig.*,
  176 F.R.D. 99 (S.D.N.Y. 1997) ..............................................................................7

*In re PaineWebber Ltd. P'ships Litig.*,
  147 F.3d 132 (2d Cir. 1998) ...................................................................................7

*Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.*,
  Nos. 06-5797, 06-6194, 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ................16

*In re Prestige Brands Holdings, Inc. Sec. Litig.*,
  No. 05 Civ. 6924, 2007 WL 2585088 (S.D.N.Y. Sept. 5, 2007) ..............................................13

*In re Prudential Sec. Inc. Ltd. P'ships Litig.*,
  163 F.R.D. 200 (S.D.N.Y. 1995) .......................................................................7, 11

*In re Qiao Xing Sec. Litig.*,
  No. 07 Civ. 7097 (DLC), 2008 WL 872298 (S.D.N.Y. Apr. 2, 2008) ....................................12

*In re State St. Bank & Trust Co. ERISA Litig.*,
  No. 07 Civ. 8488 (RJH), 2009 WL 3458705 (S.D.N.Y. Oct. 28, 2009) .................................8

*In re Sumitomo Copper Litig.*,
  189 F.R.D. 274 (S.D.N.Y. 1999) ..........................................................................10

*In re Veeco Instruments, Inc. Sec. Litig.*,
  235 F.R.D. 220 (S.D.N.Y. 2006) .....................................................................14, 17

*In re Vivendi Universal, S.A.*,
  242 F.R.D. 76 (S.D.N.Y. 2007) ......................................................................13, 15

*Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.*,
  396 F.3d 96 (2d Cir. 2005) ..............................................................................7, 8

## DOCKETED CASES

*United States v. Argo*,
  No. 07 Cr. 683 (S.D.N.Y.) ...........................................................................6, 10, 11

## STATUTES AND RULES

15 U.S.C. §§ 78u-4 *et seq* ................................................................................3

15 U.S.C. § 78u-4(a)(7) .....................................................................................19

Fed. R. Civ. P. 23 ...................................................................................................13

Fed. R. Civ. P. 23(a) ........................................................................................ *passim*

Fed. R. Civ. P. 23(b) ......................................................................................16, 17

Fed. R. Civ. P. 23(c) ......................................................................................18, 19

Fed. R. Civ. P. 23(e) ...................................................................................7, 18, 19

## MISCELLANEOUS

Cornerstone Research,
   *Securities Class Action Settlements: 2009 Review and Analysis* (2009),
   *available at* www.cornerstone.com ............................................................................9

*Manual for Complex Litigation (4th)* § 21.632 (2004) ...............................................12

SEC Litigation Release No. 21290 (Nov. 12, 2009),
   *available at* www.sec.gov/litigation/litreleases/2009/lr21290.htm .........................6

## PRELIMINARY STATEMENT

Lead Plaintiffs the Police and Fire Retirement System of the City of Detroit ("Detroit P&F"), the Plymouth County Retirement System ("Plymouth"), and State-Boston Retirement System ("State-Boston") (collectively "Lead Plaintiffs") respectfully submit this memorandum of law in support of their unopposed motion, pursuant to Fed. R. Civ. P. 23(a), for an order:

(i)     Preliminarily approving the proposed settlement ("Settlement")[1] of this class action (the "Litigation"), as set forth in the Stipulation and Agreement of Settlement dated as of September 13, 2010 (the "Stipulation"), submitted contemporaneously herewith;

(ii)    certifying the proposed Settlement Class, for settlement purposes only;

(iii)   appointing Lead Plaintiffs Detroit P&F and Plymouth as representatives of the proposed Class ("Class Representatives") and appointing named plaintiff Michael Golde as the representative of the proposed Subclass ("SubClass Representative");

(iv)    appointing the co-lead counsel law firms of Labaton Sucharow LLP ("Labaton Sucharow") and Bernstein Litowitz Berger & Grossman LLP ("BLBG") as Class Counsel; and

(v)     approving the proposed forms of the Notice of Pendency of Class Action and Proposed Settlement (the "Notice") and the Summary Notice of Pendency of Class Action and Proposed Settlement ("Summary Notice") (attached as Exhibits 1 and 3 to the accompanying proposed Preliminary Approval Order), and approving the proposed methods of disseminating notice as provided in the proposed Preliminary Approval Order.

Pursuant to the Stipulation, defendant SafeNet, Inc. (the "Company" or "SafeNet") has agreed to pay $25,000,000 (the "Settlement Amount") for the benefit of the Class to settle all claims asserted in the Litigation in exchange for the dismissal with prejudice of the Second Consolidated Amended Class Action Complaint, filed on March 10, 2010 (the "Second Amended Complaint" or "SAC") and the release of all related claims (the "Released Claims") by

---

[1] Unless otherwise specified, defined terms in this memorandum of law shall have the same meanings ascribed to them in the Stipulation.

plaintiffs and the members of the Class against the defendants and their affiliated persons and

entities (the "Released Parties").[2]  The proposed Settlement Class is defined as follows:

> All persons and entities that purchased or otherwise acquired common stock of
> SafeNet during the period from March 31, 2003 through May 18, 2006, inclusive,
> and were allegedly damaged thereby.  This includes all persons and entities who
> acquired SafeNet common stock in exchange for their shares of Rainbow
> Technologies, Inc. stock as a result of the March 14, 2004 acquisition of Rainbow
> Technologies, Inc. by SafeNet (the "Subclass").  Excluded from the Settlement
> Class are:  the current or former defendants in the Litigation; the officers and
> directors of the Company; the members of the immediate families of the current
> or former individual defendants in the Litigation; the subsidiaries and affiliates of
> SafeNet; any entity in which any current or former defendant has or had a
> controlling interest; and the legal representatives, heirs, successors or assigns of
> any excluded Person.  Also excluded from the Settlement Class will be any
> Person who timely and validly seeks exclusion from the Settlement Class.

This Litigation primarily arises out of an alleged stock options backdating scheme (the

"Options Backdating Scheme"), including defendants' alleged failure to adequately disclose their

options backdating practices and their improper accounting for backdated stock option grants in

violation of Generally Accepted Accounting Principles ("GAAP").  Lead Plaintiffs assert various

options-backdating related claims against SafeNet, its former CEO Anthony A. Caputo

("Caputo"); its former President and COO, Carole D. Argo ("Argo"), and its former CFO,

Kenneth A. Mueller ("Mueller") (collectively, the "Defendants") arising under §§10(b) and 14(a)

of the Securities Exchange Act of 1934 (the "1934 Act"), including control person claims under

§ 20(a) of the 1934 Act.  Lead Plaintiffs allege that as a result of the Options Backdating Scheme

and Defendants' failure to record appropriate compensation expense charges in connection

therewith, SafeNet's reported operating income was artificially inflated by an aggregate amount

of at least $11.5 million over the four plus year period from January 1, 2002 through March 31,

---

[2] The release of claims as against certain Released Parties, consisting of former SafeNet
directors Thomas Brooks, Ira Hunt, Bruce Thaw, Arthur L. Money, Shelley A. Harrison and
Andrew E. Clark (the "Former Director Defendants"), is dependent upon their executing a
reciprocal release in favor of the Released Plaintiff Parties.

2006 (SAC ¶115), and that accordingly each of SafeNet's annual and quarterly filings on Forms 10-K and 10-Q (as well as its annual proxy statements) that were issued during the Class Period were materially false and misleading. Similarly, the Subclass Representative, on behalf of himself and the proposed Subclass, asserts additional options backdating-related claims against all Defendants (other than Mueller) under §14 of the 1934 Act and §§11, 12(a)(2) and 15 of the Securities Act of 1933 (the "1933 Act").

Plaintiffs also asserted claims (under §§10, 14 and 20(a) of the 1934 Act and §§11, 12(a)(2) and 15 of the 1933 Act) alleging that Defendants had engaged in various non-options related accounting improprieties during the Class Period, such as improper revenue recognition and manipulation of reported operating expenses (the alleged "Earnings Management Scheme"). By Order dated August 5, 2009, the Court dismissed all of Plaintiffs' non-options related "Earnings Management Scheme" allegations on loss causation grounds, and also dismissed all of the "Options Backdating Scheme" claims against defendant Mueller.[3]

As set forth below, the Settlement represents a very substantial recovery that plainly falls well within "the range of possible approval" that warrants preliminary approval.

## I.    SUMMARY PROCEDURAL HISTORY

Detroit P&F commenced this action on August 1, 2006. Pursuant to the Private Securities Litigation Reform Act of 1995, 15 U.S.C. §§ 78u-4 *et seq.* (the "PSLRA"), the Court

---

[3] Pursuant to its August 5, 2009 Order, the Court also dismissed all claims that Plaintiffs had asserted against the Former Director Defendants referenced in footnote [2] above. On March 10, 2010, Plaintiffs moved for leave to file the Second Amended Complaint in order to (a) better preserve their Earnings Management Scheme claims for any possible appeal (while recognizing that such claims would still be dismissable under the loss causation grounds set forth in the Court's earlier August 2009 order); and (b) try to cure the scienter pleading deficiencies found by the Court with respect to Plaintiffs' previously dismissed options-related claims against Mueller. At the time the Settlement was reached, Mueller's motion to dismiss the claims asserted against him in the SAC had been fully briefed, but had not yet been decided.

appointed Detroit P&F, Plymouth, and Boston Retirement as Lead Plaintiffs, and appointed

Labaton Sucharow and BLBG as Lead Counsel to represent the putative class. (Dkt. No. 41).

In September 2006, SafeNet announced that it intended to restate its financial statements

for the years 2000 through 2005 and for the first quarter of 2006.  The parties thereafter agreed to

stay further proceedings (including the filing of a consolidated amended complaint) until after

SafeNet filed its restated financial statements.  In April 2007, Vector Capital (a privately held

firm) acquired all of SafeNet's outstanding shares, thereby taking SafeNet private.  Although

"going private" did not automatically relieve SafeNet of the obligation to file restated financial

statements to correct previously misstated SEC filings, by early summer 2008 no restated

financials had been issued.  Meanwhile, the SEC had filed a civil fraud complaint against

defendant Argo (in August 2007), Argo had pled guilty (in October 2007) to a single felony

count of securities fraud in connection with a single backdated stock option grant, and Argo had

been sentenced (in early 2008) on that count.  Rather than continue to stay these proceedings

pending issuance of SafeNet's restated financials, on August 1, 2008 Lead Plaintiffs filed their

Consolidated Amended Complaint ("Amended Complaint"), setting forth their claims based on

(a) the alleged Options Backdating Scheme, and (b) the alleged Earnings Management Scheme.

On August 13, 2008, the Parties participated in a mediation under the supervision of the

Hon. Nicholas H. Politan (U.S.D.J., ret.).  However, the mediation was unsuccessful, as the

parties' settlement positions were far apart.  The parties thereafter proceeded to engage in nearly

two years of vigorously contested litigation, beginning with the filing of Defendants' motions to

dismiss the Amended Complaint on September 30, 2008.

By order and opinion dated August 5, 2009 (the "August 5, 2009 Order") the Court

granted in part and denied in part Defendants' motions to dismiss.  The Court (a) sustained

plaintiffs' claims under §§10(b), 14(a) and 20 of the 1934 Act (and under §§11, 12(a)(2) and 15 of the 1933 Act) against SafeNet, Caputo and Argo insofar as they related to the alleged Options Backdating Scheme, but (b) dismissed the Options Backdating Scheme claims against Mueller and the Former Director Defendants for (among other things) failure to adequately allege their scienter, and (c) dismissed, on loss causation grounds, all of the non-options related Earnings Management Scheme claims against all defendants.

After the Court issued its August 5, 2009 Order, the remaining parties exchanged initial disclosures, and Lead Plaintiffs served comprehensive requests for production of documents on SafeNet, Caputo and Argo.  Lead Plaintiffs also served *subpoenae duces tecum* on Mueller and various third parties.  In total, Lead Plaintiffs obtained -- and reviewed -- approximately 1.4 million pages of documents collected pursuant to their formal discovery demands.

On November 10, 2009 – more than three years after initiation of this action -- the SEC filed a complaint against SafeNet, Caputo and Mueller charging each of them with various federal securities laws violations relating to options backdating.  The November 2009 SEC complaint also charged SafeNet, Caputo and Mueller (plus  three other former SafeNet accounting officers) with various non-options related earnings management manipulations.  At the same time, the SEC announced that these defendants, without admitting liability, had agreed to settle all charges, and that, more specifically:  (a) SafeNet had settled the SEC's charges for payment of a $1 million civil penalty; (b) Caputo had settled the SEC's charges for payment of a $250,000 civil penalty (after taking into account his prior $1.9 million settlement payment to SafeNet); (c) Mueller had settled the SEC's charges for payment of a $75,000 civil penalty and

disgorgement of $50,561 (after taking into account his prior $49,000 settlement payment to

SafeNet); and (d) the other three SafeNet officials had settled the SEC's charges for $100,000.[4]

On March 10, 2010, by stipulation and order, Lead Plaintiffs filed the Second Amended

Complaint seeking to re-join Mueller as a defendant with respect to the stock option-related

claims. The next day, Mueller moved to dismiss the SAC's renewed options-related claims

against him. On March 26, 2010, Lead Plaintiffs filed their opposition to Mueller's motion.

Over the next three and half months, Lead Plaintiffs commenced deposition discovery,

during which they took the depositions of eight former directors, officers or employees of

SafeNet. While continuing to actively litigate the case (which included letter briefing on

numerous disputed discovery issues, drafting of class certification papers and preparation for

upcoming expert discovery), the parties reopened settlement discussions in the early Spring of

2010. After several months, these renewed negotiations finally resulted in an agreement to settle

all claims, which was memorialized in a Term Sheet dated July 9, 2010, and in the subsequent

"long form" Stipulation dated as of September 13, 2010.

---

[4] *See* SEC Litigation Release No. 21290 (Nov. 12, 2009), *available at*
www.sec.gov/litigation/litreleases/2009/lr21290.htm. These defendants also consented to certain
non-monetary provisions, including the entry of permanent injunctions enjoining them from
violating the securities laws. *Id.* Previously, in her separate criminal proceedings, defendant
Argo had been ordered to pay a $1 million fine (although the Court denied the government's
request to require Argo to pay any restitution on the grounds that the Court found that it could
not, in light of various "confounding factors," reasonably calculate the amount of losses caused
by Argo's misconduct). *United States v. Argo,* No. 07 Cr. 683 (S.D.N.Y.) (Rakoff, J.), Tr. of
[Sentencing] Proceedings, Jan. 28, 2008, at 6-7, 37. Pursuant to Argo's separate settlement of
civil charges brought by the SEC, Argo also consented to the entry of order requiring her to pay
a civil penalty of $50,000, but with the proviso that any monies paid against her criminal fine
would be credited dollar-for-dollar against her civil SEC fine. In short, the sum total of all
amounts assessed by the government in penalties, fines, disgorgement and/or restitution in
connection with the alleged Options Backdating and Earnings Management schemes was *at most*
$4.425 million (a sum which gives the government full credit for the $1.9 million that Caputo
actually paid to *SafeNet* pursuant to a separate agreement that he had reached with SafeNet in
late 2006 to reprice a portion of his previously exercised stock options).

## II.     SUMMARY OF THE PROPOSED SETTLEMENT

In exchange for dismissal and customary releases of all of Lead Plaintiffs' and the Class members' claims, SafeNet has agreed to pay $25 million in cash (the "Settlement Amount").

## III.    THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

The proposed Settlement should be preliminarily approved.  Rule 23(e) requires judicial approval for any compromise of claims brought on a class basis.  Approval of a proposed settlement is within the discretion of the district court, to be exercised in accordance with public policy strongly favoring pretrial settlement of class action lawsuits.  *In re Interpublic Sec. Litig.*, Nos. 02-6527, 03-1194, 2004 WL 2397190, at *7 (S.D.N.Y. Oct. 26, 2004); *see also In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998).

Once a proposed settlement is reached, "a court must determine whether the terms of the proposed settlement warrant preliminary approval [by] mak[ing] 'a preliminary evaluation' as to whether the settlement is fair, reasonable and adequate."  *In re Currency Conversion Fee Antitrust Litig.*, MDL Nos. 1409, M 21-95, 2006 WL 3253037, at *5 (S.D.N.Y. Nov. 8, 2006) (citation omitted); *see also Wal-Mart Stores, Inc. v. Visa U.S.A. Inc*., 396 F.3d 96, 116 (2d Cir. 2005); *In re NASDAQ Market-Makers Antitrust Litig*., 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Preliminary approval of a proposed settlement is the first step in a two-step process required before a class action may be settled.... In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice.") (citations omitted).

Where the proposed settlement appears to be the product of informed, non-collusive negotiations, has no obvious deficiencies, and falls within the range of possible approval, preliminary approval should generally be granted.  *See id.* (citing *Manual for Complex Litigation* §30.41 (3d ed. 1995)); *In re Prudential Sec. Inc. Ltd. P'ships Litig*., 163 F.R.D. 200, 210 (S.D.N.Y. 1995) (at preliminary approval stage, "the Court need only find that the proposed

7

settlement fits 'within the range of possible approval'") (citation omitted); *see also In re State St. Bank & Trust Co. ERISA Litig.*, No. 07 Civ. 8488 (RJH), 2009 WL 3458705, at *1 (S.D.N.Y. Oct. 28, 2009) ("preliminary approval is 'at most a determination that there is what might be termed "probable cause" to submit the [settlement] proposal to class members and hold a full-scale hearing as to its fairness'").

    **A.**    **The Proposed Settlement Is the Result of Well Grounded, Good Faith, Arm's-Length Negotiations**

A proposed class settlement enjoys a presumption of fairness where it is the product of arm's-length negotiations conducted by experienced counsel knowledgeable in complex class litigation. *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005).

The Settlement here was reached after lengthy and hard-fought litigation. Lead Plaintiffs conducted a thorough investigation of the facts (including a review of publicly available documents as well as identification and interviewing of numerous confidential sources), researched their legal claims, prepared and filed two comprehensive consolidated complaints, fully briefed two sets of motions to dismiss, reviewed over 1.4 million pages of documents obtained from Defendants and various third parties, prepared for and conducted eight depositions of former SafeNet directors, officers and/or employees, researched and briefed numerous contested discovery motions, researched and drafted a class certification motion, and consulted with relevant experts. In sum, Lead Counsel had a clear and well-developed understanding of the strengths and weaknesses of their case before agreeing to the proposed Settlement.

Moreover, there can be no serious dispute that the Settlement is the product of hard-fought, arm's-length negotiations. For example, the parties' initial attempts to reach a settlement under the auspices of an experienced mediator in August 2008 were unsuccessful because the parties' settlement positions were so far apart, and it was not until the spring of 2010 that the

parties renewed any meaningful settlement discussions.  Even then, it took several months to
reach the proposed Settlement.  Nor can there be any serious dispute that counsel for both sides
are highly experienced in litigations of this type.

### B.  The Proposed Settlement Falls Well Within the Range of Reasonableness and Merits Issuance of Notice and a Hearing on Final Approval

The proposed $25 million Settlement is well within the range of reasonableness.  For
example, a recent study of settlements of federal securities fraud cases concluded that "the
median settlement amount for cases settled in 2009 remained unchanged from 2008 at $8.0
million," and that overall "[a]lmost 60 percent of post [PSLRA] cases settled for less than $10
million, and more than 80 percent of post [PSLRA] cases settled for less than $25 million."  *See*
Cornerstone Research, *Securities Class Action Settlements: 2009 Review and Analysis*, at 2-3
(2009), *available at* www.cornerstone.com.

The $25 million recovery here also compares favorably to the recoveries obtained by the
government in connection with its related actions against the same defendants.  Comparing
private plaintiff and government recoveries does not generally involve an apples-to-apples
analysis, as they often involve different interests and considerations.  Nonetheless, it is
respectfully submitted that the fact that the government (after three years of its own
investigations) assessed fines and penalties of (at most) $4.425 million[5] in connection with the
same matters also supports a finding that the $25 million Settlement here is within the "range of
possible approval" that merits preliminary approval and issuance of Notice to the Class.

---

[5] After deducting the $1.9 million "credit" that the government gave defendant Caputo in
November 2009 for the amount he paid *SafeNet* in connection with his much earlier (and
separate) agreement with the Company to reprice a portion of the stock options that he had
previously exercised, the governments' recoveries are arguably closer to $2.5 million – or one
tenth of the amount of the proposed Settlement here.  *See supra* note 4.

Lead Plaintiffs also note that continued litigation would have involved significant risks. Securities litigation is inherently risky and complex. *See, e.g., In re Sumitomo Copper Litig.*, 189 F.R.D. 274, 281 (S.D.N.Y. 1999) (Pollack, J.) ("[I]n evaluating the settlement of a securities class action, [courts] have long recognized that such litigation is notably difficult and notoriously uncertain"). In considering whether to enter into the Settlement, Lead Counsel weighed the value of a significant "bird in the hand" against the prospect of further protracted proceedings, including inevitable *Daubert* motions, summary judgment briefing and trial – and the real risks that Lead Plaintiffs would be unable to prevail on various essential aspects of their claims.

For example, Lead Plaintiffs faced significant challenges with respect to establishing loss causation. Indeed, in the analogous context of considering whether defendant Argo should have been required to pay restitution as part of her criminal sentence, Judge Rakoff expressed serious doubts as to whether her misconduct *caused* any investor losses, and therefore rejected the government's request that Argo be ordered to pay any restitution. As Judge Rakoff stated:

> [I]n terms of [the government's request for an order of] restitution, there is a major, major issue very fully briefed by [the government and by Argo] as to whether the court can reasonably calculate what the loss was in this case…
>
> *I have very grave doubts, very grave doubts, that I can meaningfully calculate the loss [that] occurred in this case. The nature of these backdating situations, when coupled with all of the other things that w[ere] going on with [SafeNet], introduces what scientists call confounding factors that makes such a calculation perhaps not reasonably possible.*

*United States v. Argo,* No. 07 Cr. 683 (Rakoff, J.), Tr. of Proceedings, Jan. 28, 2008, at 6-7 (emphasis added). Similarly, as Judge Rakoff later observed in the same hearing:

> I commend the government on attempting to come up with a measure [of investor losses] in a fact pattern that did not easily lend itself to a determination of loss. There have been many cases where I have been able to calculate loss even in cases involving securities fraud, but this is different for reasons that the defense submissions make plain. And I thought that the expert report submitted … in support of the defense's position was quite persuasive in many respects.

10

*Id.* at 16; *see also id.* at 37 ("Restitution, as mentioned, will be zero, based on the Court's finding

that it cannot calculate[,] and [that] it would be virtually impossible to calculate meaningfully[,]

restitution in this case.").  Although Plaintiffs' expert would have taken a contrary view,

Defendants would have certainly renewed their loss causation arguments at summary judgment

and trial.  Accordingly, even if Lead Plaintiffs were able to successfully establish each of the

other elements of their various options backdating-related claims, critical loss causation issues

would have inevitably come down to an uncertain and inherently unpredictable "battle of

experts," competing *Daubert* motions, and inevitable appeals by the losing party.

In addition, at trial there would have also been, *inter alia,* vigorously contested issues as

to how many options grants had actually been fraudulently accounted for, and whether any

inappropriate accounting with respect to those option grants was material. In sum, this case

involved significant risks relating to proof of  both liability and damages, which further supports

preliminary approval of the substantial proposed $25 million Settlement here.

**C.**     **The Settlement Has No Obvious Deficiencies**

There are also no "grounds to doubt [the Settlement's] fairness or other obvious

deficiencies, such as unduly preferential treatment of class representatives or of segments of the

class, or excessive compensation for attorneys." *In re Prudential Sec. Inc. Ltd. P'ships Litig.*,

163 F.R.D. 200, 209 (S.D.N.Y. 1995) (Pollack, J.).  Lead Plaintiffs, like all other Settlement

Class Members, will receive their *pro rata* distribution from the Net Settlement Fund in

accordance with the Plan of Allocation.  Subject to the approval of the Court, Lead Counsel will

seek an award of attorneys' fees up to 29% of the Settlement Fund, and reimbursement of

litigation expenses (including the representative plaintiffs' reasonably incurred costs and

expenses, as authorized by the PSLRA), plus interest.

In sum, nothing in the course of this litigation, the settlement negotiations or the terms of the Settlement itself raises any questions as to the proposed Settlement's fairness.

## IV. THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS AND APPOINT DETROIT P&F, PLYMOUTH AND GOLDE AS CLASS REPRESENTATIVES

### A. Standards Applicable to Class Certification

In this Circuit, "Rule 23 is given liberal rather than restrictive construction, and courts are to adopt a standard of flexibility" in deciding whether to grant certification. *Marisol A. v. Giuliani*, 126 F.3d 372, 377 (2d Cir. 1997) (per curiam). This "liberal standard is in accord with this Circuit's preference for the use of class actions in securities law claims." *In re Indep. Energy Holdings PLC Sec. Litig.*, 210 F.R.D. 476, 479 (S.D.N.Y. 2002). Thus, doubts as to whether to certify a class should be resolved "in favor of allowing the class to go forward." *Id.*

Because Lead Plaintiffs seek class certification in the context of preliminary approval, the Court need only preliminarily certify the Settlement Class now, subject to further inquiry or review, to the extent any issues may later arise, at the final approval hearing. *See Denney v. Deutsche Bank AG*, 443 F.3d 253, 270 (2d Cir. 2006) (concluding that "conditional certification survives the 2003 amendment to Rule 23(c)(1)"); *In re Qiao Xing Sec. Litig.*, No. 07 Civ. 7097 (DLC), 2008 WL 872298, at *1 (S.D.N.Y. Apr. 2, 2008) (granting preliminary class certification subject to review at final approval hearing); *Manual for Complex Litigation (4th)* § 21.632 (2004) ("The judge should make a preliminary determination that the proposed class satisfies the criteria set out in Rule 23(a) and at least one of the subsections of Rule 23(b)").

### B. This Litigation Meets the Requirements of Rule 23(a)

#### 1. The Settlement Class Is Sufficiently Numerous

Rule 23(a)(1) requires that the class be "so numerous that joinder of all [class] members is impracticable." Fed. R. Civ. P. 23(a)(1); *see also In re Flag Telecom Holdings., Ltd. Sec.*

*Litig.*, 245 F.R.D. 147, 157 (S.D.N.Y 2007) ("Impracticality means difficulty or inconvenience of joinder [not] … impossibility of joinder"). Precise quantification of class members is not required, and "[i]n securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Vivendi Universal, S.A.*, 242 F.R.D. 76, 83-84 (S.D.N.Y. 2007); *see also In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 280-81 (S.D.N.Y. 2002) (same).

Here, according to SafeNet's public SEC filings, during the Class Period approximately 27.5 million shares of SafeNet common stock was outstanding and was actively traded on the NASDAQ.  SAC at ¶295.  Although the precise number of investors who purchased SafeNet common stock during the Class Period may be unknown at this time, the proposed Settlement Class clearly exceeds the minimum numbers needed to satisfy numerosity under Rule 23.  *See Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995) ("numerosity is presumed at a level of 40 members"); *In re Prestige Brands Holdings, Inc. Sec. Litig.*, No. 05 Civ. 6924, 2007 WL 2585088, at *2 (S.D.N.Y. Sept. 5, 2007) (same).[6]

## 2.    There Are Common Questions of Law and Fact

Rule 23(a)(2) requires that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2); *Marisol A.,* 126 F.3d at 376 ("[P]laintiffs' grievances [must] share a common question of law or of fact."); *see also Deutsche Telekom*, 229 F. Supp. 2d at 281 ("Commonality does not mandate that all class members make identical claims and arguments, only that common issues of fact or law affect all class members").  "[I]t is sufficient if a *single* common issue is

---

[6] Similarly, there appear to be hundreds, if not thousands, members of the Rainbow Subclass.  As of February 2004 Rainbow had 27,206,602 shares of common stock outstanding, which were exchanged for approximately 10 million shares of SafeNet stock.  SAC ¶295.

shared by the class." *DeMarco v. Nat'l Collector's Mint, Inc.*, 229 F.R.D. 73, 80 (S.D.N.Y. 2005).

Here, Lead Plaintiffs allege that the following questions of fact or law, among others, are common to all members of the proposed Settlement Class and Subclass:  (a) whether Defendants violated the federal securities laws as alleged; (b) whether the Defendants' public statements omitted to state and/or misrepresented material facts concerning SafeNet's practices with respect to the granting of and accounting for Company stock options; (c) whether Defendants acted negligently (with respect to all Class members' claims under §14(a) of the 1934 Act and the Subclass members' claims under the 1933 Act) or knowingly or recklessly (as to the Class members' claims under §10(b)) in misrepresenting or omitting material facts; (d) whether the market price of SafeNet stock during the Class Period was artificially inflated due to Defendants' alleged material misrepresentations; and (e) whether the Class members have sustained damages and, if so, the appropriate measure thereof.  *See* SAC ¶299; *see also Flag Telecom*, 245 F.R.D. at 158 (finding that courts have "consistently" found substantially similar allegations sufficient).

### 3. The Proposed Representative Plaintiffs' Claims Are Typical

Rule 23(a)(3)'s typicality requirement is met when plaintiffs show that "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Marisol A.*, 126 F.3d at 376 (citation omitted). Typicality does *not* require that "the situations of the named representatives and the class members be identical." *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 238 (S.D.N.Y. 2006).  Moreover, the typicality and commonality requirements "tend to merge" in securities cases, suggesting that typicality generally will be found if commonality is found. *Marisol A.*, 126 F.3d at 376; *Flag Telecom*, 245 F.R.D. at 161.

Here, Detroit P&F and Plymouth purchased SafeNet common stock during the Class Period, and assert the same claims and make the same legal and factual arguments as the Settlement Class, and each of them "ha[s] the incentive to prove all the elements of the cause of action which would be presented by the individual members of the class were they intiating individualized actions." *Flag Telecom*, 245 F.R.D. at 159. Similarly, the proposed Subclass Representative, Michael Golde, acquired his SafeNet stock in exchange for his Rainbow shares as a result of SafeNet's stock-for-stock acquisition of Rainbow, and his claims and legal theories are thus identical to those of all other Subclass members (who also acquired SafeNet shares pursuant to the Rainbow acquisition and related Rainbow prospectus).

### 4.    The Proposed Class Representatives Will Fairly and Adequately Protect the Interests of the Settlement Class

Rule 23(a)(4) is satisfied when the representative plaintiffs demonstrates that (a) they have no "interests [that] are antagonistic to the interest of the other members of the class," and (b) their attorneys are "qualified, experienced and able to conduct the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000); *Vivendi*, 242 F.R.D. at 85. As many courts have observed, the issues of typicality and adequacy tend to merge because they "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157 n.13 (1982).

No conflict exists in this case. Proposed Class Representatives Detroit P&F and Plymouth (like the other Class members) both purchased shares of SafeNet during the Class Period, as did the other members of the Settlement Class, and both – like the other members of the Settlement Class -- have been similarly damaged by Defendants' conduct. Morever, as Lead Plaintiffs, both Detroit P&F and Plymouth have been actively involved in this litigation since its

inception, and understand the facts and allegations at issue. Similarly, proposed Subclass

Representative Golde has no conflicts, is knowledgeable concerning the case, and has been

involved in this action from its early stages.

　　　　With respect to the adequacy of proposed Class Counsel, Plaintiffs have been represented

throughout by Labaton Sucharow and BLB&G. In appointing these firms as Lead Counsel, the

Court stated: "both firms have substantial experience litigating complex securities class actions,

and are well qualified." *Police & Fire Ret. Sys. of the City of Detroit v. SafeNet, Inc.,* Nos. 06-

5797, 06-6194, 2007 U.S. Dist. LEXIS 97959, at *11 (S.D.N.Y. Feb. 21, 2007).

### C.　　THE PROPOSED CLASS AND SUBCLASS SATISFY THE REQUIREMENTS OF RULE 23(b)(3)

　　　　Rule 23(b)(3) requires that: (a) common questions of law or fact predominate over any

questions affecting only individual members ("predominance"), and (b) a class action is superior

to other available methods for the fair and efficient adjudication of this controversy

("superiority"). Fed. R. Civ. P. 23(b)(3). These requirements are satisfied here.

### 1.　　Common Questions of Law and Fact Predominate

　　　　The predominance inquiry "tests whether proposed classes are sufficiently cohesive to

warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 594

(1997). "Class-wide issues predominate if resolution of some of the legal or factual questions

that qualify each class member's case as a genuine controversy can be achieved through

generalized proof, and if these particular issues are more substantial than the issues subject only

to individualized proof." *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)

(internal citations and quotation marks omitted). As the Supreme Court has noted, predominance

is "readily met in certain cases," including securities cases. *Amchem Prods.*, 521 U.S. at 625.

The common questions of law and fact noted above clearly predominate over any conceivable individual question because Defendants' alleged misconduct (a) affected all Class Members in the same manner, and (b) affected all Subclass members in the same manner. Similarly, each Class Member and Subclass Member would need to establish the same facts to demonstrate the respective violations of the 1933 and 1934 Acts alleged in the SAC.  *See Veeco Instruments,* 235 F.R.D. at 240 ("[Q]uestions of fact regarding the content and implications of defendants' statements and defendants' intent in making these statements are central to the claims of each member of the putative class. Any individual issues will necessarily be secondary."); *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 WL 1021819, at *10 (E.D.N.Y. Apr. 27, 1999) ("In securities fraud class actions in which the fraud is alleged to have been carried out through public communications to a wide variety of market participants, common issues of law and fact will generally predominate over individual issues.").  Moreover, the representative plaintiffs' Section 10(b) claims invoke the fraud-on-the-market doctrine, which presumes reliance and precludes any argument that issues of individual reliance should defeat class certification.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 224 (1988).  That SafeNet's securities traded on an efficient market throughout the Class Period (*see* SAC ¶¶294, 302-303) cannot reasonably be disputed.  Accordingly, the representative plaintiffs would be able to present common legal and factual arguments as to all elements of their claims, including reliance, and the predominance element of Rule 23(b)(3) is easily satisfied.

## 2. A Class Action Is the Superior Method for Resolving This Action

Rule 23(b)(3) further requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," and lists the following factors to consider when determing whether a class action is superior:  (a) the interest of class members in individually controlling the prosecution or defense of separate actions; (b) the extent and nature

of any litigation concerning the controversy already commenced by or against members of the class; (c) whether it is desirable to concentrate litigation of claims in this forum; and (d) the manageability of a class action.  Each of these factors strongly favors certification here.

Given the size and geographical dispersion of the proposed Settlement Class and the likelihood that many purchasers will have sustained comparatively small losses, this case presents exactly the sort of circumstances for which a class action is appropriate.  It is also desirable to consolidate the litigation of claims before this Court, given the predominance of common legal and factual issues – and the alternative of individual adjudication of Class members' claims would be extremely burdensome and risk giving rise to inconsistent results. *See Flag Telecom*, 245 F.R.D. at 172 ("a class action will save an enormous amount in litigation costs for all parties and allow them to more efficiently prosecute their claims and defenses").

## V.   THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR GIVING NOTICE TO THE CLASS

The Court should also approve the form and content of the proposed Notice and Summary Notice.  (*See* Ex. 1 and 3, annexed to the accompanying proposed Preliminary Approval Order).  Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed "long form" Notice apprises class members of the nature of the action, the definition of the Settlement Class and Subclass sought to be certified, the class claims and issues, and the claims that will be released.  The Notice also advises that a Class Member may enter an appearance through counsel if desired, notes that the Court will exclude from the Settlement Class any Class Member who requests exclusion (and sets forth the procedures and deadline for doing so), and further describes (a) the binding effect of a judgment on Class Members under Rule 23(c)(3), (b) how to object to the proposed Settlement and/or requested attorneys' fees, and (c) how to make a claim.

The Notice also satisfies the PSLRA's separate disclosure requirements by, *inter alia*: stating the amount of the Settlement on both an aggregate and average per share basis; providing a brief statement explaining the reasons why the parties are proposing the Settlement; stating the amount of attorney's fees and maximum amount of expenses (both on an aggregate and average per share basis) that Class Counsel will seek; and providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Class Counsel who will be available to answer questions from Class Members.  *See* 15 U.S.C. § 78u-4(a)(7).  Both forms of Notice will also disclose the date, time and location of the final Settlement Hearing and the procedures and deadlines for submitting Proof of Claim forms and any objections to the Settlement, the Plan of Allocation, or to Lead Counsel's requested attorney's fees and expenses.  These disclosures are thorough and should be approved by the Court.

Lead Plaintiffs also request that the Court appoint AB Data as Claims Administrator, which has extensive experience in claims administration.  Lead Counsel selected AB Data following a competitive bidding process, and have determined that it submitted the best bid, taking into account the nature, quality and cost of the services it proposed to provide.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise."  The proposed Notice plan, as described in the proposed Preliminary Approval Order, readily meets these standards and is typical of Notice plans in actions of this type.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully requests that the Court (1) preliminarily approve the proposed Settlement; (2) preliminarily certify the proposed Settlement

Class and Subclass, (2) appoint Detroit P&F and Plymouth as Class Representatives and Michael

Golde as Subclass Represenative; (3) appoint Labaton Sucharow and BLBG as Class Counsel,

(4) approve the proposed forms and methods of Notice, (5) approve Lead Counsel's selection of

AB Data to serve as Claims Administrator and (6) schedule a Final Approval Hearing.[7]

Dated: New York, New York
      September 13, 2010

                            LABATON SUCHAROW LLP

                            /s/ Jonathan Gardner
                            Lawrence Sucharow
                            Jonathan Gardner
                            140 Broadway
                            New York, New York 10005
                            Telephone: (212) 907-0700
                            Facsimile:  (212) 818-0477

                            William C. Fredericks
                            Jeremy P. Robinson
                            BERNSTEIN LITOWITZ BERGER
                            & GROSSMANN LLP
                            1285 Avenue of the Americas
                            New York, New York 10019
                            Telephone: (212) 544-1400
                            Facsimile:  (212) 554-1444

                            *Co-Lead Counsel for Lead Plaintiffs and*
                            *the Proposed Class and Subclass*

---

[7] For the Court's convenience, a proposed form of Preliminary Approval Order – which has previously been reviewed and approved as to form by all parties – is being submitted herewith. Assuming that it otherwise meets with the Court's approval, the Court will need to fill in the date and time of the final approval hearing (the "Settlement Hearing") at ¶5 of the proposed Order. (All other dates in the Order are keyed off of the date of the Settlement Hearing.)  To allow sufficient time for dissemination of the Notice, while also taking into account Class members' interests in avoiding undue delay, Lead Plaintiffs respectfully propose that the Court schedule the Settlement Hearing during the week of December 19, 2010.