### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, PLYMOUTH COUNTY RETIREMENT SYSTEM, STATE-BOSTON RETIREMENT SYSTEM, and MICHAEL GOLDE, On Behalf of Themselves and All Others Similarly Situated, | Lead Case No. 06-cv-5797 (PAC) |
| Plaintiffs, | |
| v. | |
| SAFENET, INC., ANTHONY A. CAPUTO, KENNETH A. MUELLER, CAROLE D. ARGO, THOMAS A. BROOKS, IRA A. HUNT, Jr., BRUCE R. THAW, ARTHUR L. MONEY, SHELLEY A. HARRISON, and ANDREW E. CLARK, | |
| Defendants. | |

### LEAD PLAINTIFFS' MEMORANDUM IN SUPPORT OF
### MOTION FOR APPROVAL OF DISTRIBUTION PLAN

**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**

William C. Fredericks
Jeremy P. Robinson
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 544-1400
Facsimile: (212) 554-1444

**LABATON SUCHAROW LLP**

Lawrence Sucharow
Jonathan Gardner
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477

*Lead Counsel for Lead Plaintiffs, the Settlement Class and Subclass*

**TABLE OF CONTENTS**

INTRODUCTION…………………………………………………………………………………...1

BACKGROUND ................................................................................................. 3

CLAIMS ADMINISTRATION.......................................................................... 4

FEES AND EXPENSES OF CLAIMS ADMINISTRATOR ........................ 6

DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND ................ 7

DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE ........... 8

RELEASE OF CLAIMS ..................................................................................... 9

CONCLUSION ................................................................................................... 9

## INTRODUCTION

Lead Plaintiffs, the Police and Fire Retirement System of the City of Detroit, the Plymouth County Retirement System, and the State-Boston Retirement System (collectively, "Lead Plaintiffs"), on behalf of the Settlement Class, respectfully submit this memorandum of law in support of their motion for an Order, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure that would, among other things, approve the administrative determinations of the Claims Administrator, A.B. Data Ltd. ("A.B. Data"), with respect to the claims submitted pursuant to the Court-approved notice regarding the settlement of this consolidated securities class action (the "Litigation"), and authorize the distribution of the Net Settlement Fund to claimants whose claims have been accepted as valid and approved by the Court.[1]  Specifically, the Order would, *inter alia*:

(i)    approve the administrative determinations of A.B. Data accepting and rejecting the claims submitted;

(ii)   direct the distribution of 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees, to Authorized Claimants who would receive at least $10.00 based on their Recognized Claims in comparison to the total Recognized Claims of all Authorized Claimants (the "Distribution");

(iii)  authorize and direct a re-distribution of any funds remaining in the Net Settlement Fund subsequent to the passage of six (6) months from the Distribution by reason of returned or

---

[1] All capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Stipulation and Agreement of Settlement dated September 13, 2010 (ECF No. 130-1) (the "Stipulation") or the accompanying Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion For Approval Of Distribution Plan (the "Verkhovskaya Declaration" or "Verkhovskaya Decl.").

uncashed checks or other reasons to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such re-distribution, if Lead Counsel, in consultation with A.B. Data, determine that such redistribution would be cost-effective; and direct that additional re-distributions to Authorized Claimants who have cashed their previous distribution checks and who would receive at least $10.00 from such re-distribution may occur thereafter in six (6)-month intervals if Lead Counsel, in consultation with A.B. Data, determine that additional re-distribution is cost-effective, and that at such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court;

(iv)   release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of Claim Forms submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants; and

(v)   approve A.B. Data's fees and expenses incurred and to be incurred in connection with the administration of the Settlement and direct payment of $7,828.23 out of the Settlement Fund to A.B. Data for the unpaid balance of such fees and expenses.

## BACKGROUND

On September 13, 2010, Lead Plaintiffs and SafeNet, Inc. ("SafeNet"), Anthony A. Caputo, Carole D. Argo, and Kenneth A. Mueller (collectively, the "Settling Defendants") entered into the Stipulation.  The Stipulation provided for the settlement of the Litigation on behalf of a Settlement Class consisting of all persons and entities who purchased or otherwise acquired SafeNet common stock during the period from March 31, 2003 through May 18, 2006, inclusive, and who were allegedly damaged thereby.[2]  Pursuant to the Stipulation, SafeNet paid $25,000,000 in cash, which was deposited into an interest-bearing escrow account (the "Settlement Fund").

On October 7, 2010, this Court entered a Preliminary Approval Order Providing for Notice and Hearing in Connection with Proposed Class Action Settlement (ECF No. 131)  ("the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, the Court approved Lead Counsel's retention of A.B. Data as the Claims Administrator.  As Claims Administrator, A.B. Data was to print and mail copies of the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim form (the "Claim Form") (collectively with the Notice, the "Notice Packet") to potential members of the Settlement Class, publish the Summary Notice, and administer the processing of claims submitted.  On December 20, 2010, this Court held a hearing to consider the proposed Settlement and by Final Order and Judgment dated December 20, 2010 (ECF No. 141), the Court approved the Settlement and directed the

---

[2] This includes all persons and entities that acquired SafeNet common stock in exchange for their shares of Rainbow Technologies, Inc. stock as a result of the March 14, 2004 acquisition of Rainbow Technologies, Inc. by SafeNet.  Excluded from the Settlement Class are:  the current and former defendants in the Litigation; the current and former trustees, officers and directors of SafeNet; the members of the immediate families of the current and former individual defendants in the Litigation; the subsidiaries and affiliates of SafeNet; any entity in which any current or former defendant has or had a controlling interest; and the legal representatives, heirs, successors or assigns of any excluded Person.

3

parties to implement and consummate the Stipulation in accordance with its terms and provisions.

The Effective Date of the Settlement has occurred and the Claims Administrator has completed the processing of Claim Forms submitted in the Litigation. Accordingly, pursuant to the Stipulation, the Net Settlement Fund may be distributed to Authorized Claimants upon entry of an appropriate order by the Court. *See* Stipulation ¶ 22.

## CLAIMS ADMINISTRATION

Under the terms of the Stipulation and the Preliminary Approval Order and as set forth in the Notice and the Claim Form, all Class Members wishing to participate in the distribution of the Net Settlement Fund were required to submit Claim Forms by mail, postmarked no later than February 14, 2011. As detailed in the accompanying Verkhovskaya Declaration, A.B. Data has received and reviewed 9,061 claims. Verkhovskaya Decl. ¶¶ 14, 20.

To the extent that a claim was found to be deficient in any regard, A.B. Data sent a rejection letter to such claimant identifying the reason(s) the claim was defective and providing the claimant with an opportunity to cure the deficiency or deficiencies in the claim. Verkhovskaya Decl. ¶¶ 15-16. Claimants who submitted claims that did not meet the requirements for participation in the distribution of the Net Settlement Fund, such as duplicate claims; claims that did not contain a purchase or acquisition of SafeNet common stock during the Class Period; and claims where the Recognized Claim, as calculated under the Court-approved Plan of Allocation, was zero, were also sent rejection letters. *Id.* Copies of sample Rejection Letters are attached as Exhibit A to the Verkhovskaya Declaration.

All rejection letters specifically advised the claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the

claim and request Court review of the disposition of the claim.  Verkhovskaya Decl. ¶ 17.  Not a single claimant has submitted a request for Court review of the rejection of their claim.  *Id.*

As set forth in the Verkhovskaya Declaration, of the 9,061 claims received, 7,560 were postmarked on or before the Court-approved claims filing deadline of February 14, 2011. Verkhovskaya Decl. ¶ 21.  A.B. Data has determined that 2,014 of those timely claims are valid in whole or in part under the terms of the Court-approved Plan of Allocation.  *Id.*

A total of 1,501 claims were received with a postmark after the Court-approved claims filing deadline, of which 424 were, but for the late submission, otherwise valid in whole or in part. Verkhovskaya Decl. ¶ 22.  While these 424 claims were late, they were received while the processing of timely claims was ongoing, and due to the amount of time needed to process the claims received, the processing of these late claims did not delay the completion of the claims administration process or the distribution of the Net Settlement Fund.  *Id.* ¶ 23.  Lead Plaintiffs believe that, when the equities are balanced, it would be unfair to prevent an otherwise valid claim from participating in the Net Settlement Fund solely because it was submitted after the Court-approved claims filing deadline, when it was submitted while claims were still being processed.  Accordingly, Lead Plaintiffs request that the Court approve A.B. Data's administrative determination to accept these untimely filed, but otherwise valid claims.[3]

---

[3] The Court has discretion to accept Claim Forms submitted after the approved filing deadline under the terms of the Plan of Allocation and the Stipulation.  The Plan of Allocation set out in the Notice provides that: "*Unless the Court otherwise orders*, any Class Member who fails to submit a Claim Form postmarked no later than February 14, 2011 shall be forever barred from receiving payments pursuant to the Settlement . . ."  Notice at p. 9 (emphasis added).  The Stipulation similarly provides that "Any Class Member who fails to submit a Claim Form by [the date set by the Court and specified in the Notice] shall be barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation (*unless, by Order of the Court, late-filed Claim Forms are accepted*) . . ." Stipulation ¶ 28(b) (emphasis added).

However, there must be a final cut-off date after which no more Claim Forms will be processed so that there may be a proportional distribution of the Net Settlement Fund. The processing of any Claim Form received after preparation of this application would necessarily require a delay in the distribution. Accordingly, Lead Plaintiffs respectfully request that the Court order that no Claim Form received after November 28, 2012 be eligible for payment.[4]

Lead Plaintiffs further request that the Court approve A.B. Data's administrative determinations accepting and rejecting claims as set forth in the Verkhovskaya Declaration. As noted above, not a single claimant has contested A.B. Data's administration determination to reject their claim.

## FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

In accordance with A.B. Data's agreement with Lead Counsel to act as the Claims Administrator, A.B. Data was responsible for, among other things, mailing and publishing notice to the Settlement Class, maintaining a website for the Settlement, processing the claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. As set forth in the Verkhovskaya Declaration, A.B. Data's fees and expenses for its work performed and to be performed on behalf of the Settlement Class total $219,885.46. Verkhovskaya Decl. ¶ 30. To date, A.B. Data has received payments totaling $212,057.23.[5] Accordingly, there is a balance

---

[4] Lead Plaintiffs respectfully request that the Order provide one narrow exception to the bar on acceptance or modification of Proofs of Claim after November 28, 2012: if any claims are received or modified after November 28, 2012 that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if they had been timely received, then, at the time that Lead Counsel and A.B. Data agree that a redistribution is not cost effective, such claims may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis to bring them into parity with other Authorized Claimants who have cashed all their prior distributions to the extent possible. *See* Verkhovskaya Decl. ¶ 32(f).

[5] Under the terms of the Court-approved Stipulation (¶ 21) and the Preliminary Approval Order (¶ 18), prior to the Effective Date of the Settlement, Lead Counsel were authorized to expend up to $750,000 for the costs and expenses incurred in identifying and notifying Class Members and

due to A.B. Data of $7,828.23, which includes A.B. Data's anticipated fees and expenses for the Distribution.  *Id.* ¶ 31.  Lead Plaintiffs respectfully request that the Court approve all of A.B. Data's fees and expenses.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

As set forth in detail in the Verkhovskaya Declaration and consistent with paragraph 28 of the Stipulation, A.B. Data has completed the processing of all claims, and all claimants whose claims have been rejected, in whole or in part, have been notified and provided the opportunity to contest such rejection.  Accordingly, pursuant to paragraphs 22 and 28(f) of the Stipulation, Lead Plaintiffs, on notice to Settling Defendants' Counsel, respectfully move for an order approving A.B. Data's determinations concerning the acceptance and rejection of the claims submitted by Class Members and approving a plan for the distribution of the Net Settlement Fund to Authorized Claimants.

Lead Plaintiffs respectfully request that the Court authorize and direct the distribution of the Net Settlement Fund to those Authorized Claimants listed in Exhibits B and C to the Verkhovskaya Declaration.  Under the Court-approved Plan of Allocation and as set forth in the Verkhovskaya Declaration (¶ 32), A.B. Data will distribute 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees, to Authorized Claimants who would receive at least $10.00 based on their Recognized Claims in comparison to the total Recognized Claims of all Authorized Claimants as further detailed in paragraph 32 of the Verkhovskaya Declaration.

---

administering the Settlement without further approval from Settling Defendants or further order of the Court.

## DISPOSITION OF ANY UNCLAIMED/UNCASHED BALANCE

In order to encourage Authorized Claimants to cash their Distribution checks promptly and to avoid or reduce future expenses relating to uncashed checks, consistent with the Plan of Allocation approved by the Court, all Distribution checks will bear the notation "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]." In an effort to have as many Authorized Claimants as possible cash their checks, A.B. Data will follow up with Authorized Claimants who fail to cash their Distribution checks by the initial void date in order to provide them with an opportunity to request a reissued check. *See* Verkhovskaya Decl. ¶ 32(b) n. 4.

Consistent with the Plan of Allocation approved by the Court, if after A.B. Data has completed its follow-up efforts any funds remain in the Net Settlement Fund because of returned or uncashed checks or other reasons, the balance remaining in the Net Settlement Fund subsequent to the passage of six (6) months from the Distribution shall be re-distributed to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such re-distribution, after payment of any unpaid costs or fees incurred in administering the Net Settlement Fund (including for such re-distribution), if Lead Counsel, in consultation with A.B. Data, determine that such re-distribution is cost-effective. Additional re-distributions to Authorized Claimants who have cashed their previous distribution checks and who would receive at least $10.00 from such re-distribution may occur thereafter in six (6)-month intervals if Lead Counsel, in consultation with A.B. Data, determine that additional re-distribution is cost-effective. At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court.

## RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the claims submitted herein, or otherwise involved in the administration of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of the such involvement, and bar all Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund beyond the amount allocated to Authorized Claimants.

## CONCLUSION

For the foregoing reasons, Lead Plaintiffs' Motion for Approval of Distribution Plan should be approved, and the proposed Order Approving Distribution Plan should be entered.

Dated:  December 7, 2012                  Respectfully submitted,

                                          **BERNSTEIN LITOWITZ BERGER**
                                          **    & GROSSMANN LLP**

                                          s/ William C. Fredericks
                                          William C. Fredericks
                                          Jeremy P. Robinson
                                          1285 Avenue of the Americas
                                          New York, New York 10019
                                          Telephone: (212) 544-1400
                                          Facsimile:  (212) 554-1444

                                          **LABATON SUCHAROW LLP**

                                          Lawrence Sucharow
                                          Jonathan Gardner
                                          140 Broadway
                                          New York, New York 10005
                                          Telephone: (212) 907-0700
                                          Facsimile:  (212) 818-0477

                                          *Lead Counsel for Lead Plaintiffs, the Settlement*
                                          *Class and Subclass*

#668116