UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, PLYMOUTH COUNTY RETIREMENT SYSTEM, STATE-BOSTON RETIREMENT SYSTEM, and MICHAEL GOLDE, On Behalf of Themselves and All Others Similarly Situated,<br><br>                           Plaintiffs,<br><br>            v.<br><br>SAFENET, INC., ANTHONY A. CAPUTO, KENNETH A. MUELLER, CAROLE D. ARGO, THOMAS A. BROOKS, IRA A. HUNT, Jr., BRUCE R. THAW, ARTHUR L. MONEY, SHELLEY A. HARRISON, and ANDREW E. CLARK,<br><br>                           Defendants. | Lead Case No. 06-cv-5797 (PAC) |

**DECLARATION OF ANYA VERKHOVSKAYA IN SUPPORT OF
LEAD PLAINTIFFS' MOTION FOR APPROVAL OF DISTRIBUTION PLAN**

STATE OF WISCONSIN      )
                        ) ss.:
MILWAUKEE COUNTY        )

I, Anya Verkhovskaya, do declare as follows:

    1.    I am the Senior Executive Vice President and Chief Operating Officer for A.B. Data, Ltd.'s Class Action Administration Division ("A.B. Data" or the "Claims Administrator") located in Milwaukee, Wisconsin, New York, New York, and West Palm Beach, Florida. My business address is 600 A.B. Data Drive, Milwaukee, WI 53217. My direct telephone number is 414-961-6441.

Page 1 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.,* Case No. 06-Civ-5797 (PAC).

2. At the request of Lead Counsel, I submit this Declaration in connection with the claims administration program for the above-captioned action (the "Litigation").

3. This Declaration is based on my personal knowledge and on information provided by my associates and staff and is in support of Lead Plaintiffs' Motion for Approval of Distribution Plan.

**DISSEMINATION OF NOTICE AND PROOF OF CLAIM**

4. On December 20, 2010, the Court entered a Final Order and Judgment (ECF No. 141) approving the Settlement of this Litigation for $25,000,000 in cash, the terms of which are set forth in the Stipulation and Agreement of Settlement dated September 13, 2010 (ECF No. 130-1) (the "Stipulation"), entered into by and among the Police and Fire Retirement System of the City of Detroit, the Plymouth County Retirement System, and the State-Boston Retirement System (collectively, "Lead Plaintiffs") and Defendants SafeNet, Inc. ("SafeNet"), Anthony A. Caputo, Carole D. Argo, and Kenneth A. Mueller (collectively, the "Settling Defendants").[1]

5. Pursuant to the Preliminary Approval Order Providing for Notice and Hearing in Connection with Proposed Class Action Settlement entered by the Court on October 7, 2010 (ECF No. 131) (the "Preliminary Approval Order"), the retention of A.B. Data as the Claims Administrator was approved. As Claims Administrator, A.B. Data was to:

(a) disseminate the Notice of Pendency and Proposed Settlement of Class Action (the "Notice") and the Proof of Claim form (the "Claim Form") (collectively with the Notice, the "Notice Packet") to all Class Members who could be identified with

---

[1] All terms with initial capitalization not defined herein shall have the meanings ascribed to them in the Stipulation.

reasonable effort as well as to brokers and other nominees who purchased or otherwise acquired SafeNet common stock during the Class Period for the beneficial interest of others;

(b) publish the Summary Notice of Pendency and Proposed Settlement of Class Action (the "Summary Notice"); and

(c) administer the processing of claims submitted.

6. As part of the notice administration program, A.B. Data also established a case-specific toll-free line with an interactive voice response ("IVR") system and live operators; uploaded case-related documents to A.B. Data's website at abdataclassaction.com; and established a website for the Litigation at SafeNetSecuritiesSettlement.com and uploaded case-related documents to it.

7. As more fully described in the Affidavit of Michelle M. La Count, Esq., dated November 19, 2010 (ECF No. 136-2), A.B. Data initially distributed 1,207 Notice Packets to the shareholders of record listed on SafeNet's transfer agent's list and 5,997 Notice Packets to brokerage firms, banks, and other nominees on October 15, 2010. As of November 18, 2010, A.B. Data had mailed a total of 52,217 Notice Packets. Since that time, A.B. Data has distributed additional Notice Packets to potential Class Members, brokers and nominees. As of the date of this Declaration, the total number of Notice Packets disseminated is 55,757.

8. A.B. Data caused the Summary Notice to be published in *Investor's Business Daily* and to be released through Business Wire on October 20, 2010.

**TELEPHONE SYSTEM AND WEBSITE**

9. On or about October 15, 2010, a case-specific toll-free number, 866-905-8126, was established with an IVR system and live operators which is still being maintained. The

Page 3 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, Case No. 06-Civ-5797 (PAC).

automated attendant answers calls and presents callers with a series of choices to respond to basic questions.  If callers need further help, they have the option to transfer to a live operator during business hours.  Live operators are available from 8:00 a.m. to 5:00 p.m., Monday through Friday, Central Time.

10. As of the date of this Declaration, A.B. Data has received and made a total of 358 telephone calls, which includes the return calls for 51 voice mail messages over the case-specific toll-free line.  All voice mail messages were returned by A.B. Data promptly after receipt.

11. On or about October 15, 2010, A.B. Data established the case specific website at SafeNetSecuritiesSettlement.com, on which copies of the Notice and Claim Form and other case-related documents were posted.

12. A.B. Data also included instructions on the settlement website regarding how to report a change of address, how to report a change of name, and how to file on behalf of a deceased Class Member.

## PROCEDURES FOLLOWED IN PROCESSING CLAIMS

13. Under the terms of the Stipulation, and as set forth in the Notice, in order to be eligible to obtain a share of the Net Settlement Fund, Class Members were required to have their Claim Forms postmarked no later than the Court-approved claim-filing deadline of February 14, 2011.  In the Notice Packet, Class Members were directed to submit their Claim Forms to SafeNet Securities Litigation, Claims Administrator, c/o A.B. Data, Ltd., PO Box 170500, Milwaukee, WI 53217-8042.

14. To date, A.B. Data has received a total of 9,061 claims.  A.B. Data processed the claims in accordance with the Stipulation, the Notice, and the Plan of Allocation.  In processing the claims, A.B. Data performed the following activities:

Page 4 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.,* Case No. 06-Civ-5797 (PAC).

      a.      Conferred with Lead Counsel to further define guidelines for the evaluation of the claims;

      b.      Sorted, date-stamped, and bar-coded incoming mail, separating it into claims and administrative mail (including all mail other than Claim Forms, supporting documentation, and responses to rejection letters, such as requests for Claim Forms, change-of-address notifications, or questions regarding the administration process);

      c.      Entered the information from each claim, including the name(s), address(es), and taxpayer identification number(s) ("TIN(s)") for each claim, and the purchase(s), sale(s), and other transactions listed on the Claim Form, into a computerized database;

      d.      Imaged all claims and administrative mail into a secure database;

      e.      Stored all original claims and administrative mail in a secure, off-site facility;

      f.      Reviewed the documentation provided in support of each claim to ascertain whether each claimant had, in fact, purchased or acquired SafeNet common stock during the Class Period;

      g.      Reviewed the identities of the claimants to confirm that they were not persons or entities excluded from the Settlement Class by definition, to the extent that the identities of such persons and entities were known to A.B. Data through the claimant's certification on the Claim Form, A.B. Data's research, or communications with Lead Counsel;

      h.      Developed, generated, and mailed, via First-Class Mail, rejection letters to claimants;

Page 5 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.,* Case No. 06-Civ-5797 (PAC).

  i.  Allowed claimants sufficient time to gather additional supporting documentation to cure deficiencies and/or to review the reason(s) for their rejected status;

  j.  Processed responses to the rejection letters;

  k.  Responded to telephone calls from claimants, Class Members, and potential Class Members;

  l.  Conducted audits of the database and claim processing to ensure accuracy;

  m.  Developed formulas for calculating Recognized Loss Amounts and Recognized Claims in accordance with the Court-approved Plan of Allocation; and

  n.  Calculated Recognized Loss Amounts and Recognized Claims under the Plan of Allocation.

## CLAIM DEFICIENCY PROCESS

15. Many of the Claim Forms submitted herein were deficient or ineligible for recovery from the Settlement. Much of A.B. Data's efforts in handling this administration involved claimant communications so that all claimants had sufficient opportunity to cure any deficiencies and file a complete claim. The "Deficiency Process," which involved letters and emails to claimants, and inbound and outbound calls to claimants, was intended to assist claimants in properly completing their otherwise deficient submissions so that they could be eligibile to participate in the Settlement. The process also was designed to advise claimants of their right to request this Court's review of their claim if they disputed A.B. Data's final determination.

16. To the extent that a claim was found to be deficient in any regard, A.B. Data sent a rejection letter to such claimant identifying the reason(s) the claim was defective and providing

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, Case No. 06-Civ-5797 (PAC).

the claimant with an opportunity to cure the deficiency or deficiencies in the claim. Claimants who submitted claims that did not meet the requirements for participation in the distribution of the Net Settlement Fund, such as duplicate claims; claims that did not contain a purchase or acquisition of SafeNet common stock during the Class Period; and claims where the Recognized Claim, as calculated under the Court-approved Plan of Allocation, was zero, were also sent rejection letters.

17. Attached hereto as Exhibit A are exemplars of the types of rejection letters sent to notify claimants of the deficiencies in or the ineligibility of their claims. Each rejection letter explained to the claimant the steps the claimant must take to cure the deficiencies in his, her or its claim (to the extent that the deficiencies could be cured). Each letter also specifically advised the claimant that he, she or it had the right, within twenty (20) days after the mailing of the rejection letter, to contest the rejection of the claim and request Court review of the disposition of the claim. Not a single claimant has submitted a request for Court review of the rejection of their claim.

## CLAIMS CALCULATIONS AND QUALITY ASSURANCE REVIEW

18. Recognized Claim amounts were calculated for claims that were properly filed and supported with adequate documentary evidence.

19. An integral part of the claims administration process is the quality assurance review. To that end, after all the claims were processed, rejection letters mailed, and the claimants' responses were reviewed and processed, managers in A.B. Data's Claims Administration Department performed quality assurance reviews. The stringent review procedures, enumerated below, ensure the correctness and completeness of all of the claims

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, Case No. 06-Civ-5797 (PAC).

processed prior to preparing this Declaration and all of A.B. Data's final documents in support of the distribution of the Net Settlement Fund:

    a.    Verification that all Claim Forms had authorized signatures;

    b.    Verification that only true duplicate claims were identified, verified and rejected;

    c.    Verification that TINs were denoted for non-foreign claims to allow the most accurate searches for duplicate claims;

    d.    Verification that excluded Class Members did not file claims or their claims were rejected upon review;

    e.    Performance of a final quality assurance audit of claims and all supporting documentation to ensure completeness of claims;

    f.    Determination that all claimants requiring rejection letters were sent such letters;

    g.    Performance of an audit of deficient claims;

    h.    Performance of additional review of claims with Recognized Claims exceeding $1,000,000;

    e.    Auditing claims that had been determined to be invalid, including those claims with a Recognized Claim equal to zero;

    f.    Performance of other auditing based on claim completion requirements and the approved calculation specifications based on the Court-approved Plan of Allocation; and

    g.    Testing the accuracy of the Recognized Loss Amount and Recognized Claim calculation program.

## RECOMMENDATIONS FOR APPROVAL AND REJECTION

20. To date, A.B. Data has received and reviewed a total of 9,061 claims.

**Timely Filed and Valid Claims**

21. To date, 7,560 claims were received with a postmark on or before the Court-approved claims filing deadline of February 14, 2011, 2,014 of which were determined to be valid in whole or in part. The total Recognized Claim for these timely filed and valid claims is $86,608,650.65.

**Untimely, but Otherwise Valid, Claims**

22. To date, 1,501 claims were received with a postmark after the Court-approved claims filing deadline of February 14, 2011, 424 of which were determined to be otherwise valid in whole or in part. The total Recognized Claim for these untimely filed but otherwise valid claims is $6,030,120.00.

23. No claim was rejected because it was postmarked and received after the Court-approved claims filing deadline of February 14, 2011, while claims processing was ongoing. It is A.B. Data's opinion that no delay has resulted from the provisional acceptance of these claims, and when the equities are balanced, it would be unfair to prevent otherwise valid claims from participating in the Settlement distribution solely because they were submitted after the Court-approved claims filing deadline, but while claims were still being processed. Accordingly, A.B. Data respectfully requests that this Court approve its administrative determination not to reject these untimely filed, but otherwise valid claims.

24. However, there must be a final cut-off date after which no more Claim Forms will be processed so that there may be a *pro rata* distribution of the Net Settlement Fund. The processing of any Claim Form received after preparation of this application would necessarily

Page 9 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.,* Case No. 06-Civ-5797 (PAC).

require a delay in the distribution.  Accordingly, it is also respectfully requested that this Court order that no Claim Form received after November 28, 2012 be eligible for payment.

**Total Recognized Claim**

25. The total Recognized Claim for all valid claims, both timely and untimely, is $92,638,770.65.

**Rejected Claims**

26. After all deficiencies were processed and/or cured, a total of 6,623 claims (5,546 of which were timely filed and 1,077 of which were filed untimely filed) were wholly rejected, for the following reasons:

   a. 4,849 claims had a Recognized Claim of zero;

   b. 22 claims had no purchases or acquisitions of SafeNet common stock during the Class Period;

   c. 298 claims had uncured deficiencies;

   d. 107 claims were duplicates; and

   e. 1,347 claims were withdrawn by the claimant.[2]

27. A.B. Data has done a thorough job of processing the claims to protect the interests of the Settlement Class as a whole.  No claims were rejected out of hand, and substantial time was spent in communicating with claimants and suggesting appropriate ways that they could document their claims and participate in the Settlement.  Telephone calls and written letters from claimants to A.B. Data were handled effectively and efficiently.  As described above, A.B. Data

---

[2] 1,347 claims were submitted by one electronic filer in a single electronic file which inadvertently contained incorrect transaction information.  These claims were withdrawn and the electronic filer subsequently submitted a corrected electronic file.

Page 10 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.,* Case No. 06-Civ-5797 (PAC).

notified all rejected claimants of its determination as to their claims with the appropriate rejection letter.

**Exhibits of All Claims**

28. Attached as Exhibits B, C and D are computer printouts listing the following:

   a. Exhibit B lists all timely filed claims that A.B. Data determined to be valid in whole or in part and shows each claimant's Recognized Claim.

   b. Exhibit C lists all claims that were submitted after the Court-approved claims filing deadline of February 14, 2011 that A.B. Data determined to be otherwise valid in whole or in part and shows each claimant's Recognized Claim.

   c. Exhibit D lists all claims that A.B. Data rejected and states the reasons for the rejection of such claims.

## FEES AND DISBURSEMENTS

29. A.B. Data agreed to be the Claims Administrator of this case in exchange for payment of its fees and out-of-pocket expenses. Lead Counsel were billed on a regular basis and received regular reports of all of the work A.B. Data performed with respect to the administration of this Litigation. Lead Counsel has authorized all of the claims administration work performed herein.

30. Attached as Exhibit E are copies of A.B. Data's invoices for its work performed on behalf of the Settlement Class through September 30, 2012 and its anticipated work to complete the Distribution (defined below). As set forth on the attached invoices, A.B. Data has incurred fees and expenses in the amount of $213,339.44 in connection with the administration of the Settlement through September 30, 2012, and estimates that it will incur an additional

Page 11 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, Case No. 06-Civ-5797 (PAC).

$6,546.02 in fees and expenses to complete the Distribution of the Net Settlement Fund,[3] for total fees and expenses of $219,885.46.

31.  To date, A.B. Data has been paid a total of $212,057.23.  Accordingly, A.B. Data's outstanding balance is $7,828.23, which includes A.B. Data's anticipated fees and expenses for the Distribution.  A.B. Data respectfully requests that the Court approve the payment of $7,828.23 from the Settlement Fund prior to the Distribution.

## DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

32.  Should the Court concur with A.B. Data's determinations concerning the provisionally accepted and rejected claims, including acceptance of the untimely, but otherwise valid claims, A.B. Data recommends the following distribution plan:

    a.  A.B. Data will distribute 100% of the available balance of the Net Settlement Fund, after deducting the payments previously allowed and requested herein, and after payment of any estimated taxes and the costs of preparing appropriate tax returns and any escrow fees, to Authorized Claimants who would receive at least $10.00 based on their Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants (the "Distribution").  To effectuate the Distribution, A.B. Data will:

        (i)  Calculate an initial *pro rata* allocation of the Net Settlement Fund by comparing the total Recognized Claims for all valid claims with the total dollar value of the Net Settlement Fund at the time of the Distribution;

---

[3] Should the estimate exceed the actual cost to conduct the Distribution, the excess shall be refunded to the Settlement Fund and will be available for a subsequent distribution to Authorized Claimants.

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, Case No. 06-Civ-5797 (PAC).

    (ii) Determine which Authorized Claimants would receive a cash payment of less than $10.00 based on the initial *pro rata* allocation and then reallocate the available funds among Authorized Claimants who, pursuant to the initial calculation, would have received at least $10.00 on a proportionate basis and according to their Recognized Claims in accordance with the Court-approved Plan of Allocation;

    (iii) Mail a letter to each claimant whose initial *pro rata* share of the Net Settlement Fund under the Plan of Allocation was less than $10.00, informing such claimants that their claim will not be included in the Distribution;

    (iv) Prepare checks and explanatory check stubs as well as check registers and mail checks via First-Class Mail to Authorized Claimants entitled to receive a payment;

    (v) Issue replacement checks upon request by payees; and

    (vi) Answer inquiries about claim calculations and checks.

  b. In order to encourage Authorized Claimants to cash their Distribution checks promptly and to avoid or reduce future expenses relating to unpaid Distribution checks, all Distribution checks will bear the following notation: "CASH PROMPTLY, VOID AND SUBJECT TO RE-DISTRIBUTION IF NOT CASHED BY [DATE 120 DAYS AFTER ISSUE DATE]";[4]

---

[4] In an effort to have as many Authorized Claimants as possible cash their Distribution checks, A.B. Data will follow-up with those Authorized Claimants whose checks remain uncashed as of the initial void date, either because they were returned to A.B. Data as undeliverable or because the Authorized Claimant simply did not cash the check. Specifically, A.B. Data will undertake a calling campaign to the Authorized Claimants who have not cashed their Distribution checks as of the initial void date. Using the contact information provided in their Claim Forms or that may be obtained through Internet research, A.B. Data will use reasonable efforts to contact these claimants via phone (or email as appropriate) in

Page 13 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, Case No. 06-Civ-5797 (PAC).

      c.      Authorized Claimants who do not cash their Distribution checks within the time allotted or on the conditions set forth in footnote 4 above will irrevocably forfeit all recovery from the Settlement.  The funds allocated to all such uncashed checks will be available for re-distribution to other Authorized Claimants.  Similarly, Authorized Claimants who do not cash subsequent distributions within the time allotted or on the conditions set forth in footnote 4 above will irrevocably forfeit any further recovery from the Settlement;

      d.      Consistent with the Court-approved Plan of Allocation, if any funds remain in the Net Settlement Fund after the Distribution because of returned or uncashed checks or other reasons, then, after A.B. Data has made reasonable efforts to have Authorized Claimants cash their Distribution checks (which efforts shall consist of the follow-up efforts described in footnote 4 above), the balance remaining in the Net Settlement Fund subsequent to the passage of six (6) months from the Distribution shall be re-distributed to Authorized Claimants who have cashed their Distribution checks and who would receive at least $10.00 from such re-distribution, after payment of any

---

order to offer them the opportunity to request a reissued check.  With respect to those Authorized Claimants with uncashed checks that A.B. Data cannot reach through the calling campaign, A.B. Data may, with the consent of Lead Counsel and at an additional cost, attempt to obtain updated contact information for the claimant using proprietary database searches based on the claimant's Social Security/Employer Identification Number.  If an Authorized Claimant loses or damages his, her or its check, or otherwise requires a new check, A.B. Data will issue a replacement check.  Distribution reissues will be undertaken only upon written instructions from the Authorized Claimant, and provided that the Authorized Claimant returns the first check where appropriate.  If a distribution is deemed lost, A.B. Data will void the initial check prior to reissuing a payment.  In order not to delay further distributions to Authorized Claimants who have timely cashed their Distribution checks, A.B. Data's follow-up efforts will end 60 days after the initial void date.  Authorized Claimants with uncashed checks will be informed that, if they do not request a check reissue within the 60 days after the initial void date or if they fail to cash their check reissue within 30 days of the mailing of such reissued check, their entitlement to recovery will be irrevocably forfeited and the funds will be re-allocated to other Authorized Claimants.  Requests for reissued checks in connection with any re-distribution of the Net Settlement Fund will be handled in the same manner as set forth above.

Page 14 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.,* Case No. 06-Civ-5797 (PAC).

unpaid costs or fees incurred in administering the Net Settlement Fund (including for such re-distribution), if Lead Counsel, in consultation with A.B. Data, determine that such re-distribution is cost-effective.  Additional re-distributions to Authorized Claimants who have cashed their previous distribution checks and who would receive at least $10.00 from such re-distribution may occur thereafter in six (6)-month intervals if Lead Counsel, in consultation with A.B. Data, determine that additional re-distribution is cost-effective.  At such time as it is determined that the re-distribution of funds remaining in the Net Settlement Fund is not cost-effective, the remaining balance of the Net Settlement Fund shall be contributed to non-sectarian, not-for-profit 501(c)(3) organizations recommended by Lead Counsel and approved by the Court;

  e. In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claim Forms submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement.  Accordingly, A.B. Data agrees with Lead Plaintiffs' request that the Court bar any further claims against the Net Settlement Fund beyond the amount allocated to Authorized Claimants, and that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claim Forms submitted herein, or otherwise involved in the administration or taxation of the

Settlement Fund or the Net Settlement Fund, from any and all claims arising out of such involvement;

  f.  No Claim Forms received after November 28, 2012 may be accepted for payment and no adjustments to Claim Forms received may be made after November 28, 2012, subject to the following exception. If any claims are received or modified after November 28, 2012 that would have been eligible for payment or additional payment under the Court-approved Plan of Allocation if they had been timely received, then, at the time that Lead Counsel and A.B. Data agree that a redistribution is not cost effective as provided in subparagraph d. above, such claims may be paid the distribution amounts or additional distribution amounts on a *pro rata* basis to bring them into parity with other Authorized Claimants who have cashed all their prior distributions to the extent possible; and

  g.  Unless otherwise ordered by the Court, one year after the Distribution, A.B. Data is authorized to destroy the paper copies of the Claim Forms and other physical media submitted by claimants and, three years after the final distribution, A.B. Data is authorized to destroy electronic copies of claim records.

## CONCLUSION

  33.  A.B. Data respectfully requests that the Court enter an Order approving our administrative determinations accepting and rejecting the Proofs of Claim submitted herein received on or before November 28, 2012 and approving the proposed distribution plan set forth above. A.B. Data further respectfully requests that the Court approve all of its fees and expenses set forth on the invoices attached hereto as Exhibit E, and that the Court direct payment of

Page 16 of 17

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.*, Case No. 06-Civ-5797 (PAC).

$7,828.23 out of the Settlement Fund to A.B. Data for the unpaid balance of such fees and expenses.

I declare under penalty of perjury that to the best of my knowledge the foregoing is true and correct.

Executed this 4th day of December, 2012 at Milwaukee, Wisconsin.

_____
Anya Verkhovskaya

Declaration of Anya Verkhovskaya in Support of Lead Plaintiffs' Motion for Approval of Distribution Plan
*Police and Fire Retirement System of the City of Detroit, et al. v. SafeNet, Inc., et al.,* Case No. 06-Civ-5797 (PAC).